## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPENCER SAVINGS BANK, S.L.A., <div align="right">Plaintiff,</div> v. <br><br>BNK INVEST, INC., ROBERT SEPERSKY, JONATHAN GOLDMAN, RONALD RAGANELLA, ROBERT MITCHELL, WILLIAM R. DOSSENBACH, JORDAN FARKAS, HARVEY SCHAFFLER, LEVI C. PUREC, TIMOTHY J. KLACE, KENNETH METVINER, LAWRENCE SEIDMAN, BRAD D. BUTLER, RICHARD J. LASHLEY, JOHN H. MEREY, LEO M. GOLDNER, MARK A. GOLDSTEIN, MICHAEL D. ABNERI, and JOHN DOES 1–4, <div align="right">Defendants.</div> | Civil Action No. 2:25-cv-03877-MEF-JRA <br><br><br><br>Document Filed Electronically <br><br>Return Date: July 7, 2025 |

---

## DEFENDANT, LAWRENCE SEIDMAN'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

---

Peter R. Bray, Esq.
**Bray & Bray, L.L.C.**
900 Lanidex Plaza, Suite 230
Parsippany, NJ 07054
Tel. 973-739-9600
Fax 973-739-9696
pbray@braynjlaw.com
*Attorneys for Defendant, Lawrence Seidman*

## Table of Contents

Table of Authorities............................................................................. ii

Introduction ....................................................................................... 1

Legal Argument.................................................................................. 6

    Point I: The Standard Applicable to this Application.................................... 6

    Point II: The Complaint is Barred by the Doctrine of *Res Judicata*............... 9

    Point III: The Pleaded Claims Do Not Establish a Viable Cause of Action  12

    Point IV: The Claims are Barred By the Entire Controversy Rule .............. 22

Conclusion....................................................................................... 23

## Table of Authorities

**Cases**                                                                    **Pages**

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)............................................................. 6, 7

Bank Leumi v. Kloss, 243 N.J. 218 (2020)................................................................ 22

Bell Atlantic Corp v.Twombly, 550 U.S. 544, 555 (2007)........................................ 6

Bistrian v. Levi, 696 F.3d 352 F.3d 121, 130 (3d Cir. 2010) .................................. 6

Bracco Diagnostics v. Bergen Brunswig Drug Store, 206 F. Supp. 2d 557,
552 (D.N.J. 2002)..................................................................................................... 14

Cal Motor Transport v. Trucking Unlimited, 404 U.S. 508, 510 (1972)............... 19

Culver v. Insurance Company of No. America, 115 N.J. 451, 460 (1989) ............. 9

Dimitrakopoulos v. Borrus, Goldin et al, 237 N.J. 91, 119 (2019)........................ 23

Duhaney v. Attorney General of US, 621 F.3d 340 (3d Cir. 2010) ........................ 9

Duquesne Light v. Westinghouse Electric, 66 F.3d 604, 618 (3d Cir. 1995)... 14, 15

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ............................. 6

Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir. 1972).............................................. 9

Gleason v. Norwest Mortgage, 243 F.3d 130, 144 (3d Cir. 2001) ......................... 15

Hall v. Witteman, 569 F.Supp.2d 1208 (D. Kan. 2008) aff'd 584 F.3d 859 (10th Cir.
2009).......................................................................................................................... 20

Hanover 3201 Realty v. Village Supermarkets, 806 F.3d 162 (3d Cir. 2015) cert.
den 578 U.S. 1003 (2016) ........................................................................................ 19

Huck On Behalf of Air Shuttle v. Dawson, 106 F.3d 45, 48 (3d Cir. 1997)............ 9

Imagineering v. Kiewit Pacific, 976, F.2d 1303, 1310 (9th Cir. 1992) cert. den.
507 U.S. 1004 (1993) ............................................................................................... 14

Kozyra v. Allen, 973 F.2d 1110 (3d Cir. 1992) ...................................................... 22

Lipsit v. Leonard, 64 N.J. 276, 203-04 (1974).......................................................... 15

Lubliner v. Board of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960) ........... 9

Marshall-Silver Construction v. Mendel, 894 F.2d 593, 597 (3d. Cir. 1990) ....... 14

