**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SPENCER SAVINGS BANK, S.L.A., | __Civil Action__ |
| Plaintiff, | **Docket No. 2:25-cv-03877-MEF-JRA** |
| v. | **Return Date: August 4, 2025** |
| BNK INVEST, INC., ROBERT SEPERSKY, JONATHAN GOLDMAN, RONALD RAGANELLA, ROBERT MITCHELL, WILLIAM R. DOSSENBACH, JORDAN FARKAS, HARVEY SCHAFFLER, LEVI C. PUREC, TIMOTHY J. KLACE, KENNETH METVINER, LAWRENCE SEIDMAN, BRAD D. BUTLER, RICHARD J. LASHLEY, JOHN H. MEREY, LEO M. GOLDNER, MARK A. GOLDSTEIN, MICHAEL D. ABNERI, and JOHN DOES 1–4 | |
| Defendants. | |

---

**BNK INVEST INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**

---

**KAUFMAN DOLOWICH LLP**
Court Plaza North
25 Main Street, Suite 500
Hackensack, New Jersey 07601
Telephone: (201) 488-6655
ivalentin@kaufmandolowich.com
kaitlin.principato@kaufmandolowich.com
*Attorneys for Defendant, BNK Invest, Inc.*

Iram P. Valentin, Esq.
 *Of Counsel & On the Brief*

Kaitlin R. Principato, Esq.
 *On the Brief*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... iv

PRELIMINARY STATEMENT............................................................................... 1

RELEVANT ALLEGATIONS REGARDING BNK INVEST...................................... 2

LEGAL STANDARD ........................................................................................... 4

LEGAL ARGUMENT .......................................................................................... 9

### POINT ONE

THE IMMUNITY PROVIDED UNDER §230 OF THE COMMUNICATIONS DECENCY ACT WARRANTS DISMISSAL OF THE CLAIMS AGAINST BNK INVEST................................. 9

    **A.** Section 230 Immunizes Interactive Computer Service providers Like BNK Invest from Civil Liability for Content Created by Users…………….…………………….......... 10

    **B.** BNK Invest Is Entitled to Section 230 Immunity……...……………………….....…11

        **1.** The Economic Loss Doctrine Bars Plaintiff's Tort Claims…………………………………………………...……12

        **2.** Plaintiff Attempts to Hold BNK Liable as the Publisher or Speaker of the Allegedly Harmful Content……………………………………………… 13

        **3.** The Content At Issue Was Provided by BNK Users, Not by BNK…………………………………………………………………….13

### POINT TWO

PLAINTIFF OTHERWISE FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED……………………………………….. ...................................................... 15

    **A.** Plaintiff Fails To Allege A RICO Claim With Sufficient Particularity…………………………………………………………...……..…17

    **B.** Plaintiff's RICO Claim Should Be Dismissed Because Plaintiff Cannot Demonstrate the Existence of An Enterprise……………………………………………………………19

**C.** Plaintiff's RICO Claim Should Be Dismissed Because Plaintiff Cannot Demonstrate A Pattern of Racketeering Activity…………………………………………………………20

**D.** Plaintiff's RICO Claim Should Be Dismissed for Failure to Show How the Alleged RICO Violation Proximately Caused Plaintiff's Injury …………………………………...…22

**E.** Plaintiff Lacks Standing With Respect To the RICO Claim ……………………….24

**CONCLUSION** ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ............................................................................ 22, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 4

*Barrett v. Fonorow*,
   799 N.E.2d 916 (Ill. App. Ct. 2003) ....................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 4

*Burget v. Lokelani Bernice Pauahi Bishop Tr.*,
   200 F.3d 661 (9th Cir. 2000) .................................................................... 4

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ................................................................ 13

*Cedric Kushner Promotions Ltd. v. King*,
   533 U.S. 158 (2001) ................................................................................. 19

*Cohen v. Facebook, Inc.*,
   252 F. Supp. 3d 140 (E.D.N.Y. 2017) ................................................... 11

*Conan Properties, Inc. v. Mattel, Inc.*,
   619 F. Supp. 1167 (S.D.N.Y. 1985) ...................................................... 17

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001) ................................................................... 18

*Dimeo v. Max*,
   248 Fed. Appx. 280 (3d Cir. 2007) ....................................................... 7, 8

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
   726 F. Supp. 2d 225 (E.D.N.Y. 2010) ................................................... 24

*Donato v. Moldow*,
   374 N.J. Super. 475 (App. Div. 2005) .......................................... 7, 10, 11

*Eli Lilly and Co. v. Roussel Corp.*,
   23 F. Supp. 2d 460 (D.N.J. 1998) .......................................................... 21

*Equitable Life Assurance Soc. v. Alexander Grant & Co.*,
   627 F. Supp. 1023 (S.D.N.Y. 1985) ...................................................... 17

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ................................................ 6, 11, 13, 14

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) ..................................................................... 24

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989) ................................................................................. 20

*Hemi Group, LLC, et. al v. City of New York*,
   130 S. Ct. 983 (2010) ......................................................................... 23, 24

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992) ....................................................................... 22, 23, 24

*In re Crude Oil Commodity Litigation*,
   2007 WL 1946553 (S.D.N.Y.) ............................................................... 21

*In re Refco Inc. Securities Litig.*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2011) ......................................................................... 21

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*,
   46 F.3d 258 (3d Cir. 1995) ......................................................................................... 19

*Jones v. Dirty World Entm't Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) ........................................................................................ 6

*Kalmanovitz v. G. Heileman Brewing Co. f Inc.*,
   595 F. Supp. 1385 (D. Del. 1984) ............................................................................... 16

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ......................................................................................... 16

*Lincoln House, Inc. v. Dupre*,
   903 F.2d 845 (1st Cir. 1990) ....................................................................................... 25

*Milgram v. Orbitz Worldwide, Inc.*,
   419 N.J. Super. 305 (Law Div. 2005) ........................................................................... 6

*Miller v. City of New York,* Case,
   No. 05-cv-6024, 2007 U.S. Dist. LEXIS 25016 (E.D.N.Y. Mar. 30, 2007) ............................. 18

