# EXHIBIT C

2009 WL 691929
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Marcia RAFTER, Plaintiff,
v.
BANK OF AMERICA, Fleet Boston Financial Corp., Fleet Bank, City of New York, Charles Gifford, Xiomara Leto, Kimberly Jenkins, Irvin Noak, Jane Doe(s), and John Doe(s), Defendants.

No. 04 Civ. 3341(JSR)(KNF).
|
March 12, 2009.

## REPORT and RECOMMENDATION

KEVIN NATHANIEL FOX, United States Magistrate Judge.

**\*1** TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

In this action, brought pursuant to 42 U.S.C. § 1983, by Marcia Rafter ("Rafter"), proceeding *pro se,* all defendants have moved for summary judgment, in accordance with Fed.R.Civ.P. 56, and the plaintiff has cross-moved for summary judgment. The motions are analyzed below.

### II. BACKGROUND

On March 28, 2003, Rafter, a long-time customer of Fleet Bank ("Fleet")[1] visited a branch of the bank, located at 200 Park Avenue, in Manhattan, to obtain, among other things, an ATM card(s) associated with a checking account she had opened several days earlier. Prior to opening that checking account, Rafter had opened and maintained checking and savings accounts with Fleet previously. At Fleet's 200 Park Avenue branch, Rafter spoke with defendant Kimberly Jenkins ("Jenkins"), the assistant Personal Banking Representative, in an attempt to obtain the ATM card(s). Jenkins did not want to surrender the ATM card(s) to Rafter. However, Rafter obtained the ATM card(s) from the bank's branch manager and exited the bank.

Jenkins testified, at her deposition, she was "upset" that Rafter had obtained the ATM card(s). Therefore, she entered the bank's automated system "to inquire on potentially putting a stop on the cards that were issued." Through the bank's automated system, Jenkins learned a withdrawal transaction(s), involving a large sum(s) of money, was being conducted, at a Fleet branch located at 345 Park Avenue, Manhattan, on the account(s) associated with the ATM card(s) Rafter had obtained from Fleet's 200 Park Avenue branch. Jenkins was "appalled" that a withdrawal(s) was being made at another branch of the bank from the account(s) associated with Rafter's ATM card(s). According to Jenkins, she "pulled [the plaintiff's customer] profile [from] the [bank's automated] system and [from a] file cabinet [at the bank]." Jenkins explained that, when a customer opened a bank account with Fleet, the customer would provide information to the bank, including a social security number. In addition, such a customer would sign an account application form, certifying that the social security number provided by the customer is that of the customer.[2] Jenkins explained further she discovered the social security number in the bank's customer profile for Rafter, when entered in the bank's automated system, revealed two customers, Rafter and a bank employee, Mark Wong ("Wong"), shared the same social security number.[3]

Jenkins determined, without the benefit of any Fleet directive or published bank policy, that the owner of funds in a Fleet bank account is not the person whose name is listed as the account's title holder but, rather, the person whose social security number is associated with the account. Upon discovering two bank customers shared the same social security number, Jenkins made a telephone call to Wong, at the bank facility where he was employed. Jenkins asked Wong to recite his social security number for her during their telephone conversation. Thereafter, Jenkins contacted Neil Barretto ("Barretto"), a Fleet security officer.

**\*2** Jenkins informed Barretto that Rafter was attempting to withdraw funds, at Fleet's 345 Park Avenue branch, although the social security number associated with the account from which the funds were being removed did not belong to her. Jenkins sought Barretto's advice "on how [she] should respond to the situation." Barretto directed Jenkins to contact the police and have Rafter apprehended; Jenkins followed his advice and called a 911 telephone operator to request police assistance.

After speaking with Jenkins, Barretto contacted defendant Xiomara Leto ("Leto"), the branch manager who was assigned to Fleet's 345 Park Avenue branch. Barretto also spoke, via telephone, with defendant Irwin Noak ("Noak"), a New York City detective. Barretto advised Noak that Rafter was attempting to withdraw funds, at the 345 Park Avenue Fleet branch, from an account with restrictions on it, including a marshal's levy. However, Rafter was attempting to withdraw funds from a savings account she maintained with Fleet, on which no restraints existed.[4] Noak responded to the bank branch, conferred with Leto, who indicated Rafter was attempting to withdraw funds from an account that was not hers, and, via telephone, with Wong. Thereafter, Noak arrested Rafter. Barretto also contacted Wong and obtained from him, via facsimile, a copy of his social security card.

Rafter recalls that, on March 28, 2003, while she was in the midst of obtaining cashiers' checks and travelers' checks, in excess of $100,000, drawn on a savings account she maintained with Fleet, Leto appeared and prevented the teller who was handling the transaction from surrendering the checks to her. According to Rafter, Leto stated a problem with the bank's computer had interfered with the teller's transaction. Leto's intervention delayed Rafter's departure from the bank and enabled uniformed police officers and detectives to respond to the bank and effect Rafter's arrest. Rafter contends Noak: (i) placed handcuffs on her tightly, injuring her wrists; (ii) dragged her from the bank's premises; (iii) spoke with her scurrilously; (iv) touched her body offensively, while searching her; (v) assaulted her at a police precinct; and (vi) bloodied her hand, while he attempted to obtain her fingerprints. Rafter did not obtain medical treatment for the injuries she contends Noak inflicted on her. Rafter also contends items of personal property, taken when she was arrested, were stolen by Noak, as they were not returned to her.

Following the arrest, Rafter remained in custody for the next three days, awaiting arraignment on a criminal complaint lodged against her by Noak. On March 31, 2003, Rafter appeared before a judicial officer, in the New York City Criminal Court, was released, without posting bail, and directed to return to court on a subsequent date. In the criminal complaint filed against Rafter, Noak alleged Rafter committed third-degree identity theft, a violation of [New York Penal Law Section 190.78](1), by using the personal identifying information of another person with the intent to defraud and thereby obtain money or to cause a financial loss to another person. The complaint indicates Noak was informed by Jenkins and Leto that each observed Rafter use Wong's social security number to access money from a Fleet bank account. Moreover, Noak alleged, in the accusatory instrument, Wong informed him that the social security number at issue belonged to Wong and, further, Wong did not authorize Rafter to use his social security number.

**\*3** Jenkins and Leto provided written depositions to the New York County District Attorney, in support of the facts recited by Noak in the criminal complaint. Through those supporting depositions, each acknowledged having read the accusatory instrument and certified—with the understanding that a false statement could result in a criminal prosecution—the facts attributed to them, respectively, in the criminal complaint, are true. When deposed in connection with the instant action, Jenkins remembered neither the circumstances under which her deposition supporting the accusatory instrument was prepared nor signing it. During her deposition, Leto acknowledged her signature appears on the deposition supporting the accusatory instrument, but she denied the truth of certain statements Noak attributed to her in that document. On May 20, 2003, the criminal complaint was dismissed, upon the application of the New York County District Attorney. The certificate noting the dismissal, in the record before the Court, is silent respecting the basis upon which the motion was made.

