# EXHIBIT D

KeyCite Yellow Flag

Distinguished by Perkins v. Linkedin Corporation, N.D.Cal., November 13, 2014

2004 WL 5550485
Only the Westlaw citation is currently available.
United States District Court,
District of Columbia.

Elizabeth RAMEY, Plaintiff,
v.
DARKSIDE PRODUCTIONS, INC., Defendant.

Civil Action No. 02–730 (GK).
|
May 17, 2004.

**Attorneys and Law Firms**

Jimmy A. Bell, Upper Marlboro, MD, for Plaintiff.

Edward J. McAndrew, Jesse J. Ash, Reed, Smith, Shaw & McClay, LLP, John Perazich, Washington, DC, for Defendant.

*AMENDED MEMORANDUM OPINION*

GLADYS KESSLER, District Judge.

**\*1** Plaintiff, Elizabeth Ramey, brings this suit alleging intentional infliction of emotional distress, unjust enrichment, negligence, and fraud.[1] Defendant is Darkside Productions, Inc.. This matter is before the Court on Defendant's Motion for Summary Judgment. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion for Summary Judgment **[# 39]** is **granted.**

**I. BACKGROUND**

**A. Statement of Genuine Issues**

Local Civil Rule 7. 1(h) requires both parties to identify with particularity those material facts necessary to support their motions for or in opposition to summary judgment. Specifically, Rule 7.1(h) provides:

Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a *separate concise statement of genuine issues* setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.... In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

Local Rule 7.1(h) (emphasis added).

This Circuit has held that "[i]f the party opposing the motion fails to comply with this local rule, then 'the district court is under no obligation to sift through the record' and should '[i]nstead ... deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule [7.1(h) ] statement ." *Securities and Exch. Comm'n v. Banner Fund Int'l,* 211 F.3d 602, 616 (D.C.Cir.2000) (internal citations omitted). *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 151 (D.C.Cir.1996) (concluding that Local Rule 7.1(h) "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record."). This Circuit demands strict compliance with this Rule. *See Burke v. Gould,* 286 F.3d 513, 517 (D.C.Cir.2002).

Plaintiff has failed to comply with both Local Rule 7.1(h) and Fed. R. Civ. Pro. 56(e).[2] Plaintiff's "Statement of Genuine Issues of Material Facts" consists of the following six numbered issue statements: "(1) Whether Alonzo Crittenden

was an agent of Darkside Productions, Inc.," Pl.'s Opp'n, at 2; "(2) Whether Defendant[ ] was negligent in placing the ad," *id.;* "(3) Whether Defendant unreasonably delayed removing the ad concerning [Plaintiff] after being notified that the information contained therein was legally defamatory," *id.;* "(4) Whether Defendant's placing of and delay in removing the ad was intentional," *id.;* "(5) Whether Defendant is an information content provider or merely an interactive computer service," *id.;* and "(6) Whether Plaintiff is a Public Figure." *Id.*

**\*2** Plaintiff has not identified any evidence, or referred to any parts of the record as required by Local Civil Rule 7.1(h), to support her conclusory assertion that genuine issues of fact exist. She has failed to "isolate[ ] the facts that [she] assert[s] are material, distinguish[ ] disputed from undisputed facts, and identif[y] the pertinent parts of the record." *Burke,* 286 F.3d at 517 (internal citation omitted). Her issue statements are nothing more than conclusory legal argument. Accordingly, Plaintiff's "Statement of Genuine Issues of Material Facts" "cannot serve to refute any of the specific factual assertions that [D]efendant has proffered." *Mack v. Strauss,* 134 F.Supp.2d 103, 108 (D.D.C.2001). As such, the material facts submitted by Defendant will be deemed admitted because they have not been adequately controverted.

**B. Factual and Procedural History**

Defendant operates an on-line advertising guide for legal adult entertainment services, commonly referred to as the "Eros Guide." Defendant's Eros Guide website is located on the world wide web at *http://www.eros-guide.com.*

Advertisers who want to post an advertisement for legal adult entertainment services on Defendant's Eros Guide website supply Defendant with the material they want included in the advertisement, i.e., photographs and any accompanying text. *See* Def.'s Statement of Facts, ¶ 6. These advertisers pre-pay Defendant a monthly fee to post their advertisement(s). *Id.,* ¶ 22.

Defendant processes the advertisement material supplied by its advertisers into an electronic file format, which it then uploads into a database-like file structure. *Id.,* ¶ 9. It then categorizes these electronic files by geographic market and subject matter. Defendant has thirty geographic markets on its Eros Guide website, including Washington, D.C.. *Id.,* ¶ 12. The subject matter categories include "escorts," "dancers," and "massage." *Id.,* ¶ 13. Plaintiff claims that Defendant also (1) prints its Eros Guide website address, "Eros–USA.com," on every advertisement that it publishes on its website and places a watermark on all photos in those advertisements. Pl.'s Opp'n, at 37–38.

Website users can search the Eros Guide website for advertisement listings by both geographic market and subject matter category. Access to the website is available at no cost. Def.'s Statement of Facts, ¶ 15.

Website users can access only the "contact information" of advertisers who have paid to advertise on Defendant's website. *Id .,* ¶ 16. Defendant does not employ anyone as an escort, adult entertainer, dancer, or model. *Id.,* ¶ 18. It is expressly stated on the Eros Guide website that: (1) Defendant "is not an escort agency," nor does it "make referrals," *id.,* ¶ 17; (2) users wishing to contact the adult entertainers who advertise on the website must use the contact information contained in the advertisement, *id.;* (3) Defendant does not have any additional contact information for the advertisers beyond what is printed in the advertisement, *id.;* and (4) Defendant will not forward to its advertisers e-mails sent to it by users. *Id.*

**\*3** It is also expressly stated on the Eros Guide website that:

> All advertiser content contained in this web site are provided to the Eros Guide by individuals for the purposes of paid advertisements and are the sole responsibility of the individual advertisers. The Eros Guide assumes no responsibility and cannot be held liable for any claims arising from advertisers ads.

*Id.,* ¶ 19.

Since 1996, Plaintiff has performed and promoted herself as a nude dancer in the Washington, D.C. metropolitan area. *Id.,* ¶ 26. Since 1999, Plaintiff has worked at the Nexus Gold Club in Washington, D.C. as a nude dancer. *Id.,* ¶ 29.

Alonzo Crittenden owns and operates an adult entertainment service, commonly known as "After Hours Entertainment" ("After Hours"), in the Washington, D.C. metropolitan area. Crittenden is an advertising customer of

Defendant, i.e., he creates advertisements for After Hours and pays Defendant to publish them on its Eros Guide website. *Id.,* ¶ 73. He does not work for Defendant and he is not Defendant's agent. *Id.,* ¶ 74.

In 1999 or 2000, Plaintiff met Crittenden and Darryl Pounds, a Washington Redskins player who was a friend of Crittenden, while she was performing at the Nexus Gold Club. Shortly thereafter, Plaintiff became sexually involved with Pounds and allowed him to take a series of intimate photographs of her in her home. *Id.,* ¶¶ 77, 78. Crittenden somehow obtained two of these photographs and used them in an advertisement for After Hours. *Id.,* ¶ 79. Crittenden paid Defendant to publish this advertisement which contained Plaintiff's image on its Eros Guide website. *Id.*

In 2001, Plaintiff discovered that Crittenden's advertisement was on the Eros Guide website. *Id.,* ¶¶ 81, 82. Plaintiff claims that she never authorized Crittenden to use her image in his advertisement. She also claims that she asked him several times to remove his advertisement from Defendant's Eros Guide website. *Id.,* ¶ 88. Plaintiff did not ask Defendant to remove Crittenden's advertisement from its website or otherwise communicate with Defendant regarding the advertisement prior to filing this action. *Id.,* ¶ 89.

On April 17, 2002, Plaintiff filed the instant action. On July 3, 2002, she filed an Amended Complaint which included essentially the same allegations as her Original Complaint. Plaintiff alleges intentional infliction of emotional distress, unjust enrichment, negligence, and fraud. Defendant's publication of Crittenden's advertisement on the Eros Guide website is the factual predicate for each of Plaintiff's tort claims.

Plaintiff seeks $500,000 in compensatory damages and $1,000,000 in punitive damages for intentional infliction of emotional distress; $500,000 in compensatory damages for unjust enrichment; and $500,000 in compensatory damages for fraud. Plaintiff does not seek a specific monetary amount under her negligence claim. She also seeks pre- and post-judgment interest and reasonable attorney's fees and costs.

 **\*4** On October 31, 2003, Defendant filed the instant Motion for Summary Judgment.

## II. STANDARD OF REVIEW
Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* [Fed.R.Civ.P. 56](). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. [*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)](). The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " [*Id.* at 324](). *See* [*Laningham v. U .S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987)]() (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor); [*Crenshaw v. Georgetown Univ.,* 23 F.Supp.2d 11, (D.D.C.1998)]() (noting that "adverse party must do more than simply 'show that there is some metaphysical doubt as to the material facts' " (quoting [*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)]())).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." [*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)](). *See* [*Washington Post Co. v. U.S. Dep't of Health and Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989)](). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52.

## III. ANALYSIS
Defendant claims that it is entitled to judgment as a matter of law on all Plaintiff's tort claims for two reasons. First, it maintains that it receives full immunity under § 230 of the Communications Decency Act of 1996 ("Act"), [47 U.S.C. § 230(c)(1)](). Second, it contends that Plaintiff's claims are barred by the First Amendment because Plaintiff is a public figure and cannot satisfy the constitutional standard of "actual malice." Defendant also claims that it is entitled to judgment as a matter of law on each of Plaintiff's claims because each claim lacks merit.

It is unnecessary for the Court to address the merits of any of Plaintiff's claims because Defendant is given full immunity under § 230 of the Communications Decency Act.

### A. Defendant Is Entitled to Summary Judgment on All Plaintiff's Claims because Defendant Receives Full Immunity under § 230 of the Communications Decency Act

**\*5** Defendant maintains that it receives full immunity under § 230 of the Communications Decency Act. Plaintiff asserts that Defendant is not immune under § 230 for two reasons. First, she claims that § 230 immunity is limited to those who "engage in Good Samaritan activities" by "block[ing] or screen[ing] offensive material from [their] website[s]," Pl.'s Opp'n, at 35–36, and that Defendant does not engage in such activities. Second, she argues that Defendant is an "information content provider because it "takes an active role in substantively developing its ads." She points out that Defendant prints its Eros Guide website address, "Eros–USA.com," on every advertisement that it publishes on its website; places a watermark on all photos in those advertisements; and categorizes each of those advertisements by subject matter.

#### 1. Section 230 of the Communications Decency Act

Section 203 of the Act states, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Act further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.,* § 230(e)(3).

Section 203 defines "interactive computer service" as

> any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

47 U.S.C. § 230(f)(2). The term "information content provider" is defined in the Act as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

By enacting this provision, Congress "made the legislative judgment to effectively immunize providers of interactive computer services from civil liability in tort with respect to material disseminated by them but created by others." *Blumenthal v. Drudge,* 992 F.Supp. 44, 49 (D.D.C.1998). *See Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330 (4th Cir.1997) (Congress created "a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."); *Green v. Am. Online, Inc.,* 318 F.3d 465, 470–71 (3d Cir.2003) (citing *Zeran* with approval); *Batzel v. Smith,* 333 F.3d 1018, 1030–32 (9th Cir.2003) (same); *Ben Ezra, Weinstein, & Co. v. Am. Online,* 206 F.3d 980, 985–86 (10th Cir.2000) (same).

As the Fourth Circuit has noted:

> Congress made a policy choice ... not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages. Congress' purpose in providing the § 230 immunity was thus evident. Interactive computer services have millions of users. The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted.

Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

**\*6** *Zeran,* 129 F.3d at 330–31 (internal citation omitted).

Thus, under § 230 of the Act, " 'lawsuits seeking to hold [an interactive computer service] liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content— are barred.' " *Blumenthal,* 992 F.Supp. at 50 (quoting *Zeran,* 129 F.3d at 330). See *Carafano v. Metro splash.com, Inc.,* 339 F .3d 1119, 1124 (9th Cir.2003) ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity [under § 230] regardless of the specific editing or selection process."); *Batzel,* 333 F.3d at 1031 ("[T]he exclusion of 'publisher' liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message."); *Ben Ezra, Weinstein & Co.,* 206 F.3d at 1031 ("Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.").

**2. Section 230 immunity is not limited to "Good Samaritans"**

Plaintiff argues that Defendant is not immune from liability under § 230 of the Act because § 230 immunity is limited to those who "engage in Good Samaritan activities" by "block[ing] or screen[ing] offensive material from [their] website[s]," Pl.'s Opp'n, at 35–36, and that Defendant does not engage in such activities. [3] Plaintiff cites to § 230(c)(2) of the Act which immunizes from liability providers and users of interactive computer service who voluntarily make good faith efforts to restrict access to material they consider to be objectionable, for example, "obscene," "excessively violent," or "harassing." [4]

Plaintiff's claim is unpersuasive because § 230(c)(2) "does not *require* [Defendant] to restrict speech, rather it allows [Defendant] to establish standards of decency without risking liability for doing so." *Green,* 318 F.3d at 472 (emphasis in original). See *Blumenthal,* 992 F.Supp. at 52 ("Congress has conferred immunity from tort liability as an incentive to Internet service providers to self-police the Internet for obscenity and other offensive material, even where the self-policing is unsuccessful or not even attempted."). Accordingly, even though Defendant does not engage in "Good Samaritan" activities, it still receives full immunity from tort liability under § 230 of the Act.

**3. Defendant is not an "information content provider"**

Plaintiff claims that Defendant is not immune from liability under § 230 of the Act because it is an "information content provider." Under § 230 of the Act, an "interactive computer service" qualifies for immunity so long as it does not also function as an "information content provider" for the portion of the publication at issue.

**\*7** Plaintiff contends that Defendant is an "information content provider" because it "takes an active role in substantively developing its ads." She points out that Defendant prints its Eros Guide website address, "Eros– USA.com," on every advertisement that it publishes on its website; places a watermark on all photos in those advertisements; and categorizes each of those advertisements by subject matter.

Plaintiff's argument is unconvincing. Circuit courts treat " § 230(c) immunity as quite robust, adopting a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider.' " *Carafano,* 339 F.3d at 1123 (internal citations omitted). They agree that § 230 "precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message." *Batzel,* 333 F.3d at 1031.

In this case, it is undisputed that the advertisement at issue was created by Crittenden, not Defendant, i.e., Crittenden supplied Defendant with the material he wanted included in the advertisement, including the images of Plaintiff. Defendant's minor alterations of that advertisement (printing its website address on every advertisement that it publishes on its website, placing a watermark on the photos used, and categorizing the advertisements by subject matter) do not constitute "creation or development" of the advertisement within the definition of "information content provider." See *Blumenthal,* 992 F.Supp. at 52 (defendant not "information content provider" even though it had editorial control over content in gossip column); *Ben Ezra, Weinstein, and Co.,* 206 F.3d at 985–86 (defendant not "information content provider" even though it edited and altered stock quotations provided

by third party). Also, the fact that Defendant categorized the advertisements posted on its Eros Guide website by subject matter "does not transform [it] into a 'developer' of the 'underlying misinformation.' " *Carafano,* 339 F.3d at 1123.

Accordingly, because Defendant did no more than select and make minor alterations to Crittenden's advertisement, it cannot, as a matter of law, be considered the content provider of the advertisement for purposes of § 230.[5]

For the foregoing reasons, Defendant is entitled to judgment as a matter of law because it is immune from liability on all of Plaintiff's tort claims under § 230 of the Communications Decency Act.

### IV. CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment is **granted.**

An Order will issue with this opinion.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 5550485

---

### Footnotes

1    On July 31, 2003, the Court granted a Joint Stipulation of Dismissal of all claims raised by Plaintiff Black Ride III, Inc..

2    Fed. R. Civ. Pro. 56(e) provides, in pertinent part,

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

> Fed. R. Civ. Pro. 56(e).

3    Plaintiff cites no authority in support of this proposition.

4    Section 230(c)(2) states

> [n]o provider or user of an interactive computer service shall be held liable on account of any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected.

> 47 U.S.C. § 230(c)(2)(A).

5    Plaintiff argues that Crittenden was or is an employee or agent of Defendant. Specifically, Plaintiff claims that Defendant "compensated Alonzo Crittenden, exercised the right to revoke his position, and controlled and directed him in the performance of his work." Pl.'s Opp'n, at 6. Plaintiff provides no evidentiary support for these specific indicia of agency. Plaintiff cites only to one sentence of testimony from Ron Hunt, owner of Black Ride III, Inc., to the effect that Crittenden identified himself in a telephone conversation as an agent of Defendant. This single sentence is insufficient to permit a reasonable jury to find that Crittenden was or is an employee or agent of Defendant.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.