# EXHIBIT E

KeyCite Overruling Risk

Overruling Risk    Jones v. R.R. Donnelley & Sons Co.,    U.S.,    May 3, 2004

2001 WL 1168102
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Anthony G. TETI, Sr., Kathleen G. Teti, Anthony G. Teti, Jr., Diane E. Teti, Douglas S. Teti, and Tribank Mortgages, Inc., Plaintiffs
v.
TOWAMENCIN TOWNSHIP, Robert N. Rau, Jr., Michael C. Becker, Julie E. Geiger, Lillian C. Smith, David C. Oronato, John A. Granger, Jo-Anne Brown, John Dooley, Esquire, Joseph M.L. Kirschner, John Cutrone, Jeffrey Kratz, and All Other Persons Unknown to Plaintiffs at this Time, Defendants

No. CIV. A. 96-CV-5402.
|
Aug. 17, 2001.

**Attorneys and Law Firms**

Erik B. Jensen, Phila, Anthony G. Teti, Jr., Kulpsville, Douglas S. Teti, Diane E. Teti, Lansdale, Tribank Mortgages, [Pro se], C/ O Anthony G. Teti, Kulpsville, for Anthony G. Teti, Kathleen G. Teti, Anthony G. Teti, Jr, Douglas S. Teti, Diane Teti, Tribank Mortgages, Plaintiffs.

L. Rostaing Tharaud, Marshall, Dennehey, Warner, Coleman and Goggin, Phila, Joseph J. Santarone, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Norristown, for Towamencin Township, Defendants.

MEMORANDUM

TUCKER, J.

**\*1** Plaintiffs Anthony and Kathleen Teti, along with their children Anthony, Jr., Douglas, and Diane Teti and their family business, Tribank Mortgages, Inc., brought this suit on August 2, 1996 against defendants Towamencin Township and several current and former employees of the township. The Tetis allege that township officials conspired to drive them and other small business owners out of town. After a lengthy process of pretrial litigation, the parties conducted discovery, and plaintiffs were granted leave to file a Fourth Amended Complaint [hereinafter "the Complaint"]. Defendant John Dooley, solicitor for the township, has now filed a motion for summary judgment; the other defendants have filed a separate motion for summary judgment. Plaintiffs have filed a memorandum in opposition to both defendants' motions, and have moved for summary judgment in their own right.[1] For the following reasons, defendants' motions will be granted, and plaintiffs' motion will be denied.

II. LEGAL STANDARD

Under the rules of civil procedure, federal courts may enter summary judgment if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate under Rule 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323, 106 S .Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial responsibility, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party may not rest upon bare assertions, conclusory allegations, or suspicions, *see Fireman's Insurance Co. v. Du Fresne,* 676 F.2d 965, 969 (3rd Cir.1982), nor upon "the mere allegations or denials of the [nonmoving] party's pleading," Fed.R.Civ.P. 56(e), but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. *See Celotex,* 477 U.S. at 324; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3rd Cir.1990).

A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed factual matter is a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The Court must make its determination after considering the facts and all reasonable

inferences drawn from them in the light most favorable to the nonmoving party. *Id.* at 255-256.

III. DISCUSSION

A. Section 1983 Claims

**\*2** In Count 1, plaintiffs assert a claim under 42 U.S.C. § 1983 for violation of their rights to equal protection and substantive due process under the Fourteenth Amendment. Plaintiffs allege that township officials conspired to drive them out of town through a campaign of harassment and unjustified official delay and mistreatment, in order to promote the interests of Trefoil, a large, influential local developer. Plaintiffs allege that this treatment constituted discrimination against them as members of a class of small business owners, and that it was an arbitrary violation of their property interest in use of their land and business.

Defendants argue that plaintiff's § 1983 claims are barred by the statute of limitations. In § 1983 actions, federal courts apply the statute of limitations governing state actions for personal injuries. *Wilson v. Garcia,* 471 U.S. 261, 276-80, 105 S.Ct. 1938, 1947-49 (1985). Pennsylvania has a two-year limitations period for personal injury actions. 42 Pa.C.S.A. § 5524(7). The statute of limitations begins to run from the time that the cause of action accrues. Accrual of a federal cause of action, like one brought under § 1983, is governed by federal law. *Gentry v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir.1991); *Eastern Paralyzed Veterans v. Sykes,* 697 F.Supp. 854, 857 (E.D.Pa.1988). Under federal law, a § 1983 action accrues when a plaintiff knows or has reason to know of the injury forming the basis of his complaint. *Geary,* 937 F.2d at 919 (citations omitted).

In the instant case, plaintiffs filed suit on August 2, 1996, so that claims under § 1983 for causes of action arising before August 2, 1994 are barred by the statute of limitations unless plaintiffs can identify good cause for tolling of the statute. Plaintiffs assert that the statute should be tolled in this case because defendants were working together in a secret conspiracy, and plaintiff did not discover the conspiracy until after this lawsuit began.

There is no liability under § 1983 for conspiracy itself; plaintiffs can only bring claims for specific acts which violate their constitutional rights.[2] *Holt Cargo Systems, Inc. v. Delaware River Port Authority,* 20 F.Supp.2d 803, 843 (E.D.Pa.1998); *see also Defeo v. Sill,* 810 F.Supp. 648, 658 (E.D.Pa.1993) ("While the existence of a conspiracy otherwise may supply the element of state action and expand the scope of liability through the concept of imputation, § 1983 does not provide a cause of action per se for conspiracy to deprive one of a constitutional right"). A 'conspiracy' is only relevant under § 1983 as the means to sustain a claim against private actors who have been working in concert with state actors, *see Panayotides v. Rabenold,* 35 F.Supp.2d 411, 419 (E.D.Pa.1999), or to impart liability to all of the members of the conspiracy without regard to particular acts, *Holt Cargo,* 20 F.Supp.2d at 843. The statute of limitations will not be tolled for plaintiffs who are unaware that the acts directed against them are part of a conspiracy, because such plaintiffs have no cause of action for the conspiracy itself. As long as "a plaintiff knows or has reason to know of the injury forming the basis of his complaint," the statute of limitations begins to run for a § 1983 claim.[3]

**\*3** Plaintiffs here do not claim that they were unaware of the issuance of citations or warnings by police officers, or of the allegedly deliberately misleading letters and other communications directed to them by township officials, that occurred prior to August 2, 1994. Plaintiffs were plainly aware of the possibility of a suit by July 8, 1994, when Kathleen Teti wrote to Dooley that, "I am not [a] person to be pushed around and your township has chosen to ignore our rights of being able to use our property...I can make a lot of money suing you, your law firm, and Towamencin Township. I feel very confident a jury will side in our favor as to what Joanne Brown has done and continues to do to people who have every right to use their properties." Plaintiffs' Memorandum, Exhibit A-17 at 2-3. Rather, they assert that the defendants' actions were part of an ongoing violation. As the Second Circuit has noted, "[t]o permit [plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Singleton v. New York,* 632 F.2d 185, 192 (2d Cir.1980). Plaintiffs allege that the object of the conspiracy was to prevent them from operating their business in Towamencin Township, but the township provided them with the permit necessary to operate their business on August 2, 1994. Plaintiff's Fourth Amended Complaint cites only sporadic actions by town officials as part of the alleged conspiracy, and most of them after 1997. The only action identified in plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 (which also serves as plaintiffs' memorandum in opposition to defendants' motions for summary judgment) that is alleged

to have occurred between August 2, 1994 and August 2, 1996 and to have been directed at the Tetis is that on December 14, 1994, defendant Jo-Anne Brown told a sign contractor that she was "not sure" whether a fourteen square foot sign would violate a zoning ordinance, and "asked" the contractor to reduce the sign to twelve feet. Memorandum at 22. Hence, between the time the Tetis received the permit they had sought and the time they filed the instant suit, they were only affected by a single ambiguous action which could be described as part of an ongoing conspiracy, and they do not even allege that Brown had any improper intentions when she made an apparently innocent request to the Tetis' sign contractor. One highly ambiguous action within a two-year period cannot constitute a continuing violation. Plaintiffs will not be permitted to defeat the purpose of the statute of limitations; all claims under § 1983 arising from actions prior to August 2, 1994 are time-barred.[4]

Plaintiffs are not barred from asserting § 1983 claims for actions after August 2, 1994, but they have not identified any evidence to support their arguments that any such actions violated their civil rights. The incident with Jo-Anne Brown on December 14, 1994, as described by plaintiffs themselves, consisted merely of a minor request by Brown stemming from her uncertainty about the applicability of certain ordinances, and did not violate equal protection or substantive due process. Mere negligence will not suffice to support a § 1983 claim; to prevail on a claim under § 1983 for denial of equal protection, plaintiffs must prove the existence of purposeful discrimination, *Batson v. Kentucky,* 476 U.S. 79, 93 (1986), while "culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience'." *Miller v. City of Philadelphia,* 174 F .3d 368, 375-76 (3d Cir.1999).

**\*4** The Complaint alleges that, after Douglas Teti was given a citation for public drunkenness in March 1997, defendants Dooley and Oronato falsely represented to plaintiffs that the citation could not be withdrawn, but plaintiffs do not cite any evidence to support their claim that they were misled deliberately by defendants. Plaintiffs point only to an angry letter by Kathleen Teti complaining that defendants refused to withdraw the citation, not that they had said that it could not be withdrawn. The letter suggests that Kathleen Teti demanded that the citation be withdrawn, but plaintiffs do not cite any law or regulation providing that citations can be, or must be, withdrawn upon request. Plaintiffs claim that, in his deposition, Chief Kirschner stated that citations could be withdrawn by the charging officer, but in fact, Kirschner clarified that police officers can withdraw tickets "with the authority of [the police chief] and with the approval of the district judge," Plaintiffs' Memorandum, Exhibit C-1 at 72. Plaintiffs' Memorandum states that defendant Dooley and the township supervisors told Kathleen Teti that "it was up to the courts," and, according the Kirschner's testimony, this was essentially correct; in any event, plaintiffs do not identify a source of authority for the township solicitor or the members of the Board of Supervisors to withdraw police citations. Viewing the evidence in the light most favorable to plaintiffs, all defendants appear to have been within their rights to refuse plaintiffs' request that the citation be withdrawn, and plaintiffs have not produced any evidence that defendants' refusal to take steps to have the citation withdrawn constituted "different treatment from that received by other individuals similarly situated," *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1478 (3d Cir.1990), a prerequisite for an equal protection claim under § 1983.

The Complaint says that in 1995, and again in 1998, the township passed ordinances which made it impossible for all but four businesses in town to post signs in compliance with it. Leaving aside the question of whether a facially neutral sign ordinance could violate the equal protection or due process clauses, plaintiffs have simply not provided any evidence to demonstrate that some persons could comply with the ordinance while others could not, nor that it "totally eliminated [their] right... to place a sign in the front yard of the property." Memorandum at ¶ 50. Plaintiffs state that Anthony Teti's deposition testimony makes reference to the sign ordinance, but plaintiffs do not direct the Court to any helpful part of that testimony. Anthony Teti's testimony confirms that Tribank Mortgages did have a sign, Plaintiffs' Exhibit C-13 at 72, and appears to say nothing about an ordinance preventing placement of an effective sign.

Plaintiffs allege that the township closed the highway in front of their business for twenty-one days in 1998 in order to widen the road, and then failed to reimburse them for the loss of frontage along Sumneytown Pike due to the road widening, yet reimbursed Trefoil, a large developer. The closure of the road was evidently not an equal protection violation, since the township also widened the road in front of Trefoil's property, and in any event, closure of a public road for three weeks for a legitimate purpose is neither shocking to the conscience nor an instance of purposeful discrimination against the Tetis. Furthermore, plaintiffs have not provided any evidence that

Trefoil was reimbursed for its loss of frontage, while plaintiffs were not. [5]

**\*5** Finally, plaintiffs claim that on January 16, 1999, a car crashed onto their front lawn and that of a neighbor, but that the township police notified only the neighbor regarding this incident, and not the Tetis. Here again, plaintiffs do not point to any evidence that this alleged failure of notification was an instance of purposeful discrimination, or of gross negligence that shocks the conscience. Based on the evidence identified by plaintiffs, no reasonable factfinder could determine that this or any of the other alleged incidents constituted a violation of plaintiffs' rights to equal protection or due process. Count I will be dismissed.

### B. RICO Claims

In Counts II and III, plaintiffs allege that defendants Rau, Becker, Geiger, Smith, Oronato, Dorand, Granger, Brown, and Dooley conducted or participated in Towamencin Township's affairs through a pattern of racketeering activity, in violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), and conspired to do so in violation of § 1962(d). Plaintiffs allege that the conspirators committed acts of mail fraud, which constitutes a racketeering act as defined by 18 U.S.C. § 1961, and that these acts furthered a scheme to hinder land use applications, frustrate property owners' use of their property, and thereby eliminate small business owners within the town center. Specifically, plaintiffs complain that, in response to their inquiries and applications, township officials refused to grant them the use and occupancy permit they sought for the Tribank Mortgages site between March 16, 1992 and August 2, 1994, and instead sent, or caused to be sent, mailings which cited deliberately incorrect interpretations of land use ordinances and informed plaintiffs that they were required to file multiple unnecessary revisions of their site plan.

Plaintiffs have not set forth specific facts showing that there is a genuine issue for trial regarding their RICO claims. To recover under § 1962(c), a plaintiff must prove, inter alia, that a defendant committed at least two acts of racketeering activity, as part of a related and continuous pattern, *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 2899 (1989), that the defendant had the intent to defraud, *see Gentry,* 937 F.2d at 908; *Atlas Pile Driving Co. v. DiCon Fin. Co .,* 886 F.2d 986, 991 (8th Cir.1989), and that the defendant conducted or participated in the affairs of the enterprise (here, the township) through the pattern of racketeering activity, *University of Maryland at Baltimore v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993).

The United States Supreme Court has held that for a defendant to conduct or participate in the conduct of the affairs of an enterprise, he or she must participate in the operation or management of the enterprise itself. *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 1173 (1993). "In other words, the person must knowingly engage in 'directing the enterprise's affairs' *though* a pattern of racketeering activity." *U.M. B.,* 996 F .2d at 1539 (emphasis added). Although the mailings that constitute the alleged mail fraud need not themselves contain any misrepresentations or omissions, *see Schmuck v. U.S.,* 489 U.S. 705, 715, 109 S.Ct. 1443, 1450 (1989), they must be incident to an essential element of a scheme to defraud, *see Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362-63 (1954), and the scheme must involve misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension. *Walters v. First Nat'l. Bank, N.A.,* 855 F.2d 267, 273 (6th Cir.1988), *cert. den.,* 489 U.S. 1067 (1989). Moreover, acts that are done inadvertently, mistakenly, or in good faith, without the intent to defraud, do not satisfy the mens rea requirement. *Id.; O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 706 (2d Cir.1990).

**\*6** Plaintiffs assert that all defendants named in these counts "misrepresented... [that] it was necessary to make land use applications and that such applications would be decided on their merits," while concealing the fact that their real intent was to hinder such applications and frustrate property owners' use of their land. Most of the named defendants are not alleged to have made use of the mails, however; most of the mailings received by plaintiffs were sent by Jo-Anne Brown. Plaintiffs themselves acknowledge that Brown did not act with the requisite mens rea; in their Memorandum, they allege that her actions were due solely to her "incompetence," and that she was "directed... to believe" an incorrect interpretation of township ordinances by Dooley. Memorandum at 5, 9. Plaintiffs offer no evidence, then, that Brown acted with the intent to defraud, and indeed, they confirm that she had no such intent. Brown cannot be liable under § 1962(c).

Plaintiffs' theory seems to be that Brown's letters to them were misleading, and that therefore all named defendants who were part of the scheme are liable under § 1962(c), based upon those misrepresentations. This is incorrect-one defendant's predicate acts cannot be imparted to other defendants to

establish vicarious liability. Under § 1962(c), each defendant who is liable must individually act to conduct, or participate in, the enterprise's affairs by committing two or more predicate acts of racketeering. *See Republic of Panama v. BCCI Holdings,* 119 F.3d 935, 948 (11th Cir.1997) (RICO "requires that a RICO plaintiff establish that a defendant could be convicted for violating any of its predicate statutes"), citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 486-88, 105 S.Ct. 3275, 3280, 87 L.Ed.2d 346 (1985). The only predicate act alleged in the Complaint is mail fraud, and any defendant who is liable under Count II must have committed at least two acts of mail fraud. [6]

Defendant Dooley is alleged to have sent various mailings to plaintiffs, but his relatively few mailings cannot for the basis for § 1962(c) liability. Plaintiffs have identified a letter that Dooley sent to Brown on March 18, 1992, [7] and they assert that this letter "intentionally misled the Teti's," because Brown relied on the letter, as Dooley knew she would, when she sent her own letters to the Teti's, informing them that their proposed use of the site would constitute a 'land development' and therefore required completion of the land development process. Plaintiffs allege that Brown again relied on Dooley's letters when she wrote another letter to Kathleen Teti on November 6, 1992, but plaintiffs do not allege that Dooley himself wrote another letter during 1992 or 1993.

As plaintiffs explain, they did not approach township officials for a while after November 1992, because they decided to seek a permit at the state level. The process of receiving that permit took most of 1993, and plaintiffs contacted township officials again in January 1994, at the first of several in-person meetings. Dooley is not alleged to have written another letter until June 30, 1994, when he wrote directly to Kathleen Teti in response to her letters to him. In his letter of June 30, Dooley maintained his earlier position that the plaintiffs' intended use of the site constituted a land development, and thus that a certificate for use and occupancy could not yet be issued. On or about July 5, 1994, Dooley met with Kathleen Teti and received an engineered site plan from her; the next day, Dooley asked Brown to evaluate the site plan and report back to him. Two days later, on July 8, according to plaintiffs, Dooley prepared another letter, advising Kathleen Teti that the land development process did not need to be completed, since "there is no need to expand the parking beyond what has already been done." [8] Dooley wrote to Teti a few times in late July to inform her that a final inspection was needed, and subsequently that the inspection had uncovered a few minor remaining items to be completed prior to issuance of the permit; these items were dealt with quickly, and the permit was issued on August 2, 1994. In short, Dooley's alleged acts of mail fraud consist of mailing a letter to Jo-Anne Brown in March 1992, and then mailing a letter to Kathleen Teti on June 30, 1994; the subsequent letters were not fraudulent, and dealt with requirements that were acknowledged and accepted by plaintiffs.

**\*7** Two predicate acts of racketeering in twenty-seven months do not constitute a violation of § 1962(c). A claim under this section requires that the defendant's actions form a 'pattern' of racketeering, and the distinguishing characteristic of a pattern "is th[e] factor of *continuity plus relationship.*" *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (emphasis in original). "A pattern is not formed by 'sporadic activity', and a person cannot 'be subjected to the sanctions of [RICO] simply for committing two widely separated and isolated criminal offenses." *H.J., Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900 (citations omitted). Sporadic actions are, by definition, not continuous. *Cf. Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 44-46 (1st Cir.1991).

Plaintiffs' Memorandum implies that Dooley 'caused' Brown to send allegedly misleading letters to Kathleen Teti, by providing his opinion letter of March 18, 1992, but Brown's first set of letters regarding the permit were only sent between March and November 1992, and then stopped for over a year. According to a memo from Jo-Anne Brown that plaintiffs have provided, when Dooley next had involvement in the dispute over the permit request, in early April 1994, he advised Brown that there was "no legal necessity" to reply to a recent letter from Kathleen Teti; obviously, at that point, Dooley was not 'causing' any defendant to use the mails, and, indeed, plaintiffs complain that their letters were not answered between April 7 and June 30, 1994. Dooley repeated his allegedly fraudulent statement on his letter of June 30, but by early July, he was directing Brown to resolve the few remaining obstacles to plaintiffs' receipt of a permit. To the extent that the evidence could be interpreted to show that Dooley intended to 'cause' Brown's letters, therefore, he only did so, at most, between March and November 1992. An eight-month period is simply not long enough to demonstrate the 'continuity' of a series of predicate acts, sufficient to establish a pattern for RICO purposes. *See Hughes v. Consol-Pa. Coal. Co.,* 945 F.2d 594, 611 (3d Cir.1991) (holding that one year insufficient to establish continuity); *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1418 (3d Cir.), *cert. den.,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991) (eight months insufficient). [9]

Dooley's letters appear to have consisted of ordinary advice to his client, the township, in response to various requests for his opinion of town ordinances, with no intent to defraud the Tetis. Merely offering disputed interpretations of local ordinances does not constitute fraud or intentional misconduct such as to constitute a violation of RICO, *cf. U.S. Magnet & Alloy Corp. v. Yardley Borough,* 1986 WL 14550, \*3 (E.D.Pa. Dec. 11, 1986); *Edelweiss Dev. Corp. v. County of Susquehanna,* 738 F.Supp. 879, 887 (M.D.Pa.1988), *aff'd. without opinion,* 908 F.2d 962 (3d Cir.1990). Even if these two letters could be considered instances of actual mail fraud, however, they do not constitute a pattern of racketeering activity, because they were not continuous, and Dooley cannot be held liable under Count II.

**\*8** The only other defendant who is even alleged to have had any specific involvement in the discussions with the Tetis over their application for a permit is Township Manager John Granger, but plaintiffs do not cite any evidence that Granger committed a predicate act of racketeering. They make the vague allegation that Granger "used his position" to favor a large developer, but they provide no evidence of how Granger did so, and they do not even describe how he might have committed mail fraud or any other predicate offense. Plaintiffs' Memorandum cites only two generic letters sent by Granger to Tribank Mortgages, both of which acknowledged it as a legitimate business, and bore no relation to any alleged attempt to defraud plaintiffs. Memorandum at 40. Granger cannot be held liable under § 1962(c). Likewise, no other defendant is alleged to have committed a predicate act.[10] Count II will be dismissed.

In Count III, plaintiffs allege that the named defendants in Count II also violated 18 U.S.C. § 1962(d) by conspiring to violate § 1962(c). "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir.1993), citing *Leonard v. Shearson Lehman/ American Express, Inc .,* 687 F.Supp. 177, 182 (E.D.Pa.1988); *see also Baglio v. Baska,* 940 F.Supp. 819, 836 (W.D.Pa., 1996). As plaintiffs have not demonstrated the existence of a viable claim under § 1962(c), their claim for conspiracy under § 1962(d) must fail. Count III will be dismissed.

C. Sherman Act Claim

In an unenumerated count in the Complaint, plaintiffs allege that all defendants interfered with interstate commerce by "delaying plaintiffs the right to use their property and deal with banks in... other states," and by "refusing to allow the other properties [sic] to construct shopping centers and forc[ing] several other businesses out of the area." In order to establish a violation of the Sherman Act, plaintiffs would have to prove, inter alia, that "concerted action by the defendants... produced anticompetitive effects within the relevant product and geographic markets." *Baglio,* 940 F.Supp. at 827. Neither in the Complaint nor in their Memorandum in Opposition to the Motions for Summary Judgment do plaintiffs cite any authority to support this claim, or explain how the evidence supports a legal claim under the Sherman Act. In any event, this claim is barred by the Supreme Court's ruling in *City of Columbus v. Omni Outdoor Advertising,* 499 U.S. 365, 111 S.Ct. 1344 (1991), in which the Court rejected "any interpretation of the Sherman Act that would allow plaintiffs to look beyond the action of state sovereigns... to base their claims on... conspiracies to restrain trade...with [one possible exception, any action that qualifies as a state action is 'ipso facto' exempt from the operation of the anti-trust laws." *Id.* at 379, 111 S.Ct. at 1353. The actions alleged in this unenumerated count, as described by plaintiffs, are state actions, and they are exempt from the Sherman Act. This count will be dismissed.

D. State Law Claims

**\*9** In Counts IV and V, plaintiffs assert state law claims for intentional misrepresentation and fraud against, respectively, Dooley and all defendants. As all claims under federal law have been dismissed, the Court, exercising its discretion under 28 U.S.C. § 1367(c), will decline to exercise supplemental jurisdiction over plaintiffs' state law claims. These claims appear to have little chance of success on the merits. Count IV is premised upon Dooley's failure to prevent enactment of ordinances by the duly elected members of the Board of Supervisors or, when Kathleen Teti addressed the Board, "to use his expertise and knowledge to know that the Township police did in fact have the right to withdrawal citation [sic]." Count V is premised upon all defendants holding closed sessions, and holding "a public hearing to vote on changes to the ordinances." None of these allegations appear to support a claim for fraud or intentional misrepresentation. In any event, these claims are properly brought in state court, and they will be dismissed without prejudice so that plaintiffs may refile them in the appropriate state forum.

## IV. CONCLUSION

Plaintiffs have not met their burden to identify genuine issues of material fact for trial on their claims under federal law. They have not set forth facts upon which a reasonable factfinder could rely to find defendants liable on plaintiffs' claims for violations of equal protection, substantive due process, RICO, or the Sherman Act. Therefore, defendants' motions for summary judgment will be granted, and plaintiffs' motion for summary judgment, which rests upon the same arguments, will be denied. Counts I, II, III, and an unenumerated count in the Fourth Amended Complaint will be dismissed with prejudice. Judgment will be entered for defendants on these counts. Counts IV and V will be dismissed without prejudice to plaintiffs' right to refile these claims in state court. An appropriate order follows.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 1168102

---

### Footnotes

| | |
|---|---|
| 1 | At the same time that they move for summary judgment in their favor, plaintiffs offer a perfunctory argument that summary judgment is not appropriate at this stage, because discovery is not complete. The parties have completed extensive discovery in this case, which has gone on for nearly five years, and summary judgment is appropriate at this stage. Plaintiffs did not file a timely motion to compel; they did file a request for emergency special relief on October 16, 2000, which included a request that the Court compel production of certain documents, but the Court has denied that request as moot. Counsel for defendants affirmed that the requested documents had been produced to the extent possible. In any event, under the Court's First Amended Scheduling Order of May 22, 2000, the parties were notified that they had until August 18, 2000 to complete all requests for, and responses to, discovery, and that motions for summary judgment would be due by August 25, 2000. Plaintiffs did not file any motions to compel or requests for extension of discovery deadlines prior to the summary judgment deadline. |
| 2 | Litigants may assert claims for conspiracy to violate their civil rights under 42 U.S.C. § 1985(3), but only if they are members of a distinct minority group or a class defined by immutable characteristics, *see Carchman v. Kormen Corp.,* 594 F.2d 354, 356 (3d Cir.1979), *cert. den.* 444 U.S. 898, 100 S.Ct. 205 (1979). Small business owners are not a class protected by § 1985(3). *See also Lake v. Arnold,* 112 F.3d 682, 685-88 (3d Cir.1997) (finding "no precise parameters defining the boundaries of 'class' within the meaning of section 1985(3)," but focusing on discrete and insular minorities and groups united by immutable characteristics). |
| 3 | If plaintiffs are unaware of the conspirators' actions which violate their civil rights, then the statute of limitations may be tolled until plaintiffs have reason to know of the existence of the conspiracy, *see Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982), but in the instant case, plaintiffs do not allege that they were unaware of the defendants' individual acts. |
| 4 | Plaintiffs cite only *American Independent Insur. Co. v. Lederman, et al.,* 2000 WL 1209371, *5-8 (E.D.Pa. August 25, 2000) in support of their argument that the statute of limitations is tolled. *Lederman* deals only with claims under RICO, and does not address the time-bar on claims under § 1983. The point for which plaintiffs cite the case, that the statute of limitations for conspiracy claims does not begin to run until plaintiffs have reason to know of the existence of the conspiracy, is correct, but does not apply to their § 1983 claims. |
| 5 | In her deposition, Kathleen Teti testified that she had been told that Trefoil was "paid" by being allowed to pay less in impact fees in return for "them giving their land for the road widening." Memorandum, Exhibit C-12 at 205. Plaintiffs do not point to any evidence to show that Trefoil received such a deal-purely hearsay testimony |

6       Plaintiffs also allege wire fraud, but the wire fraud statute requires interstate use of wire communications, *United States v. Darby,* 37 F.3d 1059, 1067 (4th Cir.1994), and here, all of the parties reside in Pennsylvania, and there is no allegation that any defendant used interstate wires at any time in furtherance of the alleged scheme.

7       Plaintiffs note that Dooley sent a second letter to Brown on March 19, 1992, but this letter dealt entirely with the possibility that, in the future, the site would be converted to a use other than that proposed by the Tetis, an event which never came to pass. Plaintiffs offer no evidence that they relied on this letter, directly or indirectly, as it expressed an entirely conditional opinion about a situation which never occurred. RICO plaintiffs must prove reliance on a misrepresentation in order to establish injury to business or property by reason of a predicate act of mail fraud. *See Matter of EDC, Inc.,* 930 F.2d 1275, 1280 (7th Cir.1991); *accord Morley v. Cohen,* 888 F.2d 1006 (4th Cir.1989).

8       The letter of July 8, 1994 actually provided by plaintiffs, Exhibit A-16, does not contain such a sentence; it states that Mrs. Teti would have to provide additional information to Jo-Anne Brown, and that if, based on that information, "additional parking must be provided, then such addition would be an improvement to the property which would require Land Development approval."

9       Courts have held that a shorter period of time may suffice to demonstrate continuity, but only if defendants' scheme to defraud is 'open-ended', such that their actions manifest a threat of continued criminal activity. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1418 (3d Cir.), *cert. den.,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Medical Emergency Serv. Assocs. v. Foulke,* 844 F.2d 391, 398 (7th Cir.1988). Courts will find an open-ended scheme where "defendants used fraud as a regular way of doing business or formed an on-going criminal association." *Hughes v. Consol-Pennsylvania Coal Co.,* 945 F.2d 594, 610 (3d Cir.1991). Here, plaintiffs received the permit they sought on August 2, 1994, and after that date, there was no threat that township officials would continue to commit mail fraud with the intent of preventing plaintiffs from obtaining a use and occupancy permit. Defendants' alleged overall goal was to establish Trefoil as the dominant developer and real estate owner in town, and once that was accomplished, their scheme would be complete; thus, the scheme was not open-ended. There is no evidence that committing mail fraud by sending out deliberate misinterpretations was defendants' regular way of business, or that Towamencin Township is an ongoing criminal enterprise.

10      Plaintiffs do not cite any evidence that any defendant other than John Dooley might have taken some action which 'caused' Jo-Anne Brown to send misleading letters to plaintiffs. Rather, plaintiffs allege that Brown acted in "total reliance on the opinion of John Dooley," Memorandum at 11, which suggests that only Dooley caused Brown to send letters.

Plaintiffs have submitted an affidavit, averring that the transcript of Chief Kirschner's depositions was altered to remove the text of his admission that "the township told him to keep an eye on Tribank." Plaintiffs do not explain how asking the police to "keep an eye" on Tribank Mortgages could constitute a predicate act for RICO purposes. The allegedly altered transcript section is irrelevant to plaintiffs' burden to demonstrate an issue for trial as to their legal claims.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    8