# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SPENCER SAVINGS BANK, S.L.A.,

          Plaintiff,

    v.

BNK INVEST, INC., ROBERT SEPERSKY, JONATHAN GOLDMAN, RONALD RAGANELLA, ROBERT MITCHELL, WILLIAM R. DOSSENBACH, JORDAN FARKAS, HARVEY SCHAFFLER, LEVI C. PUREC, TIMOTHY J. KLACE, KENNETH METVINER, LAWRENCE SEIDMAN, BRAD D. BUTLER, RICHARD J. LASHLEY, JOHN H. MEREY, LEO M. GOLDNER, MARK A. GOLDSTEIN, MICHAEL D. ABNERI, BONNIE S. GRAYSON, and CHAYA M. EISENBACH,

          Defendants.

**Civil Action**

**ORAL ARGUMENT REQUESTED**

**Docket No. 2:25-cv-03877-MEF-JRA**

**Return Date: October 6, 2025**

---

## DEFENDANT MARK A. GOLDSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11

---

MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Sᴄʜᴜʟᴛᴇ LLP
Jessica Greer Griffith (NJ Bar No. 126432014)
Todd Harrison (admitted *pro hac vice*)
Kenton Atta-Krah (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-3852
Tel: 212-547-5400
ggriffith@mwe.com
tdharrison@mwe.com
katta-krah@mwe.com

*Attorneys for Defendant Mark A. Goldstein*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................................1

PROCEDURAL HISTORY ...................................................................................................4

ARGUMENT ........................................................................................................................6

I.      Legal Standard ........................................................................................................6

II.     Rule 11 Sanctions Are Warranted Because The Amended Complaint
        Against Mr. Goldstein Still Lacks Any Evidentiary Support.................................8

        A.      The Amended Complaint Lacks Legal and Evidentiary Support ...........8

        B.      The Amended Complaint is Brought for an Improper Purpose—to
                Harass, Intimidate, and Increase the Cost of Litigation........................16

CONCLUSION...................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991)..................................................................................6, 7, 9, 13

*Bygott v. Leaseway Transp. Corp.*,
No. 84-2229, 637 F. Supp. 1433 (E.D. Pa. June 10, 1986)..................................8, 13

*Est. of Hennis v. Balicki*,
No. CV 16-3858, 2018 WL 1558142 (D.N.J. Mar. 29, 2018)..................................8

*Fahrenz v. Meadow Farm P'ship*,
850 F.2d 207 (4th Cir. 1988) ................................................................................8

*Grant v. Turner*,
No. 09-2381 (GEB), 2010 WL 4004719 (D.N.J. Oct. 12, 2010).....................1, 7, 8

*Leuallen v. Borough of Paulsboro*,
No. 99-4353 (JBS), 180 F. Supp. 2d 615 (D.N.J. Jan. 10, 2002) ..........................7

*Scott v. Vantage Corp.*,
64 F.4th 462 (3d Cir. 2023) ..................................................................................8

*Seidman v. Spencer Sav. Bank et al.*,
Nos. A-2039-17T3, A-4739-17T4 (App. Div. Oct. 3, 2019)............................4, 16

*Seidman v. Spencer Sav. Bank, S.L.A. et al.*,
No. PAS-C-53-15 (N.J. Sup. Ct. Ch. Div (July 28, 2015))......................................4

*Simmerman v. Corino*,
27 F.3d 58 (3d Cir. 1994)......................................................................................7

*Smith v. Berg*,
247 F.3d 532 (3d Cir. 2001)................................................................................10

*In re Taylor*,
655 F.3d 274 (3d Cir. 2011)........................................................................ *passim*

*Vasta v. Spencer Sav. Bank, SLA et al.*,
No. C-108-21 (N.J. Super. Ct. Ch. Div (Nov. 10, 2021))...............................2, 5, 10

*Vasta v. Spencer Sav. Bank, SLA et al.*,
No. PAS-C-108-21 (N.J. Super. Ct. Ch. Div. (Dec. 16, 2021))............................15

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC,*
    935 F.3d 187 (3d Cir. 2019).................................................................................7

**Statutes**

18 U.S.C. § 1961 ............................................................................................................1

18 U.S.C. § 1962 .......................................................................................................5, 10

18 U.S.C. § 1962(c) .........................................................................................................4

18 U.S.C. § 1962(d) ....................................................................................................4, 10

**Other Authorities**

Fed. R. Civ. P. 11 .................................................................................................. *passim*

Fed. R. Civ. P. 11(b) .....................................................................................................3, 8

Fed. R. Civ. P. 11(b)(1) ................................................................................................16

Fed. R. Civ. P. 11(c)(2) ..................................................................................................3

Fed. R. Civ. P. 11(c)(4) ..............................................................................................8, 17

Fed. R. Evid. § 201 .........................................................................................................4

Fed. R. Evid. § 201(b)(2) ...............................................................................................4

N.J.R.E. 201 ....................................................................................................................4

N.J.R.E. 201(b) ...............................................................................................................4

Defendant Mark A. Goldstein ("Mr. Goldstein" or "Defendant") submits this Memorandum of Law in support of his motion for sanctions against Spencer Savings Bank, S.L.A. ("Spencer" or "Plaintiff") under rule 11 of the Federal Rules of Civil Procedure (the "Rules") and the Court's inherent powers (this "Motion"). In support, Defendant states as follows.

## PRELIMINARY STATEMENT

This Motion is about Plaintiff's improperly filed complaint and its insistence on accusing Mr. Goldstein of participating in a racketeering conspiracy based on knowingly inadequate legal and factual grounds. In this Circuit, the "mere assertion" of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, is a serious and "inevitab[ly] stigmatizing" charge that compels courts to "strive to flush out frivolous RICO allegations." *Grant v. Turner*, No. 09-2381 (GEB), 2010 WL 4004719, at *3 (D.N.J. Oct. 12, 2010). Yet without sufficient evidence, Plaintiff has twice recklessly levied RICO accusations against Mr. Goldstein, a respected businessman and family man. Given the chance to withdraw the allegations in its initial complaint, dated May 6, 2025 (Doc. No. 1) (the "Original Complaint"), Plaintiff instead doubled down and filed an amended complaint (Doc. No. 60) (the "Amended Complaint" or "Am. Compl.") that merely reinforced the frivolous nature of its allegations against Mr. Goldstein.

As in the Original Complaint, the scant "allegations" in the Amended Complaint are simply descriptions of a small number of completely innocuous things which Mr. Goldstein said. These allegations lack evidentiary support for any alleged wrongdoing by Mr. Goldstein. In fact, the Amended Complaint makes only two direct "allegations" against Mr. Goldstein, both of which lack the appropriate foundation to sustain a RICO conspiracy claim.

First, the Amended Complaint speculates that Mr. Goldstein agreed to participate in the alleged conspiracy to defraud Spencer based simply on a legally appropriate message Mr. Goldstein sent to another user on the online message board, BankInvestor.com

1

("BankInvestor"), in which Mr. Goldstein merely *sought information* about a lawsuit being filed by certain BankInvestor members in New Jersey state court against Spencer to challenge Spencer's decision to close their accounts (the "Passaic County Litigation").[1]  Spencer contends that the Passaic County Litigation was commenced in bad faith as part of defendants' strategy to defraud and harm Spencer.  Yet even when viewed in the light most favorable to Plaintiff, Mr. Goldstein's BankInvestor message cannot possibly amount to wrongdoing or even support the inference of wrongdoing.  Mr. Goldstein's BankInvestor message was a mere expression of his lawful interest in the litigation which reflected a *possibility* that he *might* join or contribute funds to hire legal counsel.  This message does not establish an "agreement" to participate in any wrongdoing.  Ultimately, Mr. Goldstein never joined, agreed to join, or contributed funds to the Passaic County Litigation, as Plaintiff well knows.

The Amended Complaint notably relies on BankInvestor messages from other co-defendants to establish the alleged predicate acts underlying the RICO conspiracy.  Indeed, almost half of the 99-page Amended Complaint is spent laying out and, in some cases, quoting messages from other BankInvestor members who have no relation to Mr. Goldstein.  Plaintiff therefore has access to a significant volume of—likely all—communications from BankInvestor involving Spencer, including all messages from Mr. Goldstein involving Spencer.  Given Plaintiff's already substantial access to BankInvestor messages and the importance of those communications to the claims in the Amended Complaint, the lack of any substantive BankInvestor messages about Mr. Goldstein and Spencer also demonstrates that Plaintiff's factual contentions lack the required evidentiary support to comply with Rule 11.

---

[1] *Vasta v. Spencer Sav. Bank, SLA et al.,* No. C-108-21 (N.J. Super. Ct. Ch. Div (Nov. 10, 2021)).

Second, the Amended Complaint alleges that sometime in the last *30 to 40 years*, Mr. Goldstein used a "Mail Boxes Etc." address in Union, New Jersey to open a Spencer account and that at some unspecified point in time, a co-defendant also used a Mail Boxes Etc. store to open an account at Spencer. The Amended Complaint also alleges that Mr. Goldstein used a Mail Boxes Etc. address to open "accounts" at unnamed banks in Massachusetts. The allegations concerning the Massachusetts address are irrelevant, and at best, the allegations concerning the New Jersey address reflect a mere coincidence that two people at some point in time might have used the same nation-wide post office box provider. These allegations do not further an allegation of a RICO conspiracy or even suggest anything indicative of a RICO conspiracy.

Because there is no good faith legal or factual basis to sustain a RICO conspiracy charge against Mr. Goldstein, and Plaintiff *knew* that Mr. Goldstein did not join the Passaic County Litigation that Plaintiff references in a strained attempt to justify the RICO conspiracy allegations against Mr. Goldstein, it is clear that the Amended Complaint against Mr. Goldstein was filed for an improper purpose and relies on frivolous arguments, in violation of Rule 11(b). Accordingly, on August 4, 2025, the undersigned served Plaintiff with a *second* notice of Mr. Goldstein's intent to move for sanctions under Fed. R. Civ. P. 11 if Plaintiff did not withdraw or dismiss the Amended Complaint with prejudice within 21 days. *See Email from K. Atta-Krah to F. Scaduto and J. Froehlich dated August 4, 2025*, attached as **Exhibit A** to Defendant's Counsel's Certification.[2]

Plaintiff's Counsel did not withdraw the Amended Complaint within the 21-day period. Therefore, in accordance with Rule 11(c)(2), Mr. Goldstein now moves this Court to impose sanctions, including all reasonable expenses, costs, and attorneys' fees incurred in moving to oppose the Original Complaint, the Amended Complaint, and in filing this Motion, as well as any

---

[2]    All Exhibits are attached to the Certification of Jessica Greer Griffith ("Griffith Certification").

other relief the Court deems just and proper, including dismissal with prejudice of the claims against Mr. Goldstein.

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 6, 2025 by filing the Original Complaint, but there are nearly twenty years of relevant and contentious litigation history between Spencer and co-defendant Lawrence Seidman ("Seidman") underlying this dispute.[3]  Nowhere in this twenty-year litigation history has Mr. Goldstein ever been referenced, to the knowledge of the undersigned.  In this latest round of litigation related to the Spencer-Seidman dispute, Plaintiff's 96-page, two-count Original Complaint alleged in Count I that certain named individual defendants (*not* including Mr. Goldstein) committed substantive RICO violations under 18 U.S.C. § 1962(c).  Count II charged all defendants, including Mr. Goldstein ("Defendants"), with conspiracy to violate RICO under 18 U.S.C. § 1962(d).

The undersigned were engaged on or about May 29, 2025, and spoke twice with Plaintiff's Counsel on June 6, 2025 and June 24, 2025 in an attempt to resolve this matter without the need for motion practice.  The discussions failed.  On June 27, 2025, the undersigned emailed Plaintiff's Counsel to advise of Mr. Goldstein's intent to move for sanctions under Fed. R. Civ. P. 11 based on the Original Complaint's inadequate factual and legal bases for RICO conspiracy claims against

---

[3]    Fed. R. Evid. § 201 and N.J.R.E. 201 permit courts, upon a party's request, to take judicial notice of adjudicative facts such as "records of the court in which the action is pending and of any other court of this state or federal court sitting for this state" (N.J.R.E. 201(b)) or facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b)(2).  Accordingly, Mr. Goldstein respectfully requests that this Court take judicial notice of the extensive litigation history between Spencer and Defendant Seidman, including as explained in *Seidman v. Spencer Sav. Bank, S.L.A. et al.*, No. PAS-C-53-15 (N.J. Sup. Ct. Ch. Div (July 28, 2015) and *Seidman v. Spencer Sav.*, Nos. A-20390-17T3, A-4739-17T4 (App. Div. Oct. 3, 2019).

Mr. Goldstein.  *See Email from T. Harrison to F. Scaduto dated June 27, 2025, and response from F. Scaduto dated June 30, 2025*, attached as **Exhibit B**.

On June 30, 2025, in accordance with the briefing schedule agreed in this matter before the undersigned were engaged, Mr. Goldstein moved to dismiss the Original Complaint for failure to state a claim.  *See* Doc. No. 47-10.  On July 16, 2025, Mr. Goldstein served Plaintiff's Counsel with notice of its motion for sanctions under Rule 11 and supporting documents (the "First Rule 11 Letter").  *See Email from K. Atta-Krah to F. Scaduto and J. Froehlich dated July 16*, 2025, attached as **Exhibit C.**  The First Rule 11 Letter provided Plaintiff and its Counsel 21 days to withdraw the Original Complaint with prejudice, and informed Plaintiff of the grounds in support of the motion for sanctions.

On July 16, Plaintiff's Counsel responded by email that they would respond to the First Rule 11 Letter after filing their Amended Complaint due on July 21, 2025.  *See Email from F. Scaduto dated July 16, 2025*, attached as **Exhibit D**.  On July 21, 2025, Plaintiff filed its Amended Complaint and emailed a letter responding to the First Rule 11 Letter.  *See Email and Letter Response from F. Scaduto dated July 21, 2025* (the "Response"), attached as **Exhibit E**.  In the Response, Plaintiff refused to withdraw or dismiss the allegations against Mr. Goldstein, who it deemed a "source of relevant evidence."  Plaintiff alleged that Mr. Goldstein was a properly named defendant because:

- Mr. Goldstein allegedly "agreed" to "violate one of the substantive provisions of § 1962" because he (i) joined the BankInvestor online investment forum, which Plaintiff alleges is a RICO Enterprise, and (ii) "agreed to help fund the New Jersey litigation against Spencer."[4]  *See* Response at 1-2; and

- Mr. Goldstein used mailbox service provider, Mail Boxes Etc., to open an account at Spencer.  A co-defendant, John H. Merey ("Mr. Merey"), at some point in time,

---

[4]   The terms "Passaic County Litigation" and  "New Jersey Litigation" refer to *Vasta v. Spencer Sav. Bank, SLA et al.,* No. C-108-21 (N.J. Super. Ct. Ch. Div (Nov. 10, 2021)).

allegedly also used this same service provider to open an account at Spencer. Further, Mr. Goldstein allegedly used Mail Boxes Etc. to open accounts at a Massachusetts bank.  *Id.* at 2.

Plaintiff's Response demanded that Mr. Goldstein reinitiate the Rule 11 safe harbor process and direct any subsequent sanctions concerns to the Amended Complaint.  *See* Response at 1.  As to the allegations against Mr. Goldstein in the Amended Complaint, other than introducing the "Mail Boxes" allegation, the Amended Complaint remained materially unchanged.

On August 4, 2025, Mr. Goldstein served Plaintiff's Counsel with a second sanctions letter informing Plaintiff of Mr. Goldstein's intent to move for Sanctions based on the Amended Complaint.  *See* **Exhibit A** (the "Second Rule 11 Letter").  The Second Rule 11 Letter included a draft version of this Memorandum of Law and Motion to Impose Sanctions and gave Plaintiff the opportunity to dismiss the Amended Complaint within 21 days.

On August 4, 2025, Mr. Goldstein filed his motion to dismiss the Amended Complaint and supporting documents.  *See* Doc. No. 71.  Plaintiff did not dismiss or withdraw the Amended Complaint within the 21-day period.  On August 26, 2025, Mr. Goldstein again notified Plaintiff of his intent to move for sanctions now that the safe harbor period had expired.  *See Email from K. Atta-Krah to F. Scaduto and J. Froehlich dated August 26, 2025*, attached as **Exhibit J.**  Plaintiff did not respond.  Accordingly, Mr. Goldstein respectfully now moves for appropriate sanctions against Plaintiff.

## ARGUMENT

### I.    Legal Standard

Rule 11 imposes "an affirmative duty" on any party who presents "a pleading, motion, or other paper" to conduct "a reasonable inquiry into the facts and the law before filing[.]"  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).

"[T]he applicable standard [for determining counsel's conduct] is one of reasonableness under the circumstances." *Id.* Reasonableness for purposes of Rule 11 is "objective." *Id.* "The **reasonableness** of counsel's conduct depends on a number of factors, including, the amount of time available to conduct the factual and legal investigation; the necessity for reliance on a client for the underlying factual information; the plausibility of the legal position advocated" and "the complexity of the legal and factual issues implicated." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 207 (3d Cir. 2019). Not all factors will always be relevant. Courts need not "work mechanically" through these factors but should "consider the reasonableness of the inquiry under all the material circumstances." *In re Taylor*, 655 F.3d 274, 284 (3d Cir. 2011).

To comply with these standards, an attorney "must conduct a reasonable investigation of the facts and a normally competent level of legal research" to support their contentions. *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994); *see also In re Taylor*, 655 F.3d at 284 (same; affirming sanctions against attorney whose "behavior was unreasonable, both as a matter of her general practice and in ways specific to this case").

Rule 11 obligates counsel to "look before leaping" in order to "discourage the filing of frivolous, unsupported, or unreasonable claims." *Leuallen v. Borough of Paulsboro*, No. 99-4353 (JBS), 180 F. Supp. 2d 615, 618 (D.N.J. Jan. 10, 2002). This caution matters even more when asserting a RICO claim, given the significant and obvious reputational harm to defendants that attaches from the "mere assertion of a Rico claim." *See Grant*, 2010 WL 4004719, at *3. Expectedly, courts are "always . . . on the lookout" for dressed up RICO cases. *Id.*

The obligations of Rule 11 extend beyond the time the papers are filed. The attorney's obligations "**are not measured solely as of the time they are filed with or submitted to the** court, but include reaffirming to the court and **advocating positions contained in those pleadings**

**and motions after learning that they cease to have any merit.**" *See* Fed. R. Civ. P. 11, Advisory Committee's Note to 1993 Amendment (emphasis added); *see also Bygott v. Leaseway Transp. Corp.*, No. 84-2229, 637 F. Supp. 1433, 1439 (E.D. Pa. June 10, 1986) (generally, "attorneys' fees may be awarded where . . .the party continues to litigate after the claim or defense clearly became frivolous, unreasonable, or groundless."); *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 210 (4th Cir. 1988) (affirming sanctions ruling where "plaintiff's attorneys' continued reliance on their original investigation of the claims was unreasonable in light of . . . new information, and [counsel's] continued, dogged pursuit of the then baseless claims was in violation of Rule 11.").

If Rule 11 is violated, Rule 11(c)(4) permits a court to impose sanctions "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11. The sanction may include an award of "attorneys' fees and other expenses directly resulting from the violation" as well as "nonmonetary directives." Fed. R. Civ. P. 11(c)(4); *Scott v. Vantage Corp.*, 64 F.4th 462 (3d Cir. 2023) (available sanctions "run the gamut"); *Est. of Hennis v. Balicki*, No. CV 16-3858 (JBS-KMW), 2018 WL 1558142, at \*15 (D.N.J. Mar. 29, 2018) (sanctioning attorney for failure to exercise reasonable diligence and confirm that factual contentions in papers submitted to the court had or would likely have evidentiary support).

## II. Rule 11 Sanctions Are Warranted Because The Amended Complaint Against Mr. Goldstein Still Lacks Any Evidentiary Support

### A. The Amended Complaint Lacks Legal and Evidentiary Support

Plaintiff's Amended Complaint violates Rule 11(b)'s requirement that a Complaint have a sufficient basis in law and fact. Fed. R. Civ. P. 11(b). Plaintiff should be sanctioned for persisting with the frivolous, unsupported, and stigmatizing allegation that Mr. Goldstein is part of a racketeering conspiracy when there is no evidence at all that he has ever joined a RICO conspiracy *or that he has done anything wrong at all*. *See Grant*, 2010 WL 4004719, at \*3 (cautioning that

the "mere association of a RICO claim" has such a "stigmatizing effect" on defendants that courts "strive to flush out frivolous RICO allegations" and "must always be on the lookout" for embellished allegations asserting RICO claims).

Here, Plaintiff embellishes Mr. Goldstein's membership in the BankInvestor online investment club and turns it into a sordid "affiliat[ion] with . . . a clandestine civil RICO Enterprise" (*see* Response at 3), based on Mr. Goldstein's single, innocuous, and lawful BankInvestor message with co-defendant Robert Sepersky ("Mr. Sepersky"), as well as the coincidence that Mr. Goldstein and Mr. Merey allegedly once used the same national mail box service provider. Am. Compl. ¶ 96; Response, at 2-3.

These allegations do not have a sufficient basis in fact or law. Notably, Plaintiff has failed to conduct "a reasonable inquiry into the facts and the law before filing" the Amended Complaint. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). Reasonable inquiry would have shown that Mr. Goldstein's accounts were opened *long before* 1997, which, according to the Amended Complaint, is the year that Spencer apparently implemented its membership policy. *See* Am. Compl. ¶ 47. This is also before BankInvestor was created, in or around 1998 (*see* Am. Compl. ¶ 62), and years before Mr. Goldstein became a BankInvestor member. These facts shatter Plaintiff's position, further expose the flaws in their logic, and illustrate that Spencer has no reasonable factual basis to contend that Mr. Goldstein conspired as part of BankInvestor to open accounts to defraud Spencer in contravention of a bank policy that did not even exist.

Furthermore, Plaintiff's contention that its claims against Mr. Goldstein are justified because Mr. Goldstein "agreed" to "join the BankInvestor Enterprise" is conclusory as to the existence of a RICO enterprise and misstates the law on liability for RICO conspiracy. *See*

Response, at 1-2.  "[L]iability under section 1962(d) is met by 1) knowledge of the corrupt enterprise's activities *and* 2) agreement to facilitate those activities.'" *Smith v. Berg*, 247 F.3d 532, 535 (3d Cir. 2001) (affirming district court) (emphasis added).  Both elements are lacking in the Amended Complaint.  Further, a RICO conspiracy claim fails absent "common purpose" among the co-conspirators.  *Id.* at 537.  Plaintiff, citing *Smith*, contends in conclusory fashion that Mr. Goldstein "agreed to participate in and facilitate the BankInvestor Enterprise's common purpose of defrauding Spencer[.]"  *See* Response at 2.  But *Smith* establishes that "common purpose" requires more than mere conclusory allegations of the sort deployed by Plaintiff.  *See, e.g.*, *Smith*, 247 F.3d at 537 (finding title insurance companies and individual co-defendant shared a common purpose to mislead home buyers where title insurance companies allowed individual co-defendant to step into companies' shoes and "assume many of their normal functions" during settlements and negotiations with home buyers, and where companies and individual co-defendant, took steps to encourage home buyers to purchase homes they could not afford).

Similarly, the contention that Mr. Goldstein "agreed to help fund" the Passaic County Litigation is not only incorrect, but also lacks sufficient basis in law or fact to sustain a RICO conspiracy claim.  *See* Response at 2; *see also* Am. Compl. ¶¶ 230-31 (alleging that "[i]n October and December 2021, Defendants Mr. Goldstein and Sepersky discussed Defendant Mr. Goldstein joining or funding the litigation against Spencer.").[5]  Plaintiff stresses that the "allegations against [Mr. Goldstein] include his agreement to join the [Passaic County] litigation, which is all controlling law requires for § 1962 liability."  Response at 2.  Not so.  First, Plaintiff's Response appears to manufacture a claim not contained in the Amended Complaint.  *Compare* Response at

---

[5]    The "litigation" apparently "discussed" was *Vasta v. Spencer Sav. Bank, SLA et al.,* No. C-108-21 (N.J. Super. Ct. Ch. Div (Nov. 10, 2021)).

2 (stating that the allegations against Mr. Goldstein include his agreement to *join* the litigation) with *Am. Compl.* ¶ 231 (alleging only that Mr. Goldstein agreed to "contribute to the Spencer legal fund"). The Amended Complaint does not allege any agreement to join the litigation. For avoidance of doubt, Mr. Goldstein did not agree to join, and did not in fact join, the Passaic County Litigation, nor did he ever fund the litigation.

Plaintiff also embellishes Mr. Goldstein's BankInvestor message to manufacture the allegation that he agreed to contribute to the legal fund. Plaintiff quotes that Mr. Goldstein stated he "would 'contribute to the Spencer legal fund'" (Am. Compl. ¶ 231) and deems this language evidence of an "agreement to contribute to the litigation." Response at 2. ***But this is a deliberate misrepresentation by Plaintiff.*** Mr. Goldstein actually said he would "*like to* contribute to the Spencer legal fund" (emphasis added). He did not agree or confirm that he *would* contribute; and, of course, he did *not* ultimately contribute to the litigation. Plaintiff's purposefully misleading edit and false representation alone deserves sanction.

Plaintiff deliberately misrepresents Mr. Goldstein's statements to this Court because Plaintiff knows that its allegations are woefully insufficient – thus the desperate need for such deliberate misrepresentations. Even if Mr. Goldstein had agreed to contribute to or join the fund (which he did not), a single message discussing the possibility of retaining legal counsel for a lawful purpose is a patently inadequate basis on which to publicly accuse a respected businessman of racketeering conspiracy. Plaintiff well knows that this type of public accusation would seriously affect Mr. Goldstein's reputation and standing in the business community and clearly should never have been made.

With respect to what Mr. Goldstein and Mr. Sepersky allegedly "discussed" in their message on "December 2021," the Amended Complaint alleges that "[i]n a December 24, 2021,

BankInvestor post, Defendant Sepersky told Defendant Mr. Goldstein that Defendant Seidman 'joined the case for strategic reasons (preventing the bank from trying to move the case to Federal courts).'" *Id.* ¶ 240. Even accepted as true, this allegation does not come close to approaching any description of misconduct by Mr. Goldstein.

There are no other "allegations" against Mr. Goldstein sufficient to support a conspiracy claim or any allegations that Mr. Goldstein knew of or in any way supported the alleged underlying RICO scheme. Indeed, although Plaintiff alleges generally that Defendants committed "at least fifty-four federal criminal violations defrauding Spencer" (Am. Compl. ¶ 8), Plaintiff fails to identify a single violation—or even a single improper act—by Mr. Goldstein that would indicate any level of knowledge, involvement, or culpability whatsoever.

The so-called "federal criminal violations" Plaintiff decries all appear to be based on BankInvestor messages. Plaintiff devotes *almost half* of its Amended Complaint—44 of 99 pages—to detailing the alleged "participation", "leadership", and predicate acts of other named Defendants, based on these BankInvestor messages. *See* Am. Compl. at 48-94. Yet nowhere in those pages is there any indication or allegation that <u>Mr. Goldstein</u> did anything wrong. Plaintiff quotes messages sent by other Defendants on BankInvestor, indicating the comprehensive level of access Plaintiff has gained to those communications to support its factual contentions against those Defendants.

Plaintiff also has substantial access to BankInvestor messages about Spencer—**including all relevant messages from Mr. Goldstein about Spencer**—and therefore Plaintiff knows the nature and extent (or, more accurately, the lack thereof) of Mr. Goldstein's communications regarding Spencer. Plaintiff knows that the factual reference to Mr. Goldstein—that he "discussed . . . joining or funding the litigation against Spencer," is woefully insufficient to support a RICO

conspiracy claim.  *See* Am. Compl. ¶ 230.  In an attempt to cure this flaw, Plaintiff contends that the Passaic County Litigation which Mr. Goldstein "discussed" was brought in "bad faith," that BankInvestor members "pool[ed] funds" to support the litigation, and that Spencer has been injured by having to defend the allegations.  *Id.* ¶¶ 11, 13, 272, 285.  Even if true, these allegations have nothing to do with Mr. Goldstein and Plaintiff's contentions are deficient for several reasons.

First, and most egregiously, Plaintiff *has always known* that Mr. Goldstein never joined (or agreed to join) the Passaic County Litigation and never contributed any money to that effort.[6] Plaintiff is a defendant in that litigation and has admitted knowing that Mr. Goldstein was not involved at all in that state court litigation.[7]  Plaintiff is "[i]gnor[ing] clear warning signs as to the accuracy" of its information, which is grounds for sanctions in this District.  *In re Taylor*, 655 F.3d 274, 285 (3d Cir. 2011) (sanctioning attorney for failure to make "even the most minimal of inquiries" as attorney would then have determined that the course of action was "inappropriate under the circumstances.").  In *Taylor*, the Taylors submitted documentation to opposing counsel, Doyle, showing that they had made partial payments at issue and pointing to the inaccuracy of other information Doyle had received.  The Third Circuit ruled that while Doyle "was not obliged to accept the Taylors' claims at face value" those claims 'indisputably put her on notice' of the potential issues."[8]  *Id.*  "At that point, any reasonable attorney would have sought clarification and

---

[6]  An attorney's obligations under Rule 11 extend beyond the time the papers are filed and require retreat from advocating positions "after learning that they cease to have any merit."  *See* Fed. R. Civ. P. 11, Advisory Committee's Note to 1993 Amendment (emphasis added);  *see also Bygott v. Leaseway Transp. Corp.*, No. 84-2229, 637 F. Supp. 1433, 1439 (E.D. Pa. June 10, 1986) (generally, "attorneys' fees may be awarded where . . .the party continues to litigate after the claim or defense clearly became frivolous, unreasonable, or groundless.").

[7]  Plaintiff asserts that its counsel in this matter "were not involved in the [other Spencer] cases."  Response at 3.  This does not excuse Plaintiff from conducting reasonable inquiry of all facts pertinent to this case.  *Bus. Guides, Inc. Inc.*, 498 U.S. at 551.

[8]  Plaintiff's Counsel contend that they had "no other basis to know" whether Mr. Goldstein contributed to the Passaic County Litigation beyond the informal attorney representations

further documentation . . . in order to correct any prior inadvertent misstatements to the court and to avoid any further errors." *Id.* Instead, attorney Doyle doubled down and was sanctioned for violating Rule 11. *Id.* at 288.

As in *Taylor*, Plaintiff here has "ignored clear warning signs" about the basis of the Amended Complaint against Mr. Goldstein and, even after being put on notice, decided to double down on their recklessness and make deliberate and material misrepresentations in the Amended Complaint. Plaintiff knows that Mr. Goldstein did not fund or join the litigation in which Spencer was a defendant. Yet Plaintiff deliberately misled this Court and the public by making a misleading reference to a single message that Plaintiff *knew* was inaccurate and by falsely insinuating Mr. Goldstein's participation in racketeering conduct.

Next, Plaintiff identifies no judicial finding that the Passaic County Litigation that Mr. Goldstein "discussed"—which was filed almost four years ago—was filed in bad faith. If Plaintiff had any real indication that the Passaic County Litigation had been brought improperly, it would presumably have moved for sanctions in that case. Either way, this is not the appropriate forum in which Plaintiff should litigate the alleged impropriety of a state court case that is irrelevant to Mr. Goldstein. That said, a brief response is warranted since Plaintiff chose to center its baseless claims against Mr. Goldstein around that case. Notably, Plaintiff provides no evidence to support its argument that the Passaic County Litigation was in any way improper, and in fact, the history of the case suggests otherwise. On December 16, 2021, a few weeks after the case was filed, the state court, following "oral argument and for good cause shown" granted plaintiffs in that action ***a preliminary injunction against Spencer***, requiring the bank to restore the accounts of the

---

provided by the undersigned and Mr. Goldstein's former counsel. Response at 2. However, like the attorney in *Taylor*, they were "on notice of potential issues." *Taylor*, 655 F.3d at 285.

plaintiffs/accountholders to their status quo.  *See* Order With Restraints (Dec. 16, 2021) at 1, *Vasta v. Spencer Sav. Bank*, *SLA et al.*, No. PAS-C-108-21 (N.J. Super. Ct. Ch. Div. (Dec. 16, 2021)), attached as **Exhibit F**.  The state court, then, did not deem the case to have been brought in bad faith.

Likewise, Plaintiff's insinuation that pooling funds to support the Passaic County Litigation was wrongful and that Mr. Goldstein contributed funds is also completely unfounded.  To reiterate, Mr. Goldstein did *not* contribute any funds to the litigation, as Plaintiff well knows; and even if he had, Plaintiff identified no authority showing that pooling funds to support properly-filed litigation is a RICO predicate act.

Finally, the allegation concerning the use of Mail Boxes Etc. is also not sufficiently supported by fact or law to sustain a RICO conspiracy claim.  The allegation manages to be both misleading and irrelevant.  Mail Boxes Etc. apparently has over 1,600 retail locations in 45 countries.[9]  Plaintiff has identified nothing more in its pleading than a mere coincidence that Mr. Goldstein and a co-defendant may both have had mail boxes there.  Plaintiff alleges—with no evidence—that Mr. Merey and Mr. Goldstein "coordinat[ed]" to use the same "Mail Boxes Etc. address" to open Spencer accounts and implies that the coordination happened through BankInvestor.  *See* Am. Compl. ¶ 99.  But as noted, Mr. Goldstein's accounts were opened long before BankInvestor was even created in 1998 and approximately a decade before Mr. Goldstein joined BankInvestor.  Thus, it is impossible for Mr. Goldstein to have coordinated with Mr. Merey on BankInvestor to open his accounts, as Plaintiff insinuates.  To be clear, Mr. Goldstein denies coordinating in any improper way to open his accounts at Spencer.

---

[9]    *See* Website for Mail Boxes Etc., https://www.mbeglobal.com/ (last accessed Aug. 26, 2025).

In the Third Circuit, courts impose sanctions because they "must hold responsible the attorneys who have certified to the court that the representations they are making are well-grounded in law and fact." *In re Taylor*, 655 F.3d at 286. Here, given the foregoing, the Amended Complaint fails this simple test and the Court should hold Plaintiff responsible. Plaintiff should therefore be sanctioned for maintaining its baseless allegations against Mr. Goldstein.

**B.      The Amended Complaint is Brought for an Improper Purpose—to Harass, Intimidate, and Increase the Cost of Litigation**

Rule 11 permits the Court to impose sanctions for pleadings "presented for any improper purpose, such as to harass . . .or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

With no factual basis to sustain RICO conspiracy claims against Mr. Goldstein, persisting with the Amended Complaint under these circumstances violates Rule 11. The Amended Complaint is brought to harass and needlessly increase costs of litigation for bystanders like Mr. Goldstein who, because of their BankInvestor membership, have been unfairly and unreasonably dragged into Plaintiff's prolonged fight with Seidman.

Plaintiff's strategy in this case appears to be to use its vast resources and the legal system to intimidate innocent BankInvestor members like Mr. Goldstein into providing communications from or about other BankInvestor members. Indeed, Plaintiff admits that it really sees Mr. Goldstein simply as a "source of relevant evidence." Response at 3. Plaintiff boasts it is one of the "largest mutual savings associations in the nation" (Am. Compl. ¶ 9), capable of spending "million[s]" of dollars in "legal fees" on what it termed the "distraction" of "battling Seidman." *See Seidman v. Spencer Sav. Bank et al.*, Nos. A-2039-17T3, A-4739-17T4 (App. Div. Oct. 3, 2019) ("Appellate Opinion"), attached as **Exhibit G**. Spending millions of dollars on legal fees may be a mere "distraction" for Spencer, but not so for an individual defendant like Mr. Goldstein.

The "prime goal of Rule 11 sanctions" is the "deterrence of repetition of improper conduct." *In re Taylor*, 655 F.3d at 288; Fed. R. Civ. P. 11(c)(4). Sanctions are thus even more appropriate where a party has repeated its misconduct. The bank's "fierce" and still-ongoing "marathon litigation" against Seidman has earned the bank the admonition of the courts and resulted in a partial award of counsel fees to Seidman arising from the bank's "pretextual" and "bad faith" conduct in closing accounts for Seidman and his relatives. *See* Appellate Opinion at 23, 39-41 (affirming district court's award of counsel fees for Spencer's bad-faith conduct); *see also id.* at 35 (trial court's factual findings that Spencer's Board members acted in bad faith was "unassailable").

Here, Plaintiff's case against Mr. Goldstein appears to be a continuation of the kind of cynical and unreasonable conduct the bank has exhibited before. *See, e.g., Appellate Opinion* at 15-16 (noting that Spencer closed accounts belonging to Seidman's wife, daughter, and son-law to deprive him of his membership at the bank). The Appellate Opinion reveals that Spencer has tried to intimidate others, such as Seidman's family members, to get what it wants: by bringing bogus RICO conspiracy allegations against Mr. Goldstein, the bank turns its intimidation tactics on Mr. Goldstein, an innocent bystander. The goal seems to be to impose litigation costs on peripheral figures like Mr. Goldstein who were BankInvestor members, and thereby force them into using their membership to provide Plaintiff with a back route into the activities and messages of BankInvestor members. This is harassment and an improper purpose for a complaint that violates Rule 11. The Court should not allow such conduct to stand.

## CONCLUSION

For the above reasons, Plaintiff's allegations against Mr. Goldstein are knowingly frivolous on their face. Moreover, Plaintiff *has always known* that these allegations were frivolous and inaccurate. Plaintiff made these incorrect and insufficient allegations while knowing that a

sensational RICO conspiracy claim would be harmful to Mr. Goldstein's reputation. Plaintiff proceeded anyway in the hopes that such a scandalous charge would intimidate Mr. Goldstein and force him into doing Plaintiff's improper bidding. Thus, Mr. Goldstein respectfully moves for sanctions, including dismissal of Plaintiff's Amended Complaint with prejudice and an award of Mr. Goldstein's attorneys' fees, expenses, and costs relating to this litigation, as well as any other relief that the Court deems just. Mr. Goldstein requests leave to submit a Certification of Counsel of Legal Fees and Expenses incurred in connection with this action.

Dated:  New York, New York.          Respectfully submitted,
        August 26, 2025

                                      By:  */s/ Jessica Greer Griffith*
                                          Jessica Greer Griffith (NJ Bar No. 126432014)
                                          Todd Harrison (admitted *pro hac vice*)
                                          Kenton Atta-Krah (admitted *pro hac vice*)
                                          MCDERMOTT WILL & SCHULTE LLP
                                          One Vanderbilt Avenue
                                          New York, New York  10017-3852
                                          Telephone: +1 212 547 5400
                                          Facsimile:  +1 212 547 5444
                                          ggriffith@mwe.com
                                          tharrison@mwe.com
                                          katta-krah@mwe.com

                                          *Attorneys for Defendant Mark A. Goldstein*