Maxim Sewerage Corp v. Monmouth Ridings, 273 N.J. Super. 84, 89 (Law. Div. 1993).................................................................................................................... 7

Montclair State v. Oracle, 2012 WL 3647427 (D.N.J. 2012)................................. 15

Pension Benefit Guaranty Corp. v. White Consolidated Industries, 998 F.2d 1192, 1196 (3d Cir. 1993) ...................................................................................... 7

Penwag v. Landau, 76 N.J. 595 (1978) .................................................................. 20

Santiago v. Warminster Township, 629 F.3d 121, 130 (3d Cir. 2010) ................... 6

Sedima v. Imrex, 473 U.S. 479, 495-497 (1985) .................................................... 14

U.S. v. Berger, 22 F.Supp.2d 145, 153 (S.D.N.Y. 1998)........................................ 21

U.S. v. Lemire, 720 F.2d 1327, 1335 (D.C. Cir. 1983) .......................................... 21

Velasquez v. Franz, 123 N.J. 498, 507 (1991)......................................................... 9

Wadeer v. NJ Mfrs Ins. 220 N.J. 591, 605 (2015) ................................................. 23

**Statutes Cited:**

18 U.S.C. §1961 ..................................................................................................... 10

18 U.S.C. §1961(a)................................................................................................. 14

18 U.S.C. §1962(c)................................................................................................. 13

18 U.S.C. §1962(d) ........................................................................ 3, 12

18 U.S.C. §1964(c) ........................................................................ 5, 12

19 U.S.C. §1961 (1) ........................................................................ 3

N.J.S.A. 2C:41-1 et seq ........................................................................ 7

N.J.S.A. 17:12B-1 et seq ........................................................................ 17

N.J.S.A. 17:12B-62 & 63 ........................................................................ 17

N.J.S.A. 17:12B-261(a) ........................................................................ 17

N.J.S.A. 17:12B-261(b) & (c) ........................................................................ 17

N.J.S.A. 17:12B-261(d) ........................................................................ 17, 18

## Rules:

R. 4:7-1 ........................................................................ 22

R. 4:30A ........................................................................ 22

R.4:42-9 ........................................................................ 5, 13

## Other Authorities

12 C.F.R. Part 192 ........................................................................ 17

F.R.C.P. 12(b)(6) ........................................................................ 1, 6

# INTRODUCTION

This Brief is submitted on behalf of Defendant, Lawrence Seidman ("Seidman"), and in support of his Notice of Motion under F.R.C.P. 12(b)(6) to dismiss the Complaint for failure to state a claim against him upon which relief can be granted.

The Complaint is an over-bloated screed. It has 91 pages and 261 paragraphs to assert RICO claims in two (2) counts – only one of which asserts a claim against Seidman. It is patent this overkill is designed to obfuscate the fact that Plaintiff, Spencer Savings Bank, S.L.A. ("Spencer"), has no viable claim and has accordingly deployed a seemingly endless series of factual allegations to hide the fact there is no valid cause of action.

The gist of Spencer's claims against Seidman are as follows:

(1)    The Defendants, other than Seidman ("The Other Defendants"), have opened accounts at Spencer in violation of the requirements imposed by Spencer's Account Agreement, that accounts can only be opened by people who live, or work, in New Jersey. This is allegedly done with the approval of Seidman.

(2)    Seidman benefitted from these non-resident accounts, since these members would probably vote for him when, and if, he ever actually ran for election to Spencer's Board of Directors.

(3)    Spencer was harmed by these non-resident accounts because:

(a)    Spencer paid interest on the deposits.

(b)    Spencer expended time to review accounts for compliance and expel non-residents who had their accounts closed.

(c)    Spencer had to respond to a State Court Action commenced by Seidman and some non-residents to compel re-instatement of closed accounts. ("The Vasta Case")

(d)    Spencer had to respond to Complaints The Other Defendants filed with Bank Regulators about the closing of their accounts.

(4)    Spencer asserts that the opening, or continued maintenance, of accounts by The Other Defendants was fraudulent.

(5)    The ultimate goal of Seidman and The Other Defendants is to cause Spencer to convert from a Mutual to a Stock Company.

(6)    Seidman needed the out-of-state Members to win an election.

(7)    Seidman directed The Other Defendant's misconduct – prior to, and after, August 2021.

(8)    Seidman started a litigation in Passaic County (The Vasta Case) based upon a "false narrative about Spencer's membership policy." This was a bad faith Complaint.

The First Count only asserts RICO claims against The Other Defendants. The Second Count includes a RICO Claim against Seidman and is styled as a "Conspiracy to Violate RICO under 18 U.S.C. §1962(d)"

The Complaint, however, is subject to a fatal flaw – to wit: The acts attributed to Seidman do not establish participation in racketeering activities, which is a prerequisite for a viable RICO claim. This, however, should come as no surprise since Spencer previously asserted RICO Claims against Seidman for the same acts, and those claims were promptly dispatched on a Motion to Dismiss.

The Vasta Case is asserted to be a predicate racketeering act is claimed to be filed in bad faith and based upon a "false narrative". This Chancery Case is still pending and a review of the public record reveals the Plaintiffs successfully secured (now stayed) preliminary restraints to stop the disenfranchisement of the non-resident Plaintiffs.[1] Further, even if the existence of rulings antithetical to Spencer's claim of bad faith were to be ignored, this still does not state a valid cause of action since New Jersey Law requires that a litigation be successfully concluded in favor of a defendant before a tort claim to challenge the *bona fides* of a case is ripe for pursuit. Furthermore, malicious prosecution is not a criminal act proscribed by 19 U.S.C. §1961 (1).

---

[1] A copy of the Order with Restraints is annexed as **Exhibit 1.**

The other acts attributed to Seidman are related to a desire to become a director of Spencer so that he can cause it to be converted to a Stock Company. New Jersey Courts have consistently concluded, in cases Spencer has previously litigated with Seidman, that the desire to be nominated and seek a Board seat is too far removed from the possibility of conversion to link the two; and, there is nothing inherently wrong with – or bad about – converting a Mutual into a Stock Company. Hence, this cannot constitute a racketeering activity.

The vague claims that Seidman somehow assisted, or encouraged, The Other Defendants to open, or resist closure, of their deposit accounts similarly do not establish a predicate act of racketeering. This is a breach of contract issue and is not transformed into something else by the conclusory assertion this involved a fraud by The Other Defendants. Among other things, this fraud claim – even if properly pleaded – is subsumed by The Economic Loss Doctrine, and once again not a proscribed crime.

The notion that having The Other Defendants – sixteen (16) account holders with one (1) vote each in an institution with well-over 50,000 voting members – as able to secure Seidman's directorial election is *per se* ludicrous and certainly not plausible.

The attack based upon The Other Defendants filing Complaints with Bank Regulators, in response to the account closures, is similarly not a viable predicate

act. Here, it is admitted Seidman never filed such a Complaint and instead either encouraged, or assisted with, the filings. However, such filings are constitutionally privileged and clearly not criminal.

Given the relatedness between the The Vasta Case and this case, the claims here should have been asserted by Counterclaim and Third-Party Complaint in The Vasta Case; and, this separate filing is barred by the Entire Controversy Doctrine.

Spencer's claimed special injuries are illusory which is also fatal to its claim since a "person" only has standing to file a RICO claim if it has been injured by acts proscribed by 18 U.S.C. §1964(c) Specifically: (1) Paying interest on deposits is the basis for banking; and, banks make money by paying interest to depositors that is less than the interest it receives by lending deposited funds to borrowers. (2) The time it took to review accounts for compliance is part of Spencer's ordinary overhead. (It is not alleged that Spencer hired auditors to perform the reviews.) (3) The time to respond to the Complaints The Other Defendants filed with Regulators is also part of Spencer's overhead. (It is not alleged it hired additional staff to respond). (4) The cost of defending The Vasta Case – under The American Rule – is an expense of doing business. (Any exception would require an application for fees in The Chancery Court, pursuant to R.4:42-9.)

## LEGAL ARGUMENT

## POINT I: THE STANDARD APPLICABLE TO THIS APPLICATION.

The standard for F.R.C.P 12(b)(6) motions is straight-forward and well-known. The Court is required to accept the factual allegations in the Complaint, construe the allegations in a light favorable to the plaintiff in order to determine whether, under any reasonable reading of the Complaint, that the plaintiff is entitled to the demanded relief <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). While the Rules do not explicitly require detailed factual allegations, a pleader is obliged to provide the grounds for being entitled to relief by using more than labels and conclusions or a formula recitation of the elements of a cause of action. <u>Bell Atlantic Corp v.Twombly</u>, 550 U.S. 544, 555 (2007) Thus, the factual allegations must be sufficient to make the right to relief "plausible on its face," <u>Id.</u> at 570. A claim has facial plausibility when the pleaded facts allow the Court to reasonably infer the defendant is liable for the alleged misconduct. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

A three (3) step-procedure is employed, in the Third Circuit, to determine factual plausibility. <u>Santiago v. Warminster Township</u>, 629 F.3d 121, 130 (3d Cir. 2010) First, the Court must outline the elements a plaintiff must plead to establish a claim for relief. <u>Bistrian v. Levi</u>, 696 F.3d 352 F.3d 121, 130 (3d Cir. 2010). Next, the Court eliminates the conclusions that are not trustworthy. <u>Id</u>. Finally, where well-

6

pleaded facts exist, the Court must accept their veracity and determine whether they plausibly establish an entitlement to relief. Iqbal, 556 U.S. at 679.

In deciding a Motion to Dismiss, the Court can also consider matters of public record. Pension Benefit Guaranty Corp. v. White Consolidated Industries, 998 F.2d 1192, 1196 (3d Cir. 1993) In this instance, the matters of public record that are germane to this Motion are decisions issued by State Court Judges and claims that Spencer previously asserted in State Court Actions between the parties, which demonstrate:

(i)    Spencer previously – and unsuccessfully – asserted RICO Claims[2] against Seidman in a Chancery Action. Those claims were based upon the same activities that are the basis for this Complaint – i.e., wanting to convert Spencer to a Stock Company, assisting, or encouraging, non-residents to fraudulently establish accounts at Spencer by misrepresenting their residency in violation of Spencer's Account Agreement.

(ii)    The desire to convert Spencer is not illegal or improper. Further, to effect a conversion, several hurdles must be traversed, which include securing the

---

[2] The RICO Claims were under the New Jersey Act (N.J.S.A. 2C:41-1 et seq). Due to the similarity between the State and Federal Acts, New Jersey Courts essentially follow Federal Law in interpreting the New Jersey Act; except, the New Jersey Act is given a broader interpretation and application. Maxim Sewerage Corp v. Monmouth Ridings, 273 N.J. Super. 84, 89 (Law. Div. 1993)

approval of the Commissioner of the Department of Banking and Insurance to assure the conversion is in the public interest.

(iii)    The Vasta Case, which is asserted to be a predicate act, is still pending and the Chancery Court has issued Orders determining the claims are *bona fide* and have a likelihood of ultimate success on the merits.

## POINT II: THE COMPLAINT IS BARRED BY THE DOCTRINE OF *RES JUDICATA*.

The Doctrine of *Res Judicata* is applicable when: (i) There is a final judgment on the merits. (ii) The prior litigation was between the same parties. (iii) The subsequent litigation involves the same cause of action. Duhaney v. Attorney General of US, 621 F.3d 340 (3d Cir. 2010) When determining whether *Res Judicata* is applicable, Federal Courts look to the law of the adjudicating state. Huck On Behalf of Air Shuttle v. Dawson, 106 F.3d 45, 48 (3d Cir. 1997) Hence, review of New Jersey Case Law is necessary to establish the scope, and applicability, of *Res Judicata* to this Complaint.

The Doctrine of *Res Judicata* establishes the policy that a controversy between parties that has been fairly decided, after litigation, is no longer open to re-litigation. Lubliner v. Board of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960) This precludes re-litigation of the same, or similar, issues. Culver v. Insurance Company of No. America, 115 N.J. 451, 460 (1989) An involuntary dismissal has the same preclusive effect as a final judgment after trial. Velasquez v. Franz, 123 N.J. 498, 507 (1991), citing Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir. 1972)

Here, the earlier Action was a New Jersey Superior Court Chancery Action (Docket No. PAS-C-53-15) and Spencer's RICO Claim was asserted in the First

Count of Spencer's Counterclaim.[3] This Counterclaim asserted a RICO cause of action against Seidman related to the alleged fraudulent establishment of deposit relationships in order to ultimately be able to be elected to Spencer's Board and cause it to convert. The pleaded predicate acts involved mail fraud and specifically incorporated 18 U.S.C. §1961. (See, **Exhibit 2A**)

During the argument of the Motion to Dismiss for Failure to State a Cause of Action, the Chancery Judge expressed great disdain for Spencer's tactics including the filing of this Counterclaim, stating she was left speechless. (See **Exhibit 2C** at page 13) In addition, the Judge noted there was nothing intrinsically illegal with attempting to, or wanting to, convert. (Id. at page 21) Thereafter, an Order dismissing the Counterclaim was entered. (See, **Exhibit 2B**) An appeal ensued and the Final Judgment was affirmed. (**Exhibit 3** October 3, 2019 Decision)

Thus, this Complaint attempts to re-litigate this RICO cause of action. While now reliant upon the Federal Act (18 U.S.C. §1961 et seq.), the substantive cause of action is the same as the State RICO cause of action previously dismissed for failure to state a cause of action. The gist of the predicate acts is the same and an exact identity, or repetition, of the facts is not required. The parties are also obviously the

---

[3] Copies of the Answer and Counterclaim, Order Dismissing the Counterclaim and Transcript of the Motion to Dismiss are annexed as **Exhibits 2A, 2B, and 2**C, respectively.

same – indeed the offending account holders are sixteen (16) people (The Other Defendants) and were previously identified as the "Seidman Group." While the identity of the non-residents may not be identical, the identification of them is the same in both cases: non-residents who opened accounts at Spencer by misrepresenting their residency, with a goal of supporting Seidman's quest to be elected to Spencer's Board and then cause it to convert.

In short, this Complaint is an attempt to re-litigate a failed cause of action; and, accordingly, barred by *Res Judicata*.

## POINT III: THE PLEADED CLAIMS DO NOT ESTABLISH A VIABLE CAUSE OF ACTION

Spencer's Count II asserts a cause of action against Seidman for "Conspiracy to Violate RICO under 18 U.S.C. §1962(d)." The racketeering activity is described in Paragraphs 232-241 and involves:

(a)    The Other Defendants' actions in opening and maintaining accounts for themselves, or others, that violated Spencer's Membership Policy, which prohibited non-resident depositors. The goal was to (1) Improperly collect interest. (2) Vote for Seidman's takeover of the Board. (3) Ultimately profit from a mutual conversion.

(b)    The Other Defendants undertook actions to avoid detection of the fact they were not compliant with the residency requirement.

(c)    The Other Defendants filed false, or unjustified, complaints with Bank Regulators.

(d)    The Other Defendants – with Seidman – sought to organize funding for bad faith litigation with Spencer.

It is charged Seidman combined and conspired with The Other Defendants to violate 18 U.S.C. §1962(d) through a pattern of racketeering activity involving the afore-referenced actions.

The claimed damages/injuries sustained as a result of the racketeering activities, which are a condition-precedent to standing to pursue a Civil RICO Action under 18 U.S.C. §1964(c) are:

(1)    Spencer paid interest on the non-residents' accounts.  However, as stated earlier, this is the basis for banking and Spencer undoubtedly made a profit by lending the funds to borrowers at higher rates than the rates paid to depositors.

(2)    Devoting time to reviewing accounts for compliance with the terms imposed in the Deposit Agreements.  However, as stated earlier, this is a part of normal operations and ordinary overhead – particularly since it is not alleged Spencer hired auditors to perform this function.

(3)    Devoting time to responding to the complaints The Other Defendants' lodged with Regulators.  However, as also indicated earlier, this too is a function of doing business and part of ordinary overhead, in view of the fact it was handled by existing personnel.

(4)    The cost (legal fees) of defending The Vasta Case is not a compensable cost under The American Rule – unless an exception exists, in which event the fees are solely recoverable in that Case under R.4:42-9.

This Count does not, however, state a cause of action for several reasons – to wit:

First, as stated above, this Count does not establish a basis for standing to prosecute a Civil RICO Action as required by 18 U.S.C. §1962(c), which provides "any person injured in its business or property by reason of a violation of section

1962 of this chapter may sue therefore". <u>Sedima v. Imrex</u>, 473 U.S. 479, 495-497 (1985)

While RICO is to be liberally construed, not all injuries are compensable under it. Thus, a concrete financial loss is required. <u>Imagineering v. Kiewit Pacific</u>, 976, F.2d 1303, 1310 (9th Cir. 1992) cert. den. 507 U.S. 1004 (1993) Here, Spencer unquestionably has no concrete financial loss as a result of the complained of acts and accordingly lacks standing to prosecute this Complaint.

Second, in order for the conduct to come within the ambit of The RICO Act, it must involve "racketeering," which is limited to criminal activity as defined in 18 U.S.C. §1961(a). However, none of the alleged predicate acts constitute these crimes.

Third, simply alleging the action was fraudulent will not suffice, since "garden variety fraud" is not within the ambit of racketeering under RICO. <u>Marshall-Silver Construction v. Mendel</u>, 894 F.2d 593, 597 (3d. Cir. 1990) The conduct must pose a societal problem worthy of the imposition of RICO's draconian remedies. (<u>Id.</u>)

Fourth, the character of fraud pleaded here is inextricably tied to a violation of the Account Agreements. This results in the application of the Economic Loss Doctrine, which prevents a plaintiff from recovering in tort for economic losses that flow from a breach of the parties' contract. <u>Bracco Diagnostics v. Bergen Brunswig Drug Store</u>, 206 F. Supp. 2d 557, 552 (D.N.J. 2002); <u>Duquesne Light v.</u>

Westinghouse Electric, 66 F.3d 604, 618 (3d Cir. 1995) There is some suggestion that, since the New Jersey Supreme Court has not specifically addressed the issue of the maintainability of a fraud claim based upon the same underlying facts that give rise to a breach of contract these claims may proceed together. Gleason v. Norwest Mortgage, 243 F.3d 130, 144 (3d Cir. 2001) However, Federal Cases have held that, in order for a fraud claim to not be subsumed by the contract claim, the fraud must be "extraneous to the contract." While labeling a claim as "fraud in the inducement" might seem to make the fraud "extraneous," to the contracts, case law is to the contrary. In Montclair State v. Oracle, 2012 WL 3647427 (D.N.J. 2012), the plaintiff coupled its contract claim with a fraud in the inducement claim based upon pre-contract misrepresentations. Judge Wolfson, citing cases, held that the fraud is only extraneous when it addresses a breach of duty unrelated to performance of the contract. Thus, a breach involving a specific contractual undertaking is intrinsic to the contract and barred by the Economic Loss Doctrine. Here, irrespective of the label attached, the conduct with respect to The Other Defendants' accounts all deals with a violation of a specific contract term, which imposes a residency requirement, and is accordingly barred.[4]

---

[4] In addition, this labelling of conduct as fraud in the inducement does not make it an actionable crime. Indeed, it simply makes equitable remedies available. Lipsit v. Leonard, 64 N.J. 276, 203-04 (1974)

Fifth, as stated earlier, a goal of having Spencer convert is neither wrongful nor illicit nor illegal. This has been determined on more than one occasion by the New Jersey Courts in litigations between Seidman and Spencer – specifically:

(a)    In an opinion issued by the Chancery Judge in the first litigation between Seidman and Spencer (Docket No. C-190-04) it was noted:

> "This process of investing in a bank by becoming a depositor is reasonable and puts Seidman in no better or worse position than any other depositor in the Savings and Loan if and when it did go public." (Opinion dated April 13, 2007, annexed as **Exhibit 4** at page 3)

(b)    In an opinion issued by another Chancery Judge, in a subsequent litigation between Seidman and Spencer (Docket No. C-53-15), it was held:

> "There is no evidence to conclude that conversion is necessarily a bad thing.  Also, the Board members have never polled membership and Spencer is accordingly unaware of goals shared by the majority of members including their views regarding mutuality and conversion". (Opinion dated October 19, 2017 annexed as **Exhibit 5** at page 7)

(c)    In an affirmance by the Appellate Division (Docket No.'s A-2039-17T3; A-4739-T4), it was approvingly determined:

> "There is no evidence to conclude that conversion [of the bank to a stock form] is necessarily a bad thing."
>
> ….
>
> None of the Bank's witnesses supported its "theory that Seidman's family members or associates were engaged in some clandestine conspiracy with him" (Opinion dated October 3, 2019 annexed as **Exhibit 3** at pages 22 & 23)

16

Sixth, a basic understanding of what needs to be done to achieve a conversion, which involves a statutory procedure established in the New Jersey Savings and Loan Act of 1963 (N.J.S.A. 17:12B-1 et seq) demonstrates the implausibility of Spencer's claim that Seidman, together with The Other Defendants will (can) cause a conversion. The steps in the procedure are:

(i)    Seidman must first be elected at an annual meeting after being nominated by the number of members prescribed in Spencer's Bylaws.[5] N.J.S.A. 17:12B-62 & 63

(ii)    Seidman, if elected, must then have the majority of the Board approve a resolution to convert. N.J.S.A. 17:12B-261(a)

(iii)    Once the Board approves a conversion, the Plan is submitted to Federal Regulators for a determination the Plan is appropriate and serves the public interest. 12 C.F.R. Part 192.

(iv)    The question of conversion must then be submitted to all members for approval and a majority of the members must vote for the conversion. N.J.S.A. 17:12B-261(b) & (c)

---

[5] Spencer has over 50,000 Members and a candidate who is not nominated by the Board must have 500 Members sign petitions to nominate him/her.

(v)     Finally, the Commissioner of Banking and Insurance must approve the conversion by determining it is in the best interests of the members. N.J.S.A. 17:12B-261(d)

The State Courts in litigation between Seidman and Spencer have concluded that these regulatory hurdles render the threat of conversion illusory and, therefore, not plausible. Specifically:

(a)     In the Appellate Decision (Docket No. A-0167-07T2; A-1036-07T2; A-1343-07T2) the panel held:

> "Any future goal for conversion that Seidman may have is several events removed from enhancing voting rights by easing nomination requirements." (Opinion dated July 27, 2010 annexed as **Exhibit 6** at page 18)

(b)     In the Appellate Decision (Docket No. A-3836-12T2) the panel held:

> "No director could point to a single instance where a Mutual had been involuntarily converted by a member or group of members...(pages 15 & 33). There are a number of procedural and regulatory hurdles to overcome before a conversion can proceed. Even if Seidman's true objective is to put someone on the Board who would effect a change in control, the approval of Federal Regulators would be required to do so." (pages 33-34) (Opinion dated April 30, 2015 annexed as **Exhibit 7**)

Furthermore, this thesis that depositors get a guaranteed profit or windfall upon conversion is a total fiction.  Under a Plan of Conversion a certain number of shares are allocated to members **for their purchase** and a price for shares is established.   The members have the right, but not the obligation, to purchase and

18

pay for the shares allocated to them in the Initial Public Offering. (If the price is $10 per share and the number of shares is 1,000, the member must pay $10,000). If the stock price goes down on the open market, the transaction is a loser. If the stock price rises on the open market then – and only then – a profit can be realized.

Seventh, the reliance upon the complaints with Bank Regulators similarly does not qualify as a racketeering activity. Even if those complaints were filed "in bad faith," same cannot constitute racketeering. The Noerr-Pennington Doctrine provides broad immunity from liability for those who petition the government, including administrative agencies and courts for redress of their grievances. Hanover 3201 Realty v. Village Supermarkets, 806 F.3d 162 (3d Cir. 2015) cert. den 578 U.S. 1003 (2016), citing Cal Motor Transport v. Trucking Unlimited, 404 U.S. 508, 510 (1972). However, when the petition is a "mere sham" to accomplish what is actually no more than an attempt to interfere with business, the immunity may not be applicable. Id. at 178. In order to be a "sham," the petition submitted to the government must be objectively baseless; and, if so, it must be established that the motivation was to interfere with business relations. Id.

Here, the petitions challenge the propriety of the account closures and seek review from regulators with authority over Spencer. Thus, the petitions have facial merit, are not objectively baseless, and are accordingly immune from attack; and, even without such immunity a bad faith filing could be no more than a tort and even

19

that is a stretch since Spencer has no compensable injury. (As stated earlier, having staff respond to a complaint does not establish damages.)

Eighth, as if all of that is not enough, the assertion that the filing and pendency of The Vasta Case is a predicate act because it has been done in bad faith is totally inadequate. New Jersey Law is very clear that a cause of action for malicious prosecution does not arise until the complained of case has been resolved in favor of the defendant. Penwag v. Landau, 76 N.J. 595 (1978) Hence, even if this tort action qualified as a racketeering activity, which it does not, it is not ripe for inclusion as a predicate act.

Thus, Count II does not establish a legally sufficient, and viable, cause of action against Seidman.

Labelling the activities as mail and wire fraud does not transform these activities into criminal racketeering. The mere transmission of false information does not bring the activity within the ambit of RICO, since the mail or wires must be used to further, or promote, a scheme to defraud through false pretenses. Hall v. Witteman, 569 F.Supp.2d 1208 (D. Kan. 2008) aff'd 584 F.3d 859 (10th Cir. 2009). Mail fraud requires a scheme to obtain money or property by false pretenses with the mails employed to execute the scheme. (Id.) Wire fraud makes criminal breaches of duty that are accompanied by a misrepresentation or non-disclosure intended to

deprive the person owed the duty of some legally significant benefit. <u>U.S. v. Lemire</u>, 720 F.2d 1327, 1335 (D.C. Cir. 1983).

Here, the use of mails and wires (if used) was incidental and not a tool to implement or promote a transaction. Indeed, Spencer obviously communicates with the members by mail and solicits responses by mail. Further, The Other Defendants neither owed a duty to Spencer – in this context The Other Defendants' loaned money to Spencer in exchange for payments of interest, nor did Spencer surrender a benefit or anything of value. Indeed, Spencer received the benefit of obtaining deposits – a benefit Banks routinely advertise to secure.

Hence, the inclusion of a claim for wire and mail fraud does not establish a viable predicate for a RICO claim. Similarly, the inclusion of the conspiracy claim adds nothing because it must fail when – as here – the substantive claims are deficient. <u>U.S. v. Berger</u>, 22 F.Supp.2d 145, 153 (S.D.N.Y. 1998)

**POINT IV: THE CLAIMS ARE BARRED BY THE ENTIRE CONTROVERSY RULE.**

This case revolves around challenges to the opening, and maintenance, of accounts in violation of the terms of Spencer's Account Agreement. The Vasta Case challenges the *bona fides* of the account closures, and Spencer has been defending that case since its inception[6]. Thus, both cases are based upon the same transactions or occurrences. This is significant for purposes of evaluating when, and whether, the Entire Controversy[7] Doctrine applies to bar the subsequent litigation – here, this claim against Seidman.

The Entire Controversy Doctrine was most recently addressed by the New Jersey Supreme Court in <u>Bank Leumi v. Kloss</u>, 243 N.J. 218 (2020). There, it was noted that <u>R.</u> 4:7-1 permits the filing of counterclaims regardless of whether same address matters unrelated to the transaction that is the subject of the complaint; and, provides that the failure to comply with <u>R.</u> 4:30A (The Entire Controversy Rule) will preclude any subsequent separate action. In turn, <u>R.</u> 4:30A states the non-joinder of claims shall result in their preclusion; and, in order to be precluded, the claims must arise from related facts or the same transaction but need not share identical legal

---

[6] A Copy of the Complaint is annexed as **Exhibit 8**.

[7] The Entire Controversy Doctrine is applied by the Federal Court in cases involving New Jersey transactions. <u>Kozyra v. Allen</u>, 973 F.2d 1110 (3d Cir. 1992)

theories, citing <u>Dimitrakopoulos v. Borrus, Goldin et al,</u> 237 N.J. 91, 119 (2019);

<u>Wadeer v. NJ Mfrs Ins.</u> 220 N.J. 591, 605 (2015)

Here, the claims arise from the same subject and series of transactions. Here, Spencer had a fair opportunity to raise these claims by counterclaim and was required to do so. Here, therefore, the claims against Seidman are barred by the Entire Controversy Rule.

## CONCLUSION

For the reasons stated, the claims against Seidman must be dismissed.

<br>

BRAY & BRAY, L.L.C.
Attorneys for Defendant, Lawrence
Seidman

By   _/s/ Peter R. Bray_
    Peter R. Bray, Esq.

Dated: June 3, 2025

23