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir.1993) ........................................................................................ 21

*Motorola Credit Corp. v. Uzan*,
   322 F.3d 130 (2d Cir. 2003) ....................................................................................... 24

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com*,
   591 F.3d 250 (4th Cir. 2009) ...................................................................................... 11

*Obado v. Magedson*,
   612 Fed. Appx. 90 (3d Cir. 2015) .................................................................................. 8

*Powers v. British Vita, P.L.C.*,
   57 F.3d 176 (2d Cir. 1995) ......................................................................................... 17

*Rafter v. Bank of America*,
   2009 WL 691929 (S.D.N.Y.) ....................................................................................... 21

*Ramey v. Darkside Prods., Inc.*,
   2004 WL 5550485 (D.D.C. May 17, 2004) ..................................................................... 14

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................................... 22

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*,
   30 F.3d 339 (2d Cir. 1994) ......................................................................................... 19

*RJR Nabisco, Inc. v. European Community*,
   579 U.S. 325 (2016) ................................................................................................... 17

*Rose v. Bartle*,
   871 F.2d 331 (3d Cir. 1989) ......................................................................................... 8

*Spoto v. Herkimer County Trust*,
   2000 U.S. Dist. LEXIS 6057, at *16 (N.D.N.Y Apr. 20, 2000) .............................................. 18

*Tarr v. Credit Suisse Asset Mgmt.*,
   958 F. Supp. 785 (E.D.N.Y. 1997) ............................................................................... 20

*Teti v. Towamencin Township,* No. Civ. A. 96-CV-,
   2001 WL 1168102 (E.D. Pa. Aug. 17, 2001) .................................................................. 16

*United States v. Alkins*,
   925 F.2d 541 (2d Cir. 1991) ....................................................................................... 20

*United States v. Indelicato,*
   865 F.2d 1370 (2d Cir. 1989)...................................................................... 20
*United States v. Persico,*
   832 F.2d 705 (2d Cir. 1987).................................................................... 17, 18
*United States v. Salerno,*
   868 F.2d 524 (2d Cir. 1989)......................................................................... 17
*Zeran v. Am. Online, Inc.,*
   129 F.3d 327 (4th Cir. 1997).......................................................... 10, 11, 13

## **Statutes**

18 U.S.C. §1961(3) ...................................................................................... 19
18 U.S.C. § 1961(1) ..................................................................................... 20
18 U.S.C. § 1962(a), (b) or (c) .................................................................... 16
18 U.S.C. § 1962(d) ................................................................... 1, 15, 16, 18
18 U.S.C. § 1965(b) ....................................................................................... 3
47 U.S.C. §230(f)(3) ............................................................................ 6, 8, 14
47 U.S.C. § 230(c)(1)...........................................................................Passim
47 U.S.C. § 230(c)(2)(A) ............................................................................. 10
47 U.S.C. § 230(e)(3) ................................................................................... 10
47 U.S.C. § 230(f)(2) ............................................................................... 8, 12
47 U.S.C.A. § 230 ...............................................................................Passim

## **Rules**

F.R.C.P. 12(b)(6) ..................................................................................... 1, 4

## PRELIMINARY STATEMENT

Defendant BNK Invest, Inc. ("BNK Invest") respectfully moves to dismiss Plaintiff's Complaint against it, alleging a conspiracy to violate the Racketeer Influenced and Corrupt Organization Act ("RICO") under 18 U.S.C. § 1962(d) in connection with the usage by third-parties of the BankInvestor.com ("BankInvestor") website. The Complaint fails to state a claim against BNK Invest upon which relief can be granted.

As an "interactive computer service" provider, BankInvestor is immune from suit under Section 230 of the Communications Decency Act of 1996, 47 U.S.C.A. § 230 (the "CDA"). While acknowledging that Section 230 bars claims based on content uploaded by third parties, Plaintiff attempts to evade Section 230 immunity by arguing that their claims target BNK Invest directly; however, there are no allegations in the Complaint—and neither can there be—that BNK Invest itself produced any of the communications on the platform in any capacity outside of its role as a publisher of third-party content—Plaintiff only alleges that BNK Invest hosts an internet service, BankInvestor, that allows users to exchange messages with one another and that bad actors utilized this service to violate RICO.

Furthermore, Plaintiff's claim under 18 U.S.C. § 1962(d) should be dismissed because it fails to meet the pleading standards required to assert a RICO conspiracy. To state a valid claim under § 1962(d), Plaintiff must allege that Defendant knowingly agreed to facilitate a scheme that would constitute a substantive RICO violation under § 1962(c). However, the Complaint fails to adequately plead the necessary elements of a substantive RICO offense—namely, the existence of an enterprise, a pattern of racketeering activity, and the commission of predicate acts—as required by controlling precedent. Without a properly pleaded underlying RICO violation, the conspiracy claim cannot stand alone. Moreover, Plaintiff offers only conclusory allegations of an alleged

1

agreement, without identifying any facts showing that BNK Invest consciously agreed to join a RICO enterprise or shared a common unlawful purpose (it did not). These essential elements are missing, and without them, the Complaint lacks the required specificity to support a claim for fraudulent or deceptive conduct. Courts in our Circuit consistently require specific factual allegations showing such an agreement. Vague or generalized assertions are insufficient. Accordingly, Plaintiff's RICO conspiracy claim is deficient as a matter of law and should be dismissed.

In light of the above, BNK Invest should be afforded Section 230 immunity. Further, Plaintiff fails to sufficiently plead a claim under RICO. Accordingly, BNK Invest respectfully submits that is entitled to dismissal from this action. The facts simply do not support any claim against BNK Invest. Amending the Complaint would be futile and, thus, the Complaint should be dismissed *with prejudice*.

## **RELEVANT ALLEGATIONS REGARDING BNK INVEST**

The Plaintiff's Complaint is ninety-one (91) pages long and contains two hundred and sixty-one (261) paragraphs. Remarkably, but tellingly, only six (6) allegations relate to BNK Invest and/or any alleged acts or omissions purportedly committed by them. Essentially, Plaintiff lumps all of the Defendants together throughout the Complaint, and attempts to expand the baseless narrative that BNK Invest conspired with all the Defendants to perpetrate a massive financial fraud upon Plaintiff. After exposing Plaintiff's improper attempt at group pleading, extensive hyperbole and improper legal conclusions, the relevant factual allegations (and corresponding paragraphs) concerning alleged acts or omissions by BNK Invest are as follows[1]:

> 7.    Defendants organized their scheme on BankInvestor—an online, anonymous, members-only message board owned and operated by Defendant BNK Invest. The Defendant members of BankInvestor are

---

[1] The Complaint's allegations of material fact are accepted as true for purposes of this Motion only.

associated in fact for the purpose of having out-of-state members obtain and maintain accounts at Spencer and other mutual savings associations in violation of the banks' membership policies (the "BankInvestor Enterprise"). To achieve that purpose, members develop, discuss, and deploy fraudulent and illegal tactics to open and maintain deposit accounts.

15.    Defendant BNK Invest, Inc. ("BNK Invest") is a New York corporation with its principal place of business in Jericho, New York. BNK Invest has operated BankInvestor.com ("BankInvestor") at all times relevant to this Complaint.

39(d).   Defendants BNK Invest, Sepersky, Goldman, Raganella, Farkas, Schaffler, Butler, Mitchell, Lashley, Klace, Goldner, Dossenbach, Goldstein, Abneri, Metviner, Purec, and possibly Does 1–4 reside outside this District and, pursuant to 18 U.S.C. § 1965(b), the Court may cause parties residing in another district to be summoned to the District of New Jersey if the "ends of justice require." As no other district would have personal jurisdiction over all Defendants, the ends of justice require the Court's exercise of personal jurisdiction over these Defendants.

61.    Other than BNK Invest, all Defendants are professional depositors who "seeded" accounts at Spencer for the purpose of ultimately benefiting from Spencer converting to a stock-issuing entity.

81.    BNK Invest, as the owner and operator of BankInvestor, is aware of the activities of the BankInvestor Enterprise. BNK Invest's principals actively facilitate the website, which allows BankInvestor Enterprise members to coordinate their unlawful conduct. Moreover, BNK Invest has enabled the Enterprise to conceal its activities and the identities of its members by permitting the use of aliases. BNK Invest's principals also regularly engage on the site under the aliases "admin" and "sysop."

84.    BankInvestor members took great care to conceal these coordinated efforts. Spencer only learned of the long-standing criminal BankInvestor Enterprise and its coordinated conduct to harm Spencer through third-party discovery documents produced in civil litigation by Defendant BNK Invest, Inc. in January 2023.

(Compl. ¶¶ 7, 15, 39(d), 61, 81, and 84.)

In addition to the immunity afforded BNK Invest under § 230 of the CDA, none of these

allegations are factually sufficient to sustain a claim against BNK Invest under RICO.

## **LEGAL STANDARD**

A court has authority under Fed. R. Civ. P. 12(b)(6) to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not provide fair notice of the claim and does not state factual allegations showing that the right to relief is plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to "'"state a claim to relief that is plausible on its face."'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible on its face when the factual allegations allow a court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. at 663. The factual allegations must present more than "the mere possibility of misconduct." *Id*. at 678. When considering a motion to dismiss, a court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-moving party, *Burget v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000), but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

The CDA at 47 U.S.C. §230 provides, in relevant part:

(a) Findings. The Congress finds the following:
   (1)  The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.
   (2)  These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.
   (3)  The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.
   (4)  The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.
   (5)  Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

4

(b) Policy. It is the policy of the United States—

(1) to promote the continued development of the Internet and other interactive computer services and other interactive media;

(2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

(4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and

(5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

(c) Protection for "Good Samaritan" blocking and screening of offensive material.

(1) Treatment of publisher or speaker. **No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.**

(2) Civil liability. No provider or user of an interactive computer service shall be held liable on account of--

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1) [subparagraph (A)].

\*\*\*

(f) Definitions. As used in this section:

(1) Internet. The term "Internet" means the international computer network of both Federal and non-Federal interoperable packet switched data networks.

(2) Interactive computer service. **The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.**

(3) Information content provider. The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.

(Emphasis added.)

The immunity afforded BNK Invest through the CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information

provided by another information content provider." 47 U.S.C. § 230(c)(1). Moreover, <u>Section</u> 230 provides that "[no cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." <u>Id.</u> at § 230(e)(3).

This grant of immunity only applies if the provider is an interactive computer service provider. 47 U.S.C. § 230(c)(1). Several Courts have recognized that "[t]his grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,'" "which is defined as someone who is `responsible, in whole or in part, for the creation or development of' the offending content." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (quoting 47 U.S.C. §230(f)(3)); *See Milgram v. Orbitz Worldwide, Inc.,* 419 N.J. Super. 305, 324-26 (Law Div. 2005) (recognizing that the "linchpin of the Ninth Circuit's decision was the fact that *Roommates.com* was actively participating in creating the objectionable content."); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014) (recognizing that the CDA's "grant of immunity is not without limits, however. It applies only to the extent that an interactive computer service provider is not also the information content provider of the content at issue.").

Under the CDA, a provider can be:

both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the [provider] is also a content provider.

*Fair Housing*, 521 F.3d at 1162.

However, a provider may still be entitled to immunity where it is alleged that a user employed a platform's features or neutral tools. *Id*. at 1169-70 n.24 (noting that insofar, however, as a plaintiff would bring a claim under state or federal law based on a website operator's passive

acquiescence in the misconduct of its users, the website operator would likely be entitled to CDA immunity. This is true even if the users committed their misconduct using electronic tools of general applicability provided by the website operator.").

The New Jersey Appellate Division addressed a similar question of applicability in *Donato v. Moldow*, 374 N.J. Super. 475 (App. Div. 2005). There, the specific issue before the Court was the "potential liability of the operator of an electronic community bulletin board website based on allegedly actionable messages posted anonymously by others." *Id*. at 478-79. The Defendant in the action established a particular website called "Eye on Emerson" in late 1999. "[B]eginning in early 2001, many negative messages about appellants were posted. Some concerned the discharge of their official duties. Others were personal. Many were vile and derogatory in their language and tone." *Id*. at 479-80. Upon review, New Jersey's Appellate Division opined that:

> Appellants' overriding allegation against Moldow is that he is liable as a publisher of the defamatory statements made by others. They further allege that Moldow was more than passive in his role as publisher, and "has actively participated in selective editing, deletion and re-writing of anonymously posted messages on the Eye on Emerson website and, as such, is entirely responsible for the content of the messages."

*Id.* at 483-841. The Appellate Division ultimately affirmed the trial Court's dismissal. *Id*. at 501.

The narrow, strict-constructionist lens through which courts have interpreted Section 230 has continued to shape judicial decisions in the years since *Donato* was decided in 2005. This approach was implicitly reaffirmed by the United States Court of Appeals for the Third Circuit in *Dimeo v. Max*, 248 Fed. Appx. 280 (3d Cir. 2007), decided two years later. In that case, Chief Judge Paul R. Michel of the United States Court of Appeals for the Federal Circuit, sitting by designation, authored the opinion. The central issue before the court was the district court's dismissal of the plaintiff's defamation claims against Tucker Max for alleged defamatory

statements posted on Max's website, as well as the denial of the plaintiff's motion to amend the complaint. *Id.* at 281.

In *Dimeo*, the Circuit Court opined:

> Max's website is an interactive computer service because it enables computer access by multiple users to a computer server. See 47 U.S.C. § 230(f)(2) (defining "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions"). DiMeo's complaint alleges that Max is a publisher of the comments on the website. However, DiMeo does not allege that Max authored the comments on the website or that he is an information content provider. See 47 U.S.C. § 230 (f)(3) (defining "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service"). As such, the website posts alleged in the complaint must constitute information furnished by third party information content providers. Therefore, the requirements of § 230 immunity are satisfied. In <u>Green,</u> we affirmed the dismissal of a complaint against America Online based on § 230 immunity from tort liability stemming from messages posted in chat rooms by unnamed defendants impersonating the plaintiff. 318 F.3d at 469-70. Similarly, we will affirm the dismissal of the complaint against Max based on § 230 immunity from tort liability resulting from messages by third party message posters. Although DiMeo argues on appeal that Max is in fact an information content provider because he solicited and encouraged members of his message board community to engage in defamatory conduct or was otherwise partially responsible for the conduct, the complaint is devoid of any such allegations. DiMeo also contends that by referencing websites not found in the complaint, the District Court impermissibly converted the motion to dismiss into a motion for summary adjudication without notice, *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989). We disagree. In determining that dismissal was proper, the District Court relied solely on § 230 as applied to the allegations in DiMeo's complaint. We see no error in the District Court's ruling.

*Id*. at 282.

In 2015, the United States Court of Appeals for the Third Circuit issued a per curiam decision in *Obado v. Magedson,* 612 Fed. Appx. 90 (3d Cir. 2015). There, the Court entertained

8

an appeal "from an order of the District Court dismissing [Plaintiff s] second amended complaint with prejudice." *Id.* at 92. The *Obado* Court opined that:

> § 230 proscribes liability in situations where an interactive service provider makes decisions "relating to the monitoring, screening, and deletion of content from its network -- actions quintessentially related to a publisher's role." Id. at 470-71. Thus, the defendants also cannot be held liable for failing to withdraw any of the alleged defamatory statements or for failing to make Obado's "rebuttal statements" more widely available. Obado's arguments to the contrary are unavailing for the reasons given by the District Court in its thorough opinion.

Id. at 93-94.

## LEGAL ARGUMENT

### POINT I

### THE IMMUNITY PROVIDED UNDER §230 OF THE COMMUNICATIONS DECENCY ACT WARRANTS DISMISSAL OF THE CLAIMS AGAINST BNK INVEST.

The Communications Decency Act of 1996, 47 U.S.C. § 230, provides internet platforms with immunity from liability for (i) any third-party user's content or (ii) the platform's efforts to restrict access to content. Plaintiff's allegations against BNK Invest—that BNK Invest is liable for the predicate acts taken by other Defendants, undertaken for the common purpose of fraudulently opening, maintaining, or avoiding closure of out-of-state Spencer accounts, violating the bank's Membership Policy—seek to precisely impose such prohibited liability here. Section 230 thus provides complete immunity. Accordingly, the Complaint against BNK Invest should be dismissed with prejudice.

**[CONTINUED ON NEXT PAGE]**

9

**A. Section 230 Immunizes Interactive Computer Service providers Like BNK Invest from Civil Liability for Content Created by Users.**

Section 230 provides that "interactive computer services" such as BNK Invest cannot be treated as either the "publisher" or the "speaker" of the content communicated by their users: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This provision is "supplemented by the so-called 'good Samaritan' provision": "no provider or user of an interactive computer service shall be held liable on account of … 'any action voluntarily taken in good faith to restrict access to … material that the provider or user considers … objectionable[.]'" *Donato v. Moldow*, 374 N.J. Super. at 486 (quoting 47 U.S.C. § 230(c)(2)(A)). The CDA provides broad immunity from claims contrary to its protections: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

By its plain language, Section 230 creates a "'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user…'" *Donato*, 374 N.J. Super. at 490 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)) (emphasis added). The policy reasons are apparent: because service providers like BNK Invest have "millions of users," the "specter of tort liability in an area of such prolific speech would have an obvious chilling effect [as] [i]t would be impossible for service providers to screen each of their millions of postings for possible problems." *Zeran*, 129 F.3d at 331. People use online communication platforms like BNK to send billions of messages a day. The platforms do not and cannot read them all, much less control their content. That is why Congress enacted the CDA. Without it, internet platforms would be liable anytime someone sends a tortious message. With so many messages flowing across their platforms, all of them would quickly go out of business.

10

Section 230 does not just afford service providers immunity for publishing third-party content, it also affords them immunity for exercising a "publisher's traditional editorial functions." *Donato*, 374 N.J. Super. at 498 (citing *Zeran*, 129 F.3d at 330). Publishing functions protected under the CDA include determining which users, or groups of users, have access to the provider's platform in the first instance. *See Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 157 (E.D.N.Y. 2017) ("[C]hoices as to who may use [a provider's] platform are inherently bound up in its decisions as to what may be said on its platform, and so liability [therefrom] … would equally 'derive[ ] from [Facebook's] status or conduct as a 'publisher or speaker.''").

As these cases demonstrate, Section 230 immunity applies at the motion-to-dismiss stage. It "is an immunity from suit rather than a mere defense to liability," and it therefore attaches "at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 254, 255 (4th Cir. 2009). It "protect[s] … not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008).

**B. BNK Invest Is Entitled to Section 230 Immunity.**

To qualify for immunity under Section 230(c)(1), BNK Invest must show that: (1) it is a "provider … of an interactive computer service"; (2) Plaintiff is attempting to hold BNK Invest liable as a "publisher or speaker" of allegedly harmful content; and (3) the content at issue was "provided by another information content provider," rather than by BNK Invest itself. *See Zeran*, 129 F.3d at 330 (quoting 47 U.S.C. § 230(c)(1)). Because Plaintiff attempts to hold BNK Invest liable for a quintessential publishing function—an alleged failure to restrict access to its platform, these elements are satisfied here, and BNK Invest is entitled to immunity under Section 230(c)(1).

11

### 1. BNK Invest Is a Provider of an Interactive Computer Service.

BNK Invest plainly qualifies as a "provider" of an "interactive computer service." *See* 47 U.S.C. § 230(c)(1). The CDA's definition of "interactive computer service" includes "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Plaintiff alleges that BNK Invest is the owner and operator of BankInvestor. Exhibit A, ¶ 81. Plaintiff also alleges that BankInvestor is "an online, anonymous, members-only message board," *see also id.* at ¶ 7. The CDA at 47 U.S.C.A. § 230(f)(2) provides that an "interactive computer service" means any information service, system, or access software provider within meaning of the CDA, which, as set forth above, defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the internet."

Plaintiff's claims are barred by section 230 of the CDA, which preempts all state causes of action that would hold a "provider or user of an interactive computer service" liable as the "publisher or speaker of any information provided by another information content provider." BNK Invest was not a "provider or user of an interactive computer service" but an "information content provider" as those terms are defined under Section 230; and as a "publisher" Section 230 grants immunity BNK Invest. *Barrett v. Fonorow*, 799 N.E.2d 916 (Ill. App. Ct. 2003) (Provider of an interactive computer service did not act as an information content provider when allowing third party author to post articles that allegedly defamed doctor on its website, as provider was not responsible for "creation or development" of articles, and thus, provider was entitled to immunity under Communications Decency Act.).

**2. Plaintiff Attempts to Hold BNK Liable as the Publisher or Speaker of the Allegedly Harmful Content.**

Section 230(c)(1) of the CDA provides that no provider or user of an interactive computer service shall be treated as the publisher or speaker of information provided by another information content provider. This immunity is broad and unequivocal, shielding interactive service providers from liability for content created by third parties. See *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

The Plaintiff's claims seek to hold BNK liable as the publisher or speaker of allegedly harmful content posted by third-party users. This effort conflicts directly with Section 230's purpose and binding precedent, which preclude imposing publisher liability on an online service for content it did not create. Courts have consistently recognized that Section 230 immunity protects defendants from claims that treat them as the publisher or speaker of user-generated content, even when the content is alleged to be harmful or defamatory. *See*, e.g., *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).

Plaintiff cannot circumvent § 230 immunity by attempting to cast BNK as a publisher. BNK did not create, develop, or materially contribute to the content at issue; it merely provided the platform for users to post content. Accordingly, BNK cannot be held liable as the publisher or speaker of such third-party content. Because Section 230 immunizes BNK from liability as the publisher or speaker of user-generated content, the Plaintiff's claims premised on such liability fail as a matter of law and should be dismissed.

**3. The Content At Issue Was Provided by BNK Users, Not by BNK.**

The final requirement for immunity under Section 230 is that the content at issue was "provided by another information content provider" rather than by BNK Invest itself. *See Zeran,*

129 F.3d at 330 (quoting 47 U.S.C. § 230(c)(1)). The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development" of the statements at issue, 47 U.S.C. § 230(f)(3)—a definition which courts have construed narrowly, *Ramey v. Darkside Prods., Inc.*, 2004 WL 5550485, at *7 (D.D.C. May 17, 2004). Here, the ***only*** factual allegations are that the individual Defendants organized their scheme on BankInvestor—an online, anonymous, members-only message board owned and operated by BNK. *See* Exhibit A, ¶ 7.  Plaintiff does not allege that BNK Invest had any control over, or input into, that content.  Users, not BNK Invest, posted and sent messages. Thus, the content at issue was "provided by another information content provider."

Indeed, the individual Defendants may have used BankInvestor, but that does not does not transform BNK Invest into a content creator. Service providers like BNK Invest are entitled to Section 230 immunity where it is alleged that a user employed a platform's neutral features or "neutral tools"—even where those tools are used "to carry out what may be unlawful or illicit" activities.  *See, e.g., Roommates.Com*, 521 F.3d at 1169 ("[P]roviding neutral tools to carry out what may be unlawful or illicit [activities] does not amount to 'development' for purposes of the immunity exception.").  "Absent substantial affirmative conduct on the part of the website creator promoting the use of such tools *for unlawful purposes*," the provision of neutral tools "is fully protected by CDA immunity."  *Id.* at 1174 n.37 (emphasis added).

Here, the content at issue was created and posted exclusively by BNK's users and not by BNK itself. BNK functions solely as an interactive computer service provider that hosts, transmits, and displays third-party content without materially contributing to or developing the specific content alleged to be actionable. As such, BNK is not an "information content provider" with respect to the disputed materials and cannot be held liable for such user-generated content.

14

Accordingly, Plaintiff's attempt to impose liability on BNK based on this content runs afoul of the clear statutory immunity granted by Section 230. In sum, all three prongs of the Section 230(c)(1) immunity analysis are satisfied, and the claim against BNK Invest should be dismissed as barred by the CDA.

**POINT II**

**PLAINTIFF OTHERWISE FAILS TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED.**

The CDA bars each of Plaintiff's claims against BNK Invest.  But even in the absence of CDA immunity, Plaintiff's claims against BNK Invest should be dismissed because Plaintiff fails to state a legally cognizable claim under RICO.

In Count II of his Complaint, Plaintiff purported to allege a RICO claim for violation of Section 1962(d), which states, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Section 1962(d), 18 U.S.C. § 1962(d) prohibits a conspiracy to Violate Section 1962(c). Since Plaintiff did not set forth a Section 1962 (c) violation they cannot state a conspiracy to violate that section. Moreover, even if it could be said that a Section 1962 (c) claim has been stated, Plaintiff did not properly allege a Section 1962(d) conspiracy.

Plaintiff based their claim in Count II on conclusory allegations that "Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(d), as described above, in violation of 18 U.S.C. § 1962(d)." (Compl. ¶ 254.) It is clear, however, that this allegation does not state a claim. Section 1962(d) makes it unlawful to conspire to violate Sections 1962(a), 1962(b) or 1962(c), but does not prohibit any conspiracy to violate Section 1962(d). Moreover, even if Plaintiff had pleaded a conspiracy to violate Sections 1962(a), 1962(b) or 1962(c), Count II would still fail.

15

Courts have held that any claim under Section 1962(d) based on a conspiracy to violate the other subsections of Section 1962 necessarily must fail if the substantive claims are themselves deficient. *See Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 191 (3d Cir. 1993); *see also Teti v. Towamencin Township,* No. Civ. A. 96-CV-5402, 2001 WL 1168102, at *8 (E.D. Pa. Aug. 17, 2001). Here, Plaintiff has not even alleged a claim under Sections 1962(a), 1962(b), or 1962(c). Therefore, Count II of Plaintiff's Complaint against BNK Invest should be dismissed.

Plaintiffs did not allege any agreement to violate Section 1962 (c), the general facts surrounding the formation of the conspiracy, or the role of BNK Invest in the conspiracy. The heart of a RICO conspiracy is the agreement. The agreement must go beyond the "mere agreement to commit the predicate act... to support a charge of conspiracy under 1962(d)...." Rather, a RICO conspiracy must contain an agreement to employ a pattern of racketeering activity or its proceeds for the purpose of violating 18 U.S.C. § 1962(a), (b) or (c). Although Plaintiff recited the existence of such an agreement, Plaintiff has not described in its pleadings, briefs or supplemental papers the general facts surrounding the formation of the conspiracy and BNK Invest's alleged role in the conspiracy. Plaintiff cannot state a claim merely by reciting the language of the RICO conspiracy statute and claiming that it has been violated. *Kalmanovitz v. G. Heileman Brewing Co. f Inc*. 595 F. Supp. 1385, 1400-01 (D. Del. 1984), aff'd. 769 F.2d 152 (3d Cir. 1985) ("Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient"). Plaintiffs' single conclusory allegation of a conspiracy is clearly insufficient, and any claim based upon Section 1962(d) should be dismissed.

Based on the foregoing, Plaintiff's RICO claim against BNK Invest should be dismissed in its entirety and with prejudice because: (i) Plaintiff fails to plead its case with sufficient

16

particularity or specificity; (ii) Plaintiff fails to establish the existence of an enterprise or pattern of racketeering activity; and (iii) the alleged RICO violation was not a "but for" or a proximate cause of the alleged injury.

### A.  Plaintiff Fails To Allege A RICO Claim With Sufficient Particularity.

In order to satisfy the requirements of Rule 9(b) in a fraud claim pleaded under RICO, the complaint must specify: (i) precisely what statements were made in what documents or oral representations or what omissions were made; (ii) the time and place of each such statement and the person responsible for making the same; (iii) the content of such statements and the manner in which they misled the plaintiff; and (iv) what the defendants obtained as a consequence of the fraud. *Equitable Life Assurance Soc. v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1029 (S.D.N.Y. 1985); *see also Conan Properties, Inc. v. Mattel, Inc.*, 619 F. Supp. 1167, 1172 (S.D.N.Y. 1985).

The Complaint in this case lacks the specificity required by Rule 9(b).  By way of example, Plaintiff's mail or wire fraud claim against BNK Invest merely consists of nothing more than generalized allegations against the Defendants collectively. In doing so, Plaintiff fails to describe how BNK Invest made intentionally fraudulent statements, benefitted from any fraud or why they would even engage in such wrongdoing.  *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) ("Finally, the complaint must 'provide some minimal factual basis that gives rise to a strong inference of fraudulent intent.'").[2] Plaintiff's minimal allegations against BNK Invest utterly fails

---

[2] The Second Circuit has developed an extensive body of RICO case law, owing in large part to its early and frequent involvement in organized crime prosecutions in New York, which served as a focal point for the federal government's initial enforcement efforts under the statute. See, e.g., *United States v. Persico*, 832 F.2d 705 (2d Cir. 1987) (upholding RICO convictions arising from Mafia-related enterprise activity); *United States v. Salerno*, 868 F.2d 524 (2d Cir. 1989) (affirming use of RICO to prosecute organized crime figures and discussing enterprise and pattern elements). As a result, Second Circuit precedent is frequently cited and relied upon by other courts—including the District of New Jersey—particularly where the Third Circuit has not squarely addressed an issue. See also *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016) (affirming the Second Circuit's extraterritoriality framework and further cementing its RICO jurisprudence as nationally instructive).

to "specify the time, place, speaker, and content of the alleged misrepresentation[s]." *Spoto v. Herkimer County Trust*, 2000 U.S. Dist. LEXIS 6057, at *16 (N.D.N.Y Apr. 20, 2000).

Plaintiff further fails to satisfy the specificity pleading requirement as to BNK Invest. The Second Circuit has held that the particularity requirements of a RICO claim should be established *as to each individual defendant*. *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *see also United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) (holding that "[t]he focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d).").

In *Miller v. City of New York,* Case No. 05-cv-6024, 2007 U.S. Dist. LEXIS 25016 at *11 (E.D.N.Y. Mar. 30, 2007), the District Court dismissed the plaintiff's RICO claims against all defendants, having found that the plaintiff's allegations of the predicate act of mail fraud were conclusory in nature and were not pleaded with the requisite particularity pursuant to Rule 9(b). In applying the specificity requirement, the *Miller* court determined that:

> Plaintiff does not meet these requirements in his complaint. Instead, Plaintiff merely accuses handfuls of defendants of engaging in an alleged enterprise without identifying each defendant's role in and relationship to the enterprise. Therefore, Plaintiff fails to meet the requirement under Rule 9(b) that allegations of fraud must connect to each individual defendant.

*Miller*, at *12.

As in *Miller*, the Plaintiff here "merely accuses" all of the Defendants collectively of fraud through "BankInvestor Enterprise" without explaining with any particularity their alleged specific roles, acts or relationships with the enterprise. (Complaint ¶¶81, 84.) Further, Plaintiff cannot explain, let alone identify, how BNK Invest was involved in perpetrating the alleged fraud. Thus, without any particularized allegations that would attribute the requisite fraudulent statements or

actions to all of the Defendants, Plaintiff cannot satisfy the Rule 9(b) requirement as to the BNK Invest.

### B.  Plaintiff's RICO Claim Should Be Dismissed Because Plaintiff Cannot Demonstrate the Existence of An Enterprise.

The RICO statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any ongoing union or group of individuals associated in fact although not a legal entity."  18 U.S.C. §1961(3).  RICO's enterprise requirement also includes a distinctness element whereby a plaintiff must "allege and prove the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name." *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161-62 (2001); *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 343 (2d Cir. 1994) ("by virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise"); *see also Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 262 (3d Cir. 1995).

With respect to pleading "enterprise" for a RICO claim, the Second Circuit has stated:

> Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant himself. [citation omitted.] Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

*Riverwoods,* 30 F.3d at 344. Thus, the person-enterprise distinction is not circumvented "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Id.* Accordingly, because Plaintiff alleges nothing more than BNK Invest and its agents conducting the regular affairs of BNK Invest itself, the Complaint fails to meet the requirement of a distinct RICO enterprise.

Plaintiff has failed to sufficiently plead the existence of a distinct enterprise under RICO, and therefore the RICO claim should be dismissed with prejudice.

### C. Plaintiff's RICO Claim Should Be Dismissed Because Plaintiff Cannot Demonstrate A Pattern of Racketeering Activity.

In order to state a claim under RICO, the plaintiff must allege a pattern of racketeering activity which is not formed by "sporadic activity and must have more than a single, short-term goal." *Tarr v. Credit Suisse Asset Mgmt.,* 958 F. Supp. 785, 800 (E.D.N.Y. 1997). Both the Supreme Court and Second Circuit have held that an allegation of two acts of "racketeering activity," without more, is not sufficient to establish a pattern. *See H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 238-44 (1989) ("[t]he term 'pattern' itself requires the showing of a relationship between the predicates, *ibid.*, and of 'the threat of continuing activity' … 'It is this factor of *continuity plus relationship* which combines to produce a pattern.'") (citations omitted); *United States v. Indelicato*, 865 F.2d 1370, 1381 (2d Cir. 1989). For purposes of establishing a "pattern," the predicate acts must: (1) be related and (2) constitute a threat of continued racketeering activity, a determination which is to be made on a case-by-case basis. *H.J. Inc.,* 492 U.S. at 238-44; *see also United States v. Alkins*, 925 F.2d 541, 551 (2d Cir. 1991).

As pleaded in the Complaint, Plaintiff fails to demonstrate such "interrelationship between acts, suggesting the existence of a pattern." *Indelicato*, 865 F.2d at 1382. Here, the Complaint does not identify even a single predicate act committed by BNK Invest, let alone a pattern of such conduct. Plaintiff's conclusory allegations are devoid of any factual support that would satisfy the requirements of Rule 9(b). Indeed, Plaintiff does not describe a single act by BNK Invest that would even *suggest*, let alone establish, conduct qualifying as racketeering activity under 18 U.S.C. § 1961(1). The Complaint offers only vague and speculative references to alleged

misconduct, but none of these are tied to any specific, actionable event or communication attributable to BNK Invest.

Instead, the Complaint resorts to generalized accusations, lumping BNK together with other Defendants without articulating what, if anything, BNK Invest specifically did. This type of undifferentiated group pleading is plainly insufficient. *See In re Refco Inc. Securities Litig*., 826 F. Supp. 2d 478, 529 (S.D.N.Y. 2011) (holding that "lumping" allegations against all defendants fails to meet RICO pleading standards, particularly under Rule 9(b)). "[W]hen a fraud claim is made against multiple defendants, ... a plaintiff is obligated to state, with particularity, the acts [and] omissions complained of by each defendant. General allegations made against multiple defendants do not satisfy the pleading requirements of [Rule] 9(b)." *Rafter v. Bank of America*, 2009 WL 691929, at *12 (S.D.N.Y.) (internal quotations omitted). *See also Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 492 (D.N.J. 1998) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993); *In re Crude Oil Commodity Litigation*, 2007 WL 1946553, at *6 (S.D.N.Y.) ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement.").

Plaintiff's theory appears to be that, because BNK Invest owns the online platform that other Defendants allegedly used to take certain actions, BNK Invest should be held liable under RICO. But mere ownership of a platform—without factual allegations that BNK directed, participated in, or had knowledge of any alleged misconduct—is not sufficient to state a RICO claim. Passive ownership or affiliation does not create liability under § 1962(c), which requires active conduct in the operation or management of the enterprise's affairs through a pattern of

racketeering activity. *See Reves v. Ernst & Young*, 507 U.S. 170, 171 (1993) (It is clear from the statute's language and legislative history that Congress did not intend to extend § 1962(c) liability beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity.).

Plaintiff's complaint fails to allege any predicate acts committed by BNK Invest, fails to demonstrate the existence of a pattern, and improperly relies on group pleading and conclusory assertions. As such, Plaintiff's RICO claim against BNK Invest should be dismissed with prejudice.

### D. Plaintiff's RICO Claim Should Be Dismissed for Failure to Show How the Alleged RICO Violation Proximately Caused Plaintiff's Injury.

Plaintiff further fails to demonstrate that BNK Invest would be liable under RICO Section 1962(c) because (1) Plaintiff fails to allege loss causation and (2) even if it did, a RICO violation is not the proximate cause of any of its alleged injuries. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265-266 (1992) (holding that a RICO violation must allege a direct relation between the injury asserted and the injurious conduct, not merely "but for" causation); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (a defendant's RICO violation must be both the "but for" and proximate cause of a plaintiff's injury).

Plaintiff's allegation that BNK Invest's racketeering activities directly and proximately caused their injuries is refuted by well-settled case law defining the standards to be applied when assessing claims brought under Section 1962(c).  In *Holmes*, the Supreme Court addressed a claim by the Securities Investor Protection Corporation ("SIPC") that petitioner Holmes and others had conspired in a fraudulent stock-manipulation scheme that prevented two of the SIPC's member broker-dealers from meeting obligations to their customers, and this conduct triggered SIPC's statutory duty to advance funds to reimburse the customers.  Noting that the term "proximate

cause" requires "some direct relation between the injury asserted and the injurious conduct alleged," the Supreme Court dismissed the SIPC's RICO Section 1962(c) claim against Holmes, holding that "the link is too remote between the stock manipulation alleged, which directly injured the broker-dealers by rendering them insolvent, and the nonpurchasing customers' losses, which are purely contingent on the broker-dealers' inability to pay customers' claims." *Id.* at 271.  In other words, the Court held that the stock manipulation that rendered the broker-dealers insolvent had no direct relation to the customers' losses, which arose out of the broker-dealers' inability to pay customers' claims.  *Id.* at 271.

In *Hemi Group, LLC, et. al v. City of New York*, 130 S. Ct. 983 (2010) the Supreme Court addressed a claim that "suffers from the same defect as the RICO claim rejected in Anza," and relied on its decision in *Holmes* to reaffirm the rule that to state a civil RICO claim, a plaintiff must show that a RICO offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Id.* at 989, quoting *Holmes, 503 U.S.* at 268.  In *Hemi*, the City alleged that a cigarette vendor and owner committed mail and wire fraud by selling cigarettes to city residents without reporting the sales to the state, and thus the city lost tax revenue.  *Id.* at 986.  In holding that the City could not show that it lost tax revenue "by reason of" of the alleged RICO violation, the Supreme Court noted that the conduct responsible for the City's harm was the customers' failure to pay taxes, while the conduct that constituted the alleged fraud was Hemi's failure to file Jenkins Act reports.  *Id.* at 990.  Thus, the Supreme Court found that the conduct directly causing the harm was distinct from the conduct giving rise to the fraud, and the City could not show that its injuries were proximately cause by the alleged RICO violations.  *Id.*

The similarities between *Holmes*, *Hemi* and this matter are undeniable.  As in those cases, Plaintiff's alleged injuries are purely contingent on the decisions made, if any, by unknown and

possibly non-existent customers.  Tellingly, Plaintiff cannot describe any actual employment or business damages that were caused by BNK Invest's alleged RICO offense.  Rather, Plaintiff makes an unwarranted and misplaced allegation that BNK Invest have somehow harmed Plaintiff because BNK Invest was "aware of the activities of the BankInvestor Enterprise. BNK Invest's principals actively facilitate the website, which allows BankInvestor Enterprise members to coordinate their unlawful conduct."  (Complaint ¶ 81.) Indeed, nowhere in the Complaint does Plaintiff plead that it was directly injured by or injured "by reason of" BNK Invest for purposes of a RICO claim.  *Hemi*, 130 S. Ct.  at 990.  Accordingly, since Plaintiff does not establish, let alone plead, that BNK Invest's conduct "not only was a 'but for' cause … but was the proximate cause" of any injury suffered by Plaintiff, Plaintiff's Section 1962(c) claim fails as a matter of law. *Holmes, 503 U.S.*  at 268.

### E.  Plaintiff Lacks Standing With Respect To the RICO Claim.

"[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994); *see also Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (finding that amount of damages alleged was not "clear and definite" and holding that "Plaintiffs lack statutory standing under RICO because their claims are unripe").

In the case at bar, Plaintiff does not allege a definite amount in damages. Thus, as pled in this Complaint with Plaintiff's own words, "where the extent of damages are still unknown, a RICO injury remains speculative and unprovable*." DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 237 (E.D.N.Y. 2010) (internal quotation marks omitted).

Notably, one court has stated "[p]erhaps the most important consideration in determining whether a claim is ripe for adjudication is the extent to which the claim involves uncertain and

contingent events that may not occur as anticipated, or indeed may not occur at all." *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (internal quotation marks omitted). As Plaintiff has not yet suffered any cognizable claims for RICO damages, its premature RICO claim should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons and on the basis of the authority cited herein, Plaintiff cannot state a claim for relief against BNK Invest and, therefore, this Court should dismiss all of Plaintiff's claims against BNK Invest without leave to further amend and without prejudice.

Respectfully Submitted,
**Kaufman Dolowich, LLP**
*Attorneys for Defendant, BNK Invest, Inc.*

By: _____
Kaitlin R. Principato, Esq.

Dated: June 23, 2025

25