Rafter maintains that, in addition to violating her constitutional rights, through a false arrest-that is, a warrantless arrest by Noak for which he lacked probable cause-false imprisonment and a malicious prosecution, the defendants: (a) discriminated against her; (b) assaulted her physically and verbally; (c) harassed and humiliated her; and (d) caused her to suffer emotional distress and hardship. Rafter contends the defendants acted negligently and incompetently, committed perjury, defamed her, caused her to lose income, and to suffer irreparable harm. In addition, she alleges the defendants: (i) committed fraud; (ii) breached a contract; (iii) breached a fiduciary duty owed to her; (iv) committed larceny; (v) "breached and defiled" her right to privacy; (vi) obstructed justice; and (vii) committed unidentified "continuing wrongs and continuing violations." Moreover, according to Rafter, the defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").

For their part, defendant City of New York and Noak (hereinafter "City defendants") contend probable cause existed for Noak to effect Rafter's arrest, those of her claims

that are not predicated on alleged constitutional violations are baseless and, consequently, they are not liable to her for any damages she seeks. Fleet and the defendants associated with it (hereinafter "Bank defendants") maintain Rafter's claims are time-barred and/or lack merit. By contrast, Rafter has asserted her claims are timely made, and the record warrants the court in granting summary judgment for her.

### III. DISCUSSION

*Summary Judgment Standard*

Fed.R.Civ.P. 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' [ ] An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the [non-moving] party.' " *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 [1986] ). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the party opposing the motion and must draw all reasonable inferences in the opposing party's favor. *See Salamon v. Our Lady of Victory Hosp.,* 514 F.3d 217, 226 (2d Cir.2008).

**\*4** The moving party bears the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Once the moving party has satisfied its burden, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in the original). "The moving party is 'entitled to a judgment as a matter of law' [when] the [non-moving] party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552.

Where, as here, a litigant appears before the court *pro se,* that litigant's submissions should be read liberally and interpreted so as "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citation omitted). However, this does not mean a *pro se* litigant is released from the typical requirements of summary judgment. A "bald assertion" made by a *pro se* litigant that is not supported by evidence will not be sufficient to overcome a motion for summary judgment. *See Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995).

### CITY DEFENDANTS' MOTION

*Section 1983*

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citing *Dwares v. City of New York,* 985 F.2d 94, 98 [2d Cir.1993] ); *Giordano v. City of New York,* 274 F.3d 740, 750 (2d Cir.2001). A municipality is deemed a person for the purpose of a § 1983 claim. *See Vives v. City of New York,* 524 F.3d 346, 350 (2d Cir.2008). Therefore, a § 1983 claim may be made against a municipality, like the City of New York, for a policy(ies) it has adopted and employed that violates a plaintiff's constitutional right(s). *See Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018 (1978).

A state official sued in his official capacity is not a "person" within the meaning of § 1983 and, consequently, is not subject to liability for depriving a person of constitutional rights. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304 (1989). In the instant case, Rafter has sued Noak in his individual capacity. Therefore, a § 1983 claim may be made against him for acts performed in his individual capacity. Inasmuch as it is uncontested that at all times relevant to this action, Noak acted under color of state law, through and for the City of New York, the issue that remains to be determined, with respect to him, in relation to the City defendants' motion, is whether his arrest of Rafter, his ensuing interactions with her, including the pursuit of the criminal action against Rafter, amounts to a deprivation of Rafter's constitutional rights.

*False Arrest*

**\*5** The Fourth Amendment to the Constitution proscribes searches and seizures that are not effected upon probable cause. "Probable cause to arrest exist when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991). In the case at bar, Noak received reasonably trustworthy information from several Fleet employees, among them Barretto, Leto and Wong, that Rafter, while at the 345 Park Avenue branch, was attempting to withdraw funds from an account bearing Wong's social security number, and that Wong had not authorized her to use his social security number. The information Noak received from the Fleet employees was sufficient to warrant a reasonable belief that Rafter was committing a violation of New York's Penal Law; therefore, Noak had probable cause to effect Rafter's arrest. *See Boyd v. City of New York,* 336 F.3d 72, 75–76 (2d Cir.2003).

Rafter takes umbrage at the warrantless nature of the arrest Noak made of her on March 28, 2003. However, a warrantless arrest may be made by a law enforcement officer when it is supported by probable cause. *See United States v. Watson,* 423 U.S. 411, 423, 96 S.Ct. 820, 828 (1976). Noak had probable cause to effect Rafter's arrest, based on the information he received from Fleet employees; the fact that he did so, without a warrant, did not violate her Fourth Amendment right.

*False Imprisonment*

"The common law tort of false arrest is a species of false imprisonment, an action 'derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of movement.' " *Singer v. Fulton County Sheriff,* 63 F .3d 110, 118 (2d Cir.1995) (citation omitted). "A plaintiff asserting a common-law claim for false imprisonment must establish that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise privileged. The existence of probable cause serves as a legal justification for the arrest and an affirmative defense to the claim ." *Martinez v. City of Schenectady,* 97 N.Y.2d 78, 85, 735 N.Y.S .2d 868, 872 (2001). Since Noak had probable cause to arrest Rafter, her claim for false imprisonment cannot survive the City defendants' summary judgment motion.

*Malicious Prosecution*

No federal analytical framework for adjudicating a § 1983 malicious prosecution claim exists. Therefore, in accordance with 42 U.S.C. § 1988, the Court must apply the governing state law. *See Conway v. Village of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984). The elements of a malicious prosecution claim, under New York law, are: (1) the defendant initiated a prosecution against the plaintiff; (2) the prosecution was terminated in the plaintiff's favor; (3) the defendant lacked probable cause; and (4) the defendant acted with malice. *See Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983). Each of these elements must be established in order for a plaintiff to prevail on a malicious prosecution claim. *See Rothstein v. Carriere,* 373 F.3d 275, 282 (2d Cir.2004). In addition, "to sustain a § 1983 malicious prosecution claim, [in a federal court,] there must be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland,* 373 F.3d 310, 316 (2d Cir.2004) (quoting *Singer,* 63 F.3d at 117). Except for this additional element, the analysis of a malicious prosecution claim under federal and New York law is the same. *See Boyd v. City of New York,* 336 F.3d at 75.

**\*6** "A charge and an arrest do not amount to a prosecution. [An] action [for malicious prosecution] lies only when a legal prosecution, a judicial proceeding, has been maliciously and without probable cause instituted against the plaintiff, and has been terminated in the plaintiff's favor." *Raschid v. News Syndicate Co.,* 239 A.D. 289, 291–92, 267 N.Y.S.2d 221, 225 (App. Div. 1st Dep't 1933). Therefore, a § 1983 malicious prosecution claim implicates some "post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Singer,* 63 F.3d at 117. Rafter was released on her own recognizance after appearing before the New York City Criminal Court. Under New York law, when a criminal defendant is released on her own recognizance, "the court must direct her to appear in the criminal action or proceeding involved whenever her attendance may be required and to render herself at all times amenable to the orders and processes of the court." New York Criminal Procedure Law § 510.40(2). As noted above, Rafter was directed to return to the New York City Criminal Court, by the judge presiding on March 31, 2003, after she was arraigned on the accusatory instrument lodged against her by Noak. The post-arraignment restraint on Rafter's liberty, occasioned by the court's directive to Rafter that she appear in court for another proceeding, on a subsequent date, implicates the

Fourth Amendment. *See Rohman v. New York City Transit Authority,* 215 F.3d 208, 216 (2d Cir.2000); *Genia v. New York State Troopers,* No. 03–CV–0870, 2007 WL 869594, at *15 (E.D.N.Y. Mar. 20, 2007).

Noak commenced a criminal proceeding against Rafter by lodging a complaint against her, with the New York City Criminal Court, and having her arraigned on that accusatory instrument. *See Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994). Therefore, the first element of the plaintiff's malicious prosecution claim has been satisfied. Thereafter, the criminal proceeding was terminated, when the prosecution abandoned it by moving, successfully, to dismiss the criminal complaint. The basis upon which the motion was made is not documented in the certificate establishing the dismissal, that is in the record before the Court. When the basis for dismissing a criminal charge is unclear, "New York courts consider whether the proceeding was terminated in plaintiff's favor to be a question of fact that prevents summary judgment." *Rounseville v. Zahl,* 13 F .3d 625, 629 (2d Cir.1994).

*Excessive Force*
The Fourth Amendment proscribes the use of excessive force by police officers, which, in this context, is measured by the standard of objective reasonableness, paying "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989).

*7 Reading Rafter's complaint and the submissions made by her liberally, as the Court must, *see McPherson,* 174 F.3d at 280,* establishes she has asserted a claim against Noak for employing excessive force in effecting her arrest and, thereafter, while she remained in his custody. Rafter contends Noak: (1) applied handcuffs tightly, injuring her wrists; (2) caused her hand to bleed, when he attempted to obtain her fingerprints; and (3) dragged her and hit her about the head. Considering all evidence in the light most favorable to Rafter and drawing all permissible inferences in her favor, the Court cannot conclude, as a matter of law, it is objectively reasonable for a police officer effecting the arrest of a non-threatening bank customer, who was neither attempting to flee, nor resisting arrest actively, to: (a) handcuff the arrestee so tightly that her wrists are injured; (b) fingerprint the arrestee with such force that the person's hand bleeds; (c) strike the arrestee about the head; or (c) or drag her, as Rafter describes. The record does not contain sufficient facts for the Court to assess the event from Noak's perspective and to evaluate whether reasonable police officers might have disagreed with the amount of force employed by Noak. *See Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. On the other hand, the Court is mindful Rafter testified, at her deposition, that, although she experienced pain, she did not seek medical attention as a result of her encounter with Noak, on March 28, 2003, raising the prospect that the use of force and any injury she suffered was *de minimis*. A *de minimis* use of force, in most instances, will not come within the Constitution's ambit. *See Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 1000 (1992). In the circumstance of the instant case, the deficient factual record makes granting summary judgment to the City defendants, on Rafter's excessive force claim, inappropriate. *See Simpson v. Saroff,* 741 F.Supp. 1073, 1078 (S.D.N.Y.1990). However, Noak has asserted the affirmative defense of qualified immunity which, as discussed below, can shield him from liability to Rafter.

*Vituperative Conduct*
"Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation recognizable under Section 1983." *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995). Therefore, to the extent Rafter alleges she is entitled to recover damages, through this § 1983 action, because of offensive utterances she maintains Noak directed to her, she is wrong, and granting the City defendants summary judgment on this claim is reasonable and appropriate.

*Qualified Immunity*
Noak has asserted the affirmative defense of qualified immunity. The doctrine of qualified immunity protects state officials from liability for civil damages for discretionary acts performed in the course of their duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McClellan v. Smith,* 439 F.3d 137, 147 (2d Cir.2006) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 [1982] ). A right is clearly established if: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable [person in the defendant's position would] have understood from the existing law that [his] conduct was unlawful.' " *Luna v. Pico,* 356 F.3d 481, 490 (2d Cir.2004) (citation omitted).

**\*8** Summary judgment dismissing a claim based on the affirmative defense of qualified immunity may be granted if the court finds: (a) the asserted right(s) was not clearly established at the time of the alleged violation; or (b) "the evidence is such that, even when it is viewed in the light most favorable to the [plaintiff] and with all permissible inferences drawn in [her] favor, no rational jury could fail to conclude that it was objectively reasonable for [Noak] to believe that [he was] acting in a fashion that did not violate a clearly established right." *In re State Police Litig.,* 88 F.3d 111, 123 (2d Cir.1996). The Second Circuit Court of Appeals has explained that, because qualified immunity is a defense, the court is "not concerned with the correctness of [a defendant's] conduct, but rather the 'objective reasonableness' of [his] chosen course of action given the circumstances confronting [him] at the scene." *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995). "Since qualified immunity is an affirmative defense, [Noak] bear[s] the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." *Varrone v. Bilotti,* 123 F.3d 75, 78 (2d Cir.1997).

Rafter's Fourth Amendment right, to be free from: (a) an arrest not predicated on probable cause; and (b) a law enforcement officer's use of excessive force were well-established by the time of her arrest, in March 2003. Viewing the evidence in the light most favorable to Rafter and drawing all permissible inferences in her favor, the Court finds no rational jury could fail to conclude it was objectively reasonable for Noak, armed with the information provided to him by Fleet employees, to believe he was acting in a manner that did not violate Rafter's Fourth Amendment right, when he effected her arrest, on March 28, 2003. Therefore, the doctrine of qualified immunity shields Noak from liability to Rafter, for civil damages, based on the constitutional violation claims she has asserted against him, premised on false arrest, false imprisonment and malicious prosecution. However, for the reasons stated above, on the deficient record before the Court, the doctrine of qualified immunity cannot be employed to permit an award of summary judgment to the City defendants on Rafter's excessive force claim.

*Municipal Liability*

As noted above, "[t]o hold [the] City liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Rafter did not assert a *Monell* claim explicitly. However, reading Rafter's submissions to raise the strongest arguments they suggest, she alleges the City of New York failed to train and supervise Noak appropriately, and that failure resulted in a deprivation of her constitutional rights.

**\*9** Failure to train and supervise police personnel may make a municipality liable to a plaintiff in a § 1983 action only where such failures "[amount] to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989). In order to establish deliberate indifference by the City of New York, Rafter must demonstrate that: (i) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation [;  (ii) ] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation [; and (iii) ] the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992). However, where a city has a training program for its police personnel, a plaintiff, such as Rafter, must also "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 129 (2d Cir.2004) (quoting *Canton,* 489 U.S. at 391, 109 S.Ct. at 1206). Rafter adduced evidence during a deposition of Steven Anger, Deputy Chief, New York City Police Department, that detectives, such as Noak, are trained by the police department. As a consequence, it is incumbent upon Rafter to identify precisely some deficiency(ies) in the City of New York's detective training program and to show the flaw(s) in that program caused her to suffer a constitutional deprivation; this Rafter has not done. Therefore, her claim, that the City of New York is liable to her under § 1983, cannot withstand the motion for summary judgment.

*State–Law Claims*

In addition to asserting false arrest, unlawful imprisonment and malicious prosecution, as constitutional violations, Rafter has also asserted common-law causes of action for these intentional torts. As discussed earlier, the elements a plaintiff must establish to succeed on these claims, under state law and federal law, are essentially the same. Therefore, it is unnecessary for the Court to repeat here its analysis of these claims. Since Rafter's claims for false arrest,

false imprisonment, and malicious prosecution, cannot be sustained under federal law, they cannot be sustained under state law.

*Intentional Infliction of Emotional Distress*

The tort of intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).

**\*10** A plaintiff cannot recover against a municipality upon a claim for intentional infliction of emotional distress. *See Lauer v. City of New York,* 240 A.D.2d 543, 659 N.Y.S.2d 57 (App. Div.2d Dep't 1997). To prevail on such a claim made against an individual, a plaintiff must establish, among other things, the conduct complained of is "regarded as atrocious and [ ] intolerable in a civilized society." *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir.1999) (quotation and citations omitted). Whether the conduct at issue satisfies element one of the cause of action, is a matter for a court to decide. *See Howell,* 81 N.Y.2d at 121, 596 N.Y.S.2d at 353. Here, Noak's conduct, in effecting Rafter's arrest and processing her, preparatory to her detention in a jail facility, notwithstanding the fact it is alleged to have included the use of force and offensive utterances, cannot reasonably be said, based on the record before the Court, to constitute atrocious conduct a civilized society would find intolerable. Therefore, dismissing Rafter's claim, against Noak, for intentional infliction of emotional distress, is warranted.

*Negligence*

"Intentional torts require proof of intent, not mere negligence." *Wood v. Strong Memorial Hosp. of Univ. of Rochester,* 262 A.D.2d 1054, 692 N.Y.S.2d 277 (App. Div. 4th Dep't 1999). In New York, a plaintiff asserting a cause of action for negligence must establish: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of the duty; and (3) an injury to the plaintiff caused by the breach. *See Akins v. Glens Falls City School Dist.,* 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648 (1981). A plaintiff who alleges facts demonstrating a defendant(s) acted intentionally to commit a tort cannot rely upon those same facts to support a negligence claim. In the case at bar, Rafter contends Noak acted with the intent to violate her rights. Therefore, the claim of negligence, made against the City defendants, cannot be maintained. To the extent Rafter's allegations might be read as asserting negligence, as a basis for liability for constitutional torts, her assertion must fail. This is so because negligence cannot be a basis for liability for constitutional torts. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668 (1986).

*Invasion of Privacy*

In New York, no common-law right to privacy is recognized. *See Farrow v. Allstate Ins. Co.,* 53 A.D.3d 563–64, 862 N.Y.S.2d 92, 93 (App. Div.2d Dep't 2008). However, by statute, New York has barred the use, without authorization, of a living person's name, portrait or picture for commercial purposes. *See* New York Civil Rights Law §§ 50, 51. Rafter contends the City defendants "breached and defiled her right to privacy." However, she has not established, by competent evidence, the City defendants misappropriated and exploited, for a commercial purpose, her name, portrait or picture. Therefore, Rafter has failed to establish a right to recover, against the City defendants, on her invasion of privacy claim.

*Defamation*

**\*11** Under New York law, a plaintiff seeking to establish a prima facie case for slander or libel must establish the following elements: (a) a false and defamatory statement of and concerning the plaintiff; (b) publication by the defendant of the statement to a third party; (c) fault on the part of defendant; and (d) injury to the plaintiff. *See Idema v. Wager,* 120 F.Supp.2d 361, 365 (S.D.N.Y.2000). In New York, with respect to a defamation allegation, "a qualified privilege arises when a person makes a bona fide communication upon a subject in which he or she has an interest, or [ ] duty to speak, and the communication is made to a person having a corresponding interest or duty." *Garson v. Hendlin,* 141 A.D.2d 55, 60, 532 N.Y.S.2d 776, 779 (App. Div.2d Dep't 1988) (quotations and citations omitted); *see also Micalizzi v. Ciamarra,* 206 F.Supp.2d 564, 583 (S.D.N.Y.2002).

A law enforcement officer, who, during the course of an investigation, makes a statement(s) pertinent to that investigation, is protected by the qualified privilege, notwithstanding the erroneous nature of the statement(s). *See Micalizzi,* 206 F.Supp.2d at 583. The qualified privilege granted to law enforcement personnel obligates a plaintiff to establish actual malice on the part of a law enforcement officer in order to prevail on a defamation claim. *See Lee v. City of Rochester,* 254 A.D.2d 790, 792, 677 N.Y.S.2d 848, 851 (App. Div. 4th Dep't 1998). In this context, "[m]alice

includes spite, ill will, knowledge that the statements are false or reckless disregard as to whether they are false. [ ] Spite and ill will refer to the speaker's motivation for making the alleged defamatory comments, not to the defendant's general feeling about the plaintiff. Thus, a triable issue is raised only if a jury could reasonably conclude that malice was the one and only cause for the publication." *Curren v. Carbonic Systems, Inc.,* 58 A.D.3d 1104, 1106–07, 872 N.Y.S.2d 240, 242 (App. Div.3d Dep't 2009) (quotation and citation omitted). Where, as here, Rafter has not established any statement made by the City defendants, during the investigation conducted by Noak, pertinent to the criminal action brought against Rafter, was made with actual malice, her defamation claims, against the City defendants, lack record support and cannot be maintained.

*Breach of Contract*

The elements of a cause of action for breach of contract, under New York law, are: "(1) [the existence of] a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages [resulting from the breach]." *Terwilliger v. Terwilliger,* 206 F.3d 240, 246 (2d Cir.2000) (citation and quotations omitted). "One who violates his contract with another is liable for all the direct and proximate damages which result...." *National Market Share, Inc. v. Sterling Nat'l Bank,* 392 F.3d 520, 525 (2d Cir.2004) (citation and quotations omitted). The record before the Court is devoid of any evidence establishing the existence of a contract between Rafter and the City defendants; therefore, her breach of contract claim, against these defendants, lacks merit.

*Breach of Fiduciary Duty*

**\*12** "[A] fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another [ ]. Such a relationship might be found to exist, in appropriate circumstances, between close friends [ ] or even where confidence is based upon prior business dealings." *Penato v. George,* 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 904–05 (App. Div.2d Dep't 1976). "In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Kurtzman v. Bergstol,* 40 A.D.3d 588, 590, 835 N.Y.S.2d 644, 646 (App.Div..2d Dep't 2007).

Rafter has not established that she and the City defendants had a fiduciary relationship, that is, a relationship founded on trust or confidence she reposed in these defendants. Rafter's contact with Noak was brief; it spanned a period of hours between the time of her arrest and her surrender by Noak to authorities who later presented her before a judicial officer in the New York Criminal Court. Nothing about their contact on March 28, 2003, supports a finding that a relationship of trust and confidence developed between them. Therefore, the claim made by Rafter, that the City defendants breached a fiduciary duty owed to her, is baseless.

*Fraud*

Under New York law, "[a]n essential element of any fraud [claim] ... is that there must be reasonable reliance, to a party's detriment, upon the representations made" by the defendant against whom the fraud claimed has been asserted. *Water Street Leasehold LLC v. Deloitte & Touche LLP,* 19 A.D.3d 183, 185, 796 N.Y.S.2d 598, 599 (App. Div. 1st Dep't 2005) (citation omitted). Accordingly, in order for Rafter to prevail on her common-law fraud claim she must have relied, justifiably or reasonably, upon a material misrepresentation(s) or omission(s) made by the City defendants. *See Sorenson v. Bridge Capital Corp.,* 52 A.D.3d 265, 266, 861 N.Y.S.2d 280, 282 (App. Div. 1st Dep't 2008) (citation omitted).

Rafter has not identified a material misrepresentation(s) made, or information the City defendants failed to disclose, upon which she reasonably relied to her detriment. Consequently, her common-law fraud claim, asserted against these defendants, is groundless. Moreover, when a fraud claim is made against multiple defendants, as Rafter has done, a plaintiff is obligated to state, with particularity, "the acts [and] omissions complained of by each defendant." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F.Supp.2d 282, 293 (S.D.N.Y.2000). General allegations made against multiple defendants do not satisfy the pleading requirements of Fed.R.Civ.P. 9(b). *See Schmidt v. Fleet Bank,* No. 96 Civ. 5030, 1998 WL 47827, at \*5 (S.D.N.Y. Feb. 4, 1998). This, Rafter has not done. Her failure provides an additional basis for dismissing the common-law fraud claim she asserted against the City defendants.

*Harassment, Perjury and Larceny*

**\*13** Rafter alleges the City defendants harassed her and committed perjury and larceny. These are criminal offenses that are defined in New York's Penal Law. As such, in New York, these allegations cannot be pleaded as separate causes of action in a civil litigation. See *Crandall v. Bernard, Overton & Russell,* 133 A.D.2d 878, 879, 520 N.Y.S.2d 237–38 (App. Div.3d Dep't 1987). Therefore, the City defendants are entitled to summary judgment on the instant claims.

*Obstruction of Justice*
New York does not recognize obstruction of justice as a cause of action. See *Adamski v. Romano–Schulman,* 56 A.D.3d 1078, 1079, 867 N.Y.S.2d 356 (App. Div.3d Dep't 2008). Accordingly, Rafter cannot obtain relief from the City defendants on her obstruction of justice claim.

*Discrimination*
No common-law cause of action for discrimination exists in New York. Such claims derive from statute, New York's Executive Law, *see Monsanto v. Electronic Data Systems Corp.,* 141 A.D.2d 514, 515, 529 N.Y.S.2d 512, 514 (App. Div.2d Dep't 1988), or through analogous federal or municipal anti-discrimination laws. Moreover, typically, before a civil action may be commenced to adjudicate a claim of discrimination, pursuant to an anti-discrimination law, administrative prerequisites must be satisfied. In the case at bar, since no common-law cause of action for discrimination exists, the court would be warranted in granting summary judgment, to the City defendants, on this claim.

*Assault and Battery*
"To sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact." *Fugazy v. Corbetta,* 34 A.D.3d 728, 729, 825 N.Y.S.2d 120, 122 (App. Div.2d Dep't 2006). To recover damages for battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, *i.e.,* wrongful under all of the circumstances, and [that the defendant intended] to make the contact without the plaintiff's consent." *Higgins v. Hamilton,* 18 A.D.3d 436, 794 N.Y.S.2d 421, 422 (App. Div.2d Dep't 2005). Rafter recalls that, while alone in Noak's custody, she was subject to vituperative conduct and was dragged by him, which made her apprehensive about the prospect of being the victim of additional harmful contact. Furthermore, Rafter maintains Noak, without her consent, touched her body in an offensive way, while searching her, and struck her.

Allegations of assault and battery, in New York, are ordinarily matters for a jury to determine. *See Quadrozzi v. Norcem, Inc.,* 125 A.D.2d 559, 561, 509 N.Y.S.2d 835, 837 (App. Div.2d Dep't 1986). Moreover, as discussed above, the reasonableness of the force Noak employed on Rafter is a matter that needs to be explored further, because the record before the Court, on that issue, is inadequate. In addition, the Court is mindful that, in New York, assault and battery are intentional torts, for which an employer may be found vicariously liable under the doctrine of respondeat superior. *See Riviello v. Waldron,* 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 302 (1979). For all of these reasons, granting the City defendants summary judgment, on the plaintiff's assault and battery causes of action, would not be reasonable. [5]

*RICO*
**\*14** RICO provides, in pertinent part, that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). [6]

RICO defines "racketeering activity" as, *inter alia,* "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1343 (related to wire fraud) [and] section 1344 (relating to financial institution fraud)." ... 18 U.S.C. § 1961(1). RICO also permits those injured by a violation of 18 U.S.C. § 1962 to commence a civil action in order to recover damages. *See* 18 U.S.C. § 1964(c). In such an action, a plaintiff must establish: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" for damages to be awarded. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985).

A defendant who commits two (or more) predicate acts of racketeering within the ten year period prior to the initiation of an action, establishes a "pattern" of racketeering activity, *see* 18 U.S.C. § 1961(5); provided, however, that the predicate acts "are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900 (1989) (emphasis in original); *see also Cosmos Forms Ltd. v. The Guardian Life Ins. Co. of Am.,* 113 F.3d 308, 310

(2d Cir.1997). Rafter alleges the City defendants violated RICO because Noak committed the following predicate acts: (a) wire fraud, 18 U.S.C. § 1343; and (b) bank fraud, 18 U.S.C. § 1344. Rafter also maintains Noak violated RICO by committing a multiplicity of constitutional violations and common-law torts.

Courts require that each predicate act, including each underlying act of specified unlawful activity(ies), also known as a predicate offense(s), be articulated clearly in a civil RICO complaint. This articulation requirement is particularly enforced when, as in the case at bar, a RICO civil conspiracy claim is made. See, e.g., Zito v. Leasecomm Corp., No. 02 Civ. 8074, 2003 WL 22251352, at * 20 (S.D.N.Y. Sept. 30, 2003). In addition, when a RICO civil conspiracy claim is asserted, a plaintiff must allege an agreement by each defendant to commit at least two predicate acts. See Hecht v. Commerce Clearing House, 897 F.2d 21, 25 (2d Cir.1990).

According to Rafter, Noak committed bank fraud by seizing $187,000 from her, at or about the time of her arrest, and committed wire fraud, when he "wired false testimony" to the New York County District Attorney. Rafter maintains that by receiving a salary for directing the affairs of, and participating in, the operation and management of the New York City Police Department—an agency she contends has a history of condoning police-officer misconduct—Noak's violation of RICO is evident; therefore, the City defendants are liable to her on her RICO claim.

*15 A RICO claim cannot lie against a municipality, because a municipality cannot form the intent that is required to establish a RICO predicate act. See Pilitz v. Incorporated Village of Rockville Centre, No. CV 07–4078, 2008 WL 4326996, at *5 (E.D.N.Y. Sept. 22, 2008). Therefore, the RICO claim Rafter asserted against the City of New York is meritless.

With respect to Noak, Rafter has alleged he and various members of the New York City Police Department committed a multiplicity of bad acts. Some of the alleged bad acts are common-law torts that are not indictable under any provision of Title 18, United States Code. In any event, Rafter has not provided competent evidence establishing that Noak engaged in racketeering activities, as that phrase is defined in 18 U.S.C. § 1961. For example, when allegations of mail fraud, bank fraud or wire fraud are made, a plaintiff must meet Fed.R.Civ.P. 9(b)'s heightened pleading standard. Among other things, such a plaintiff must include in the pleadings: (i) an explanation of why a defendant's acts were fraudulent; and (ii) facts giving rise to a strong inference that the defendant possessed fraudulent intent. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir.1993). Rafter has not done this. Instead, she has made conclusory statements that Noak committed wire fraud and bank fraud; much more is needed. Furthermore, inasmuch as Rafter failed to allege a substantive violation of RICO, her RICO conspiracy claim cannot be sustained.

Where, as here, a party, against whom a Fed.R.Civ.P. 56 motion has been made, fails "to make a sufficient showing on an essential element of her case, with respect to which she has the burden of proof," the moving party(ies) is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322–23, 106 S.Ct. at 2552. Accordingly, Noak is entitled to summary judgment on Rafter's RICO claim.

### BANK DEFENDANTS' MOTION

#### Section 1983

A person who is not a state actor may be found liable in an action brought pursuant to 42 U.S.C. § 1983, if the person conspires willfully with a state actor to deprive another person of a federal right. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605 (1970); Dennis v. Sparks, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186 (1980). Rafter's second amended complaint does not contain an allegation that the defendants conspired to violate rights secured to her by the Constitution. However, when her submissions are read liberally, it appears Rafter has determined Jenkins' telephone call to a 911 telephone operator, the conversations Leto and Barretto had with Noak, and the tendering of supporting depositions, by Jenkins and Leto, to the New York County District Attorney, demonstrate the Bank defendants conspired with a state actor, namely Noak, and, thus, are liable to her under § 1983.

The Second Circuit Court of Appeals has explained, in the context of criminal prosecutions, that "conspiracies are by their very nature secretive operations that can hardly ever be proven by direct evidence." Rounseville, 13 F.3d at 632. "[T]o overcome a summary judgment motion, [where private individuals are alleged to have conspired with a state actor], a plaintiff proceeding under this theory must present sufficient evidence to support an inference of such conspiratorial conduct." Gotbetter v. Port Authority of New York and New Jersey, No. 98 Civ. 6762, 2000 WL 328044,

at *2 (S.D.N.Y. March 28, 2000). Rafter has failed to meet this burden. Neither the conversations Fleet employees had, internally, which prompted them to contact and summon law enforcement officers to a Fleet branch, nor the conversations Fleet personnel had with Noak and a 911 telephone operator establish, either directly or circumstantially, the formation of an agreement between the Bank defendants and Noak to violate Rafter's federal rights. Therefore, the Bank defendants are entitled to summary judgment on Rafter's § 1983 claim.

*State–Law Claims*

*False Arrest, Unlawful Imprisonment, Malicious Prosecution*

**\*16** The Court has analyzed Rafter's common-law false arrest and unlawful imprisonment causes of action, *supra,* and found that the existence of probable cause to effect Rafter's arrest renders her claim for relief, on these causes of action, meritless. No need exists to reproduce that analysis here. [7] However, Rafter's malicious prosecution cause of action, as it relates to the Bank defendants, warrants discussion.

"[A] civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution. [ ] Nor does identifying plaintiff as the perpetrator of a crime, signing the summons or testifying at trial give rise to tort liability." *Du Chateau v. Metro–North Commuter Railroad Co.,* 253 A.D.2d 128, 131, 688 N.Y.S.2d 12, 15 (App. Div. 1st Dep't 1999). However, if the civilian complainant gives false information or withholds information from law enforcement officials, the complainant may be liable to a plaintiff for malicious prosecution. *See id.,* at 132, 688 N.Y.S.2d at 15.

The record indicates Jenkins accessed data about Rafter, electronically, through Fleet's automated system and manually, from a file cabinet in the 200 Park Avenue branch. D'Agostino testified that a bank customer's Fleet customer agreement form(s) and signature card(s) were typically kept at Fleet's branch facilities. Rafter's Fleet customer agreement form, disclosed to her after pretrial discovery activities ended, contains her correct social security number. It is not clear whether this is the document Jenkins accessed from her branch's file cabinet, on March 28, 2003, and, thus, whether she was armed with conflicting information about Rafter's social security number, which she did not communicate to law enforcement personnel.

In addition, Jenkins testified, at her deposition, that, prior to contacting the 911 telephone operator, she was "upset" that Rafter had obtained her ATM card(s), over Jenkins' objection, and, further, that she was so piqued, she entered the bank's automated system to ascertain whether she could prevent Rafter from using the card, by placing a hold on it. Furthermore, when Jenkins accessed the bank's automated system and learned a withdrawal was being made from Rafter's savings account—an account on which no restraints existed—Jenkins was "appalled." When these circumstances are considered together, the Court finds a genuine disputed factual issue exists respecting whether: (a) Jenkins acted as she did, on March 28, 2003, in bad faith because of ill-will she felt toward Rafter, after Rafter secured an ATM card(s) from Jenkins' branch manager; and (b) Jenkins had conflicting information, from Fleet's records, concerning Rafter's social security number but withheld that information from law enforcement officials. In this regard, the Court is not unmindful that Fleet received an information subpoena, on March 17, 2003, containing Rafter's correct social security number, was able to identify Rafter's accounts based on that subpoena and, thereafter, on March 28, 2003, withdrew funds, from Rafter's checking account, on which Fleet had placed a restraint, to satisfy the New York City Marshal's levy. Since disputed material issues of fact exist, and the basis on which the motion dismissing the criminal complaint against Rafter was made is unknown, summary judgment for Jenkins, and her employer, on Rafter's state-law cause of action, for malicious prosecution, is not appropriate.

*Statute of Limitations*

**\*17** In New York, an action for the following causes of action must be commenced within one year: (i) assault; (ii) battery; (iii) false imprisonment; (iv) malicious prosecution; (v) libel; and (vi) slander. In addition, an action brought because of a violation of New York's statutory right to privacy, or for intentional infliction of emotional distress, must also be commenced within one year. *See* New York Civil Practice Law and Rules § 215; *Macholz v. Weiss,* 279 A.D.2d 557, 719 N.Y.S.2d. 606 (App. Div.2d Dep't 2001). The record before the Court establishes that Rafter did not speak with or have other contact with Leto, Jenkins or defendant Charles Gifford, after her arrest, on March 28, 2003. Therefore, the Bank defendants contend Rafter's causes of action for assault, battery, intentional infliction of emotional distress as well as any claim that her right to privacy was violated by them

accrued on March 28, 2003, and are time-barred, because Rafter did not commence this action until May 3, 2004.

"As a general proposition, it is upon injury that a legal right to relief arises in a tort action and the Statute of Limitations begins to run." *Ackerman v. Price Waterhouse,* 84 N.Y.2d 535, 541, 620 N.Y.S.2d 318, 321 (1994). "The statute of limitations does not run until there is a legal right to relief. Stated another way, accrual occurs when the claim becomes enforceable, *i.e.,* when all elements of the tort can be truthfully alleged in a complaint." *Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 934 (1993). The elements of a New York cause of action for assault, battery and intentional infliction of emotional distress have been outlined earlier in this writing; they will not be repeated here. On March 28, 2003, Rafter, based upon her encounter with the Bank defendants, could have alleged truthfully, in a civil action complaint, all the elements of these intentional torts. Therefore, the causes of action for assault, battery and intentional infliction of emotional distress accrued on that date. The applicable one-year statute of limitations expired on March 28, 2004, and it acts as a bar to Rafter's pursuing these causes of action in the instant litigation.

The Bank defendants also contend Rafter's causes of action for false arrest and false imprisonment accrued on the date she was released from custody, March 31, 2003, and, therefore, Rafter is also foreclosed from obtaining relief on these causes of action. The Bank defendants are correct. *See Ragland v. New York City Housing Authority,* 201 A.D.2d 7, 9, 613 N.Y.S.2d 937, 939 (App. Div.2d Dep't 1994). Accordingly, if the existence of probable cause, as discussed above, did not preclude Rafter from proceeding with causes of action for false arrest and false imprisonment, she, nevertheless, would be barred by the statute of limitations from doing so.

Rafter's defamation claim, premised upon the statements Jenkins and Leto made in their April 4, 2003 supporting depositions, is also time-barred, notwithstanding Rafter's contention that the supporting depositions were "present," in the New York City Criminal Court, on May 20, 2003, the date on which the criminal action brought against her was dismissed. In New York, the single publication rule applies. Under that rule, "the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and [ ] the applicable [s]tatute of [l]imitation[s] runs from the date of that publication." *Firth v.. State,* 98 N.Y.2d 365, 369, 747 N.Y.S.2d 69, 70–71 (2002) (citation omitted). By adopting the single publication rule for defamation actions, the New York Court of Appeals sought to: (1) insulate publishers from stale claims; (2) avoid the multiplicity of actions that would likely flow, if a multiple publication rule applied; and (3) bar an endless retriggering of the statute of limitations, which would be harassing to defendants and drain judicial resources. *See id.* at 370, 747 N.Y.S.2d at 71–72.

**\*18** The Court finds that Rafter's defamation claim accrued on April 4, 2003, the date the supporting depositions were executed and published. Her assertion, that the supporting depositions appeared in court on May 20, 2003, and triggered the running of the statute of limitations anew, harks back to an outdated notion of defamation, when each communication of a defamatory statement to a third person was considered a separate publication supporting a new cause of action. *See Gregoire v. G.P. Putnam's Sons,* 298 N.Y. 119, 122–23 (1948). In the instant case, Rafter had until April 4, 2004, to commence a defamation action against the Bank defendants. She failed to do so.

In summary, because Rafter did not commence the instant action within one year of the accrual of those intentional tort causes of action, discussed immediately above, she is barred, by New York's one-year statute of limitations, from obtaining the relief she seeks, on those causes of action. Accordingly, except for malicious prosecution, the Bank defendants are entitled to summary judgment on the intentional tort causes of action Rafter has asserted.

*Fiduciary Duty*

"Under New York law, the usual relationship of bank and customer is that of debtor and creditor, [ ] and does not create a fiduciary relationship between the bank and its borrower or its guarantors." *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 318 (2d Cir.1993); *see also Nathan v. J & I Enters.,* 212 A.D.2d 677, 622 N.Y.S.2d 798 (App. Div.2d Dep't 1995). "[I]n unusual circumstances, a fiduciary relationship may arise even between a bank and a customer if there is either a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding." *Id.* at 318 (quotation and citation omitted). Rafter's contention that a fiduciary relationship existed between her and the Bank defendants, which was breached by them, is neither supported by the record before the Court nor case law. Rafter has not shown she placed special trust and confidence in Fleet and its employees and, thereby, became dependent on them.

Accordingly, the Bank defendants are entitled to summary judgment, against Rafter, on this claim.

*Breach of Contract*

In New York, the relationship between a bank and its customer is a contractual relationship of debtor and creditor. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 122 (2d Cir.1984); *Bauer v. Mellon Mortg. Co.,* 178 Misc.2d 234, 240, 680 N.Y.S.2d 397, 401 (S.Ct.N.Y.Cty.1998). "Implicit in all contracts is a covenant of good faith and fair dealing in the course of [the] contract performance ... [t]his embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dalton v. Educational Testing Service,* 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979 (1995). Rafter has asserted that the Bank defendants breached a contract they had with her by failing "to utilize care and prudence in their exercise of their banking functions for [her]." In addition, Rafter maintains the Bank defendants "breached the implied covenant of good [faith] and fair dealing" that is a part of every contract. As a consequence of the breach of contract, Rafter contends she "incurred significant loss, financial hardship, emotional harm and distress."

**\*19** For their part, the Bank defendants maintain Rafter's breach of contract claim cannot be sustained because "it arises from the same facts as another cause of action [she has asserted] and does not allege distinct damages." Therefore, according to the Bank defendants, "the breach of contract claim is [ ] duplicative and warrants dismissal." The Bank defendants do not indicate the cause of action with which they allege the breach of contract claim is duplicative. Moreover, they have not made citation to any authority for the proposition that multiple claims cannot arise out of a single incident; although they do make citation to cases that make clear a party may not obtain multiple recoveries based on one claim that the party has restyled as several independent claims, each allegedly warranting a separate recovery.

In any event, Rafter cannot prevail on her breach of contract claim because the record does not establish she sustained actual damages as a natural and probable consequence of the alleged breach of contract. *See Alpha Auto Brokers Ltd. v. Continental Ins. Co.,* 286 A.D.2d 309, 310, 728 N.Y.S.2d 769, 770 (App. Div.2d Dep't 2001). Furthermore, a contractual relationship "does not give rise to a duty which could furnish a basis for tort liability." *Rakylar v. Washington Mutual Bank,* 51 A.D.3d 995, 996, 858 N.Y.S.2d 759, 760 (App. Div.2d Dep't 2008). Accordingly, Rafter's attempt to recover damages for "significant loss," hardship, emotional harm and distress arising out of an alleged breach of contract cannot be sustained.

*Negligence*

Rafter alleges the Bank defendants acted negligently. The elements of a cause of action for negligence, under New York law, have been described above. Rafter cannot recover, through this action, on a cause of action for negligence because "a party seeking damages for an injury resulting from a wrongful arrest and detention is relegated to the traditional remedies of false arrest[, false] imprisonment" and malicious prosecution. *Higgins v. City of Oneonta,* 208 A.D.2d 1067, 1069, 617 N.Y.S.2d 566, 568 (App. Div.3d Dep't 1994); *see Boose v. City of Rochester,* 71 A.D.2d 59, 62, 421 N.Y.S.2d 740, 744 (App. Div. 4th Dep't 1979).

*RICO*

"To establish a substantive RICO violation, a plaintiff must show a 'pattern of racketeering activity,' 18 U.S.C. § 1962(a)-(c), and to establish a RICO conspiracy, a plaintiff must show a conspiracy to commit a substantive RICO violation, *id.* § 1962(d) ." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir.2008). "Under any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.' " *GICC Capital Corp. v. Tech. Fin. Corp.,* 67 F.3d 463, 465 (2d Cir.1995). "The requirements of 18 U.S.C. § 1962(c), [upon which Rafter relies,] must be established as to each defendant," since § 1962(c) is concerned with the individual patterns of racketeering in which a defendant has engaged and not the collective activities of those who comprise the enterprise. *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001).

**\*20** According to Rafter, the Bank defendants have committed the following RICO predicate acts: bank fraud, mail fraud and wire fraud. In addition, Rafter maintains the Bank defendants participated in money laundering activities and obstructed justice. She contends, *inter alia,* the Bank defendants: (a) sold social security numbers and other "personal information of customers"; (b) engaged in identity theft; (c) testified falsely; (d) conspired with Noak and others to bring about her false arrest and the ensuing malicious prosecution; and (e) committed common-law torts. In support of her allegations, Rafter has made citation to press releases issued by government entities and an indictment returned by a New York County grand jury against a securities broker, who

is not a party to this action. Rafter maintains her RICO claims "qualify under open ended continuity as the threat [posed by the Bank defendants] is ongoing."

The Fed.R.Civ.P. 9(b) pleading deficiencies discussed with respect to the RICO claim Rafter asserted against Noak are present in the instant RICO claim and doom it. In addition, "[t]o satisfy open-ended continuity, the plaintiff ... must show that there is a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 243 (2d Cir.1999). This threat is presumed when an enterprise's business is primarily racketeering or the predicate acts are inherently unlawful. However, where an enterprise is engaged primarily in legitimate business activities, the presumption that a continuing threat of criminal activity exists, falls away, and some evidence must be presented, from which it may be inferred, that the predicate acts represent the regular way in which the business operates or that the nature of the predicate acts themselves implies a threat of continued criminal activity. *See Cofacredit,* 187 F.3d at 242–43.

Rafter alleges the Bank defendants "will continue to lie about [her] and threaten [her] via lawsuit." Furthermore, she contends the Bank defendants have no procedure in place to verify their customers' social security numbers. Therefore, "[t]he threat of reoccurrence of the events that happened to [her] is ongoing." The record evidence supports a finding that the enterprise alleged by Rafter is engaged primarily in a legitimate banking business. Rafter's conclusion, that the "threat of reoccurrence ... is ongoing," without more, is not evidence from which it may reasonably be inferred that, either the predicate acts alleged are indicative of the regular way in which the Bank defendants operate their business, or, the Bank defendants pose a threat of continuing conduct. Therefore, in the circumstance of the instant case, summary judgment for the Bank defendants, on Rafter's RICO claim, is warranted.

### PLAINTIFF'S CROSS–MOTION

In response to the defendants' motions for summary judgment, Rafter filed a cross-motion for summary judgment. The Court analyzed Rafter's motion concurrently with the motions made by the defendants, as her cross-motion is, in essence, her opposition to the defendants' motions. Having considered all the arguments urged by Rafter and, concluding she is not entitled to summary judgment for the reasons explained throughout this writing, no additional examination of Rafter's cross-motion is warranted.

### IV. RECOMMENDATION

**\*21** For the reasons set forth above, I recommend that: (1) the City defendants' motion for summary judgment be granted, except as it relates to Rafter's claims for excessive force, assault and battery; (2) the Bank defendants' motion for summary judgment be granted, except as it relates to Rafter's claim for malicious prosecution against Jenkins and her employer; and (3) Rafter's cross-motion for summary judgment be denied.

### V. FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of the Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Candair Ltd.,* 838 F .2d 55, 57–59 (2d Cir.1998); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 691929

**Footnotes**

| | |
|---|---|
| 1 | Fleet Bank was subsequently acquired by Bank of America. |
| 2 | Louis D'Agostino ("D'Agostino"), the banking center manager at Bank of America's 345 Park Avenue branch, testified that he was designated by the bank to search for documents pertinent to this action. He testified further that searches were conducted, unsuccessfully, at the bank branches associated with Rafter for originals and copies of Rafter's account application documents and her bank account signature cards. He maintained these documents would typically be kept at bank branch facilities. However, after the pretrial discovery phase of the litigation closed, and while the parties were preparing the instant motions, counsel to Fleet produced a copy of Rafter's customer agreement form. According to counsel to Fleet, the document, which is dated August 23, 2002, and contains Rafter's correct social security number, was used by her clients, in 2005, to prepare responses to Rafter's discovery demands but, thereafter, it "was inadvertently misplaced" and resurfaced, in June 2008. Throughout the pretrial discovery phase of the litigation, Rafter demanded originals of all her account-opening documents be produced by the bank to support her contention that she provided Fleet her correct social security number. Prior to June 2008, the bank produced copies of computer-generated bank records, for Rafter's accounts, that display a social security number, which is not Rafter's. The bank also disclosed a 2002 Quick and Reilly Brokerage Account Application, which appears to be signed by Rafter, bearing a social security number that is not hers. Rafter maintains the document is not authentic. |
| 3 | Rafter and Wong's social security numbers are identical, except the fourth and fifth digits are transposed. |
| 4 | On March 17, 2003, an information subpoena, with restraining notice, was prepared by a judgment creditor to ascertain the location of funds belonging to Rafter, the judgment debtor. The subpoena, which bears Rafter's correct social security number, was served on Fleet. In response, Fleet restrained funds in Rafter's checking accounts, but not her savings account. Thereafter, pursuant to a levy and demand dated March 19, 2003, a New York City Marshal served on the bank, Fleet withdrew funds from one of Rafter's checking accounts and issued an official bank check, payable to the New York City Marshal, for the full amount of the levy, thus satisfying the judgment. Fleet's official bank check is dated March 28, 2003, the date of the event that gives rise to this action. |
| 5 | Rafter has made "claims" for: (1) lost income, which is typically an element of damages; (2) incompetence; and (3) irreparable harm. The Court has not analyzed these "claims" as they are neither constitutional torts nor common-law causes of action. |
| 6 | 18 U.S.C. § 1962(d), on which Rafter also relies, makes it an offense for a person to conspire to violate 18 U.S.C. § 1962(c). |
| 7 | The Court has also analyzed Rafter's claims for discrimination, harassment, larceny, perjury, incompetence, irreparable harm, loss of income, fraud and obstruction of justice, in connection with the City defendants' motion. Rafter cannot obtain relief, through this action, on any of these causes of action or allegations, for the reasons outlined above. Repeating, with respect to the Bank defendants' motion, the reasons that bar Rafter from obtaining relief, on these allegations, is not necessary. |

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.