# EXHIBIT A

| | |
|---|---|
| **From:** | Atta-Krah, Kenton |
| **To:** | Scaduto, Frank; Joseph Froehlich |
| **Cc:** | Harrison, Todd; Griffith, Greer; Obermeier, Stephen; Hauser, Corey; Wyant, Isaac |
| **Subject:** | RE: Spencer Savings Bank, SLA v. BNK Invest, Inc., 25-3877 (DNJ) |
| **Date:** | Monday, August 4, 2025 12:58:20 PM |
| **Attachments:** | image001.png |
| | 2025.08.04 - Goldstein Cover Letter re Motion for Rule 11 Sanctions for Amended Complaint [Spencer v. BNK Invest].pdf |
| | 2025.08.04 - DRAFT - Goldstein Notice of Motion for Rule 11 Sanctions for Am. Compl. [Spencer v. BNK Invest].pdf |
| | 2025.08.04 DRAFT - Goldstein Memo of Law iso Motion for Rule 11 Sanctions for Am. Compl. [Spencer v. BNK Invest].pdf |
| | 2025.08.04 - DRAFT - Goldstein Proposed Order Granting Motion for Rule 11 Sanctions re Am. Compl. [Spencer v. BNK].pdf |

Good afternoon, Counsel,

In accordance with Fed. R. Civ. P. 11(c)(2), and further to your letter dated July 21, 2025, and plaintiff's amended complaint (Doc. No. 60), please see attached.

Thank you,

-Kenton

---

**From:** Scaduto, Frank <FScaduto@wiley.law>
**Sent:** Monday, July 21, 2025 4:35 PM
**To:** Atta-Krah, Kenton <katta-krah@mwe.com>; Joseph Froehlich <joseph.froehlich@troutman.com>
**Cc:** Harrison, Todd <Tdharrison@mwe.com>; Griffith, Greer <Ggriffith@mwe.com>; Obermeier, Stephen <SObermeier@wiley.law>; Hauser, Corey <CHauser@wiley.law>; Wyant, Isaac <IWyant@wiley.law>
**Subject:** RE: Spencer Savings Bank, SLA v. BNK Invest, Inc., 25-3877 (DNJ)

**[ External Email ]**
Counsel:

Please see the attached.

 | Frank Scaduto
Attorney at Law
fscaduto@wiley.law

Wiley Rein LLP • 2050 M Street NW • Washington, DC 20036
o:  202.719.3479
Download V-Card | wiley.law

---

**From:** Scaduto, Frank
**Sent:** Wednesday, July 16, 2025 7:10 PM
**To:** 'Atta-Krah, Kenton' <katta-krah@mwe.com>; Joseph Froehlich <joseph.froehlich@troutman.com>
**Cc:** Harrison, Todd <Tdharrison@mwe.com>; Griffith, Greer <Ggriffith@mwe.com>; Obermeier,

Stephen <[SObermeier@wiley.law](mailto:SObermeier@wiley.law)>; Hauser, Corey <[CHauser@wiley.law](mailto:CHauser@wiley.law)>; Wyant, Isaac <[IWyant@wiley.law](mailto:IWyant@wiley.law)>

**Subject:** RE: Spencer Savings Bank, SLA v. BNK Invest, Inc., 25-3877 (DNJ)

Counsel:

We consent to service by email. Please be aware that we intend to amend the complaint as of right on Monday, July 21, and will provide a response to your letter thereafter.

Best,

Frank

 Frank Scaduto
Attorney at Law
[fscaduto@wiley.law](mailto:fscaduto@wiley.law)

Wiley Rein LLP • 2050 M Street NW • Washington, DC 20036
o:  202.719.3479
[Download V-Card](#) | [wiley.law](#)

**From:** Atta-Krah, Kenton <[katta-krah@mwe.com](mailto:katta-krah@mwe.com)>
**Sent:** Wednesday, July 16, 2025 11:16 AM
**To:** Scaduto, Frank <[FScaduto@wiley.law](mailto:FScaduto@wiley.law)>; Joseph Froehlich <[joseph.froehlich@troutman.com](mailto:joseph.froehlich@troutman.com)>
**Cc:** Harrison, Todd <[Tdharrison@mwe.com](mailto:Tdharrison@mwe.com)>; Griffith, Greer <[Ggriffith@mwe.com](mailto:Ggriffith@mwe.com)>
**Subject:** Spencer Savings Bank, SLA v. BNK Invest, Inc., 25-3877 (DNJ)

| **External Email** |
| --- |

Good morning, Counsel,

In accordance with Fed. R. Civ. P. 11(c)(2), further to our communications on June 6, June 24, and June 27, and further to our Motion to Dismiss filed on June 30, 2025, please find enclosed a draft of Defendant Mark A. Goldstein's motion for sanctions. Please be advised accordingly.

Pursuant to Local Rule 5.1 and Fed. R. Civ. P. 5(b), please advise whether you consent to service by e-mail.

Thank you,

Kenton

KENTON ATTA-KRAH
Associate
**McDermott Will & Emery LLP**   One Vanderbilt Avenue, New York, NY 10017-3852
**Tel** +1 212 547 5739     **Email** [kattakrah@mwe.com](mailto:kattakrah@mwe.com)
[Website](#) | [vCard](#) | [LinkedIn](#)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

CONFIDENTIALITY: This email and any attachments are confidential, except where the email states it can be disclosed, and it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender and delete this email and any attachments.



Todd Harrison
Attorney at Law
tdharrison@mwe.com
+1 212 547 5727

August 4, 2025

**VIA EMAIL**

Joseph N. Froehlich
Troutman Pepper Locke LLP
305 Church at N. Hills Street, Ste. 1200
Raleigh, NC 27609
joseph.froehlich@troutman.com

Frank Scaduto
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
FSCADUTO@WILEY.LAW

Re:     ***Spencer Savings Bank, S.L.A. v. BNK Invest, Inc. et al.*, No 25-cv-03877 (D.N.J. May 6, 2025)
        Motion for Sanctions Under Fed. R. Civ. P. 11,**

Counsel,

As you know, we represent defendant Mark A. Goldstein ("Mr. Goldstein") in the above-referenced matter. Pursuant to Federal Rule of Civil Procedure 11(c)(2), enclosed please find a draft of Mr. Goldstein's notice of motion for Rule 11 sanctions and memorandum of law in support (together, the "Rule 11 Motion") directed at plaintiff's Amended Complaint (Doc. No. 60).

Pursuant to Fed. R. Civ. P. 11(c)(2), Mr. Goldstein requests that you dismiss with prejudice the Amended Complaint against him within 21 days of this letter. If the Amended Complaint is not dismissed with prejudice by that date, Mr. Goldstein will file with the Court, in substantially the form enclosed, the Rule 11 Motion and proposed order, requesting the relief described therein.

Joseph N. Froehlich and Frank Scaduto
August 4, 2025
Page 2

Please let me know if you have any questions.

Sincerely,

Todd Harrison

cc:    Jessica Greer Griffith, NJ Bar No. 126432014, Ggriffith@mwe.com
        Kenton Atta-Krah, admitted *pro hac vice*, katta-krah@mwe.com


Enclosures

DRAFT - Notice of Motion for Rule 11 Sanctions
DRAFT - Memorandum of Law in Support of Motion for Rule 11 Sanctions
DRAFT - Proposed Order Granting Motion for Rule 11 Sanctions

**McDermott Will & Schulte**

DRAFT | CONFIDENTIAL
FOR SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SPENCER SAVINGS BANK, S.L.A.,

          Plaintiff,

    v.

BNK INVEST, INC., ROBERT SEPERSKY, JONATHAN GOLDMAN, RONALD RAGANELLA, ROBERT MITCHELL, WILLIAM R. DOSSENBACH, JORDAN FARKAS, HARVEY SCHAFFLER, LEVI C. PUREC, TIMOTHY J. KLACE, KENNETH METVINER, LAWRENCE SEIDMAN, BRAD D. BUTLER, RICHARD J. LASHLEY, JOHN H. MEREY, LEO M. GOLDNER, MARK A. GOLDSTEIN, MICHAEL D. ABNERI, BONNIE S. GRAYSON, and CHAYA M. EISENBACH,

          Defendants.

**<u>Civil Action</u>**

**Docket No. 2:25-cv-03877-MEF-JRA**

**Oral Argument Requested**

**NOTICE OF MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**

      **PLEASE TAKE NOTICE** that, on [DATE] or as soon thereafter as counsel may be heard, the undersigned attorneys for Mark. A. Goldstein ("Mr. Goldstein") in the above captioned matter will move before the United States District Court for the District of New Jersey, for an order granting Mr. Goldstein's Motion for Rule 11 Sanctions against plaintiff Spencer Savings Bank, S.L.A., and its counsel of record at Troutman Pepper Locke LLP and Wiley Rein LLP (the "Motion").

      **PLEASE TAKE FURTHER NOTICE** that, in support of this Motion, Mr. Goldstein shall rely on the attached memorandum of law in support of this Motion, his Motion to Dismiss Plaintiff's Amended Complaint dated August 4, 2025, and documents filed in support of his Motion to Dismiss (Doc. No. _).

DRAFT | CONFIDENTIAL
FOR SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

**PLEASE TAKE FURTHER NOTICE** that a proposed order is enclosed.

**PLEASE TAKE FURTHER NOTICE** that Mr. Goldstein hereby requests oral argument.

Dated:  New York, New York.
        August ___, 2025

Respectfully submitted,

By: _/s/ *DRAFT*_____
    Jessica Greer Griffith (NJ Bar No. 126432014)
    Todd Harrison (admitted *pro hac vice*)
    Kenton Atta-Krah (admitted *pro hac vice*)
    McDermott Will & Schulte LLP
    One Vanderbilt Avenue
    New York, New York  10017-3852
    Telephone: +1 212 547 5400
    Facsimile:  +1 212 547 5444
    ggriffith@mwe.com
    tharrison@mwe.com
    katta-krah@mwe.com

    *Attorneys for Defendant Mark A. Goldstein*

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPENCER SAVINGS BANK, S.L.A., <br><br> Plaintiff, <br><br> v. <br><br> BNK INVEST, INC., ROBERT SEPERSKY, JONATHAN GOLDMAN, RONALD RAGANELLA, ROBERT MITCHELL, WILLIAM R. DOSSENBACH, JORDAN FARKAS, HARVEY SCHAFFLER, LEVI C. PUREC, TIMOTHY J. KLACE, KENNETH METVINER, LAWRENCE SEIDMAN, BRAD D. BUTLER, RICHARD J. LASHLEY, JOHN H. MEREY, LEO M. GOLDNER, MARK A. GOLDSTEIN, MICHAEL D. ABNERI, BONNIE S. GRAYSON, and CHAYA M. EISENBACH, <br><br> Defendants. | **Civil Action** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **Docket No. 2:25-cv-03877-MEF-JRA** <br><br> **Return Date: [\*], 2025** |

---

**DEFENDANT MARK A. GOLDSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**

---

MCDERMOTT WILL & SCHULTE LLP
Jessica Greer Griffith (NJ Bar No. 126432014)
Todd Harrison (admitted *pro hac vice*)
Kenton Atta-Krah (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-3852
Tel: 212-547-5400
ggriffith@mwe.com
tdharrison@mwe.com
katta-krah@mwe.com

*Attorneys for Defendant Mark A. Goldstein*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT.................................................................................................1

PROCEDURAL HISTORY ...................................................................................................4

ARGUMENT ........................................................................................................................6

I.      Legal Standard .........................................................................................................6

II.     Rule 11 Sanctions Are Warranted Because The Amended Complaint
        Against Mr. Goldstein Still Lacks Any Evidentiary Support................................8

        A.      The Amended Complaint Lacks Legal and Evidentiary Support ...........8

        B.      The Amended Complaint is Brought for an Improper Purpose—to
                Harass, Intimidate, and Increase the Cost of Litigation........................16

CONCLUSION....................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
  498 U.S. 533 (1991).................................................................................6, 9, 13

*Bygott v. Leaseway Transp. Corp.*,
  No. 84-2229, 637 F. Supp. 1433 (E.D. Pa. June 10, 1986)................................7, 13

*Est. of Hennis v. Balicki*,
  No. CV 16-3858, 2018 WL 1558142 (D.N.J. Mar. 29, 2018)................................8

*Fahrenz v. Meadow Farm P'ship*,
  850 F.2d 207 (4th Cir. 1988) ..............................................................................7

*Grant v. Turner*,
  No. 09-2381 (GEB), 2010 WL 4004719 (D.N.J. Oct. 12, 2010)......................1, 7, 8

*Leuallen v. Borough of Paulsboro*,
  No. 99-4353 (JBS), 180 F. Supp. 2d 615 (D.N.J. Jan. 10, 2002) ...........................7

*Scott v. Vantage Corp.*,
  64 F.4th 462 (3d Cir. 2023) ..................................................................................8

*Seidman v. Spencer Sav. Bank et al.*,
  Nos. A-2039-17T3, A-4739-17T4 (App. Div. Oct. 3, 2019)............................4, 16

*Seidman v. Spencer Sav. Bank, S.L.A. et al.*,
  No. PAS-C-53-15 (N.J. Sup. Ct. Ch. Div (July 28, 2015))....................................4

*Simmerman v. Corino*,
  27 F.3d 58 (3d Cir. 1994).....................................................................................7

*Smith v. Berg*,
  247 F.3d 532 (3d Cir. 2001)..............................................................................9, 10

*In re Taylor*,
  655 F.3d 274 (3d Cir. 2011)....................................................................... *passim*

*Vasta v. Spencer Sav. Bank, SLA et al.*,
  No. C-108-21 (N.J. Super. Ct. Ch. Div (Nov. 10, 2021))...............................2, 5, 10

*Vasta v. Spencer Sav. Bank, SLA et al.*,
  No. PAS-C-1-21 (N.J. Super. Ct. Ch. Div. (Nov. 10, 2021)) ................................14

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
   935 F.3d 187 (3d Cir. 2019)...........................................................................7

**Statutes**

18 U.S.C. § 1961 ..........................................................................................1

18 U.S.C. § 1962 ......................................................................................5, 10

18 U.S.C. § 1962(c) ......................................................................................4

18 U.S.C. § 1962(d) ...................................................................................4, 9

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................................. *passim*

Fed. R. Civ. P. 11(b) ..................................................................................3, 8

Fed. R. Civ. P. 11(b)(1) ...............................................................................16

Fed. R. Civ. P. 11(c)(2) .................................................................................3

Fed. R. Civ. P. 11(c)(4) .............................................................................8, 17

Fed. R. Evid. § 201 ........................................................................................4

Fed. R. Evid. § 201(b)(2) ...............................................................................4

N.J.R.E. 201 ..................................................................................................4

N.J.R.E. 201(b) .............................................................................................4

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

Defendant Mark A. Goldstein ("Mr. Goldstein" or "Defendant") submits this Memorandum of Law in support of his motion for sanctions against Spencer Savings Bank, S.L.A. ("Spencer" or "Plaintiff") and its counsel ("Counsel") under rule 11 of the Federal Rules of Civil Procedure (the "Rules") and the Court's inherent powers (this "Motion"). In support, Defendant states as follows.

## PRELIMINARY STATEMENT

This Motion is about Plaintiff's improperly filed complaint and its insistence on accusing Mr. Goldstein of participating in a racketeering conspiracy based on knowingly inadequate legal and factual grounds. In this Circuit, the "mere assertion" of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, is a serious and "inevitab[ly] stigmatizing" charge that compels courts to "strive to flush out frivolous RICO allegations." *Grant v. Turner*, No. 09-2381 (GEB), 2010 WL 4004719, at *3 (D.N.J. Oct. 12, 2010) (emphasis added). Yet without sufficient evidence, Plaintiff and its Counsel have twice recklessly levied RICO accusations against Mr. Goldstein, a respected businessman and family man. Given the chance to withdraw the allegations in its initial complaint, dated May 6, 2025 (Doc. No. 1) (the "Original Complaint"), Plaintiff instead doubled down and filed an amended complaint (Doc. No. 60) (the "Amended Complaint" or "Am. Compl.") that merely reinforced the frivolous nature of its allegations against Mr. Goldstein.

As in the Original Complaint, the scant "allegations" in the Amended Complaint are simply descriptions of a small number of completely innocuous things which Mr. Goldstein said. These allegations lack evidentiary support for any alleged wrongdoing by Mr. Goldstein. In fact, the Amended Complaint makes only two direct "allegations" against Mr. Goldstein, both of which lack the appropriate foundation to sustain a RICO conspiracy claim.

First, the Amended Complaint speculates that Mr. Goldstein agreed to participate in the alleged conspiracy to defraud Spencer based simply on a legally appropriate message

1

Mr. Goldstein sent to another user on the online message board, BankInvestor.com ("BankInvestor"), in which Mr. Goldstein merely *sought information* about a lawsuit being filed by certain BankInvestor members in New Jersey state court against Spencer to challenge Spencer's decision to close their accounts (the "Passaic County Litigation").[1]  Spencer contends that the Passaic County Litigation was commenced in bad faith as part of defendants' strategy to defraud and harm Spencer.  Yet, even when viewed in the light most favorable to Plaintiff, Mr. Goldstein's BankInvestor message cannot possibly amount to wrongdoing or even support the inference of wrongdoing.  Mr. Goldstein's BankInvestor message was a mere expression of his lawful interest in the litigation which reflected a *possibility* that he *might* join or contribute funds to hire legal counsel.  This message does not establish an "agreement" to participate in any wrongdoing.  Ultimately, Mr. Goldstein never joined, agreed to join, or contributed funds to the Passaic County Litigation, as Plaintiff well knows.

The Amended Complaint notably relies on BankInvestor messages from other co-defendants to establish the alleged predicate acts underlying the RICO conspiracy.  Indeed, almost half of the 99-page Amended Complaint is spent laying out and, in some cases, quoting messages from other BankInvestor members who have no relation to Mr. Goldstein.  Plaintiff therefore has access to a significant volume of—likely all—communications from BankInvestor involving Spencer, including all messages from Mr. Goldstein involving Spencer.  Given Plaintiff's already substantial access to BankInvestor messages and the importance of those communications to the claims in the Amended Complaint, the lack of any substantive BankInvestor messages about Mr. Goldstein and Spencer also demonstrates that Plaintiff's factual contentions lack the required evidentiary support to comply with Rule 11.

---

[1] *Vasta v. Spencer Sav. Bank, SLA et al.,* No. C-108-21 (N.J. Super. Ct. Ch. Div (Nov. 10, 2021).

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

Second, the Amended Complaint alleges that sometime in the last *30 to 40 years*, Mr. Goldstein used a "Mail Boxes Etc." address in Union, New Jersey to open a Spencer account and that at some unspecified point in time, a co-defendant also used a Mail Boxes Etc. store to open an account at Spencer.  It also alleges that Mr. Goldstein used a Mail Boxes Etc. address to open "accounts" at unnamed banks in Massachusetts.  The allegations concerning the Massachusetts address are irrelevant.  At best, the allegations concerning the New Jersey address allege a mere coincidence that two people at some point in time might have used the same nation-wide post office box provider.  These allegations do not further an allegation of a RICO conspiracy or even suggest anything indicative of a RICO conspiracy.

Because there is no good faith legal or factual basis to sustain a RICO conspiracy charge against Mr. Goldstein, and Plaintiff and its Counsel *knew* that Mr. Goldstein did not join the Passaic County Litigation that Plaintiff references in a strained attempt to justify the RICO conspiracy allegations against Mr. Goldstein, it is clear that the Amended Complaint against Mr. Goldstein was filed for an improper purpose and relies on frivolous arguments, in violation of Rule 11(b).  Accordingly,  on [August __], 2025, the undersigned served Plaintiff with a *second* notice of Mr. Goldstein's intent to move for sanctions under Fed. R. Civ. P. 11 if Plaintiff did not withdraw or dismiss the Amended Complaint with prejudice within 21 days.  *See Email from* [*McDermott*] *to F. Scaduto dated [DATE]*, attached as **Exhibit [A]** to Counsel's Declaration[2]]

Plaintiff's Counsel did not withdraw the Amended Complaint within the 21-day period.  Therefore, in accordance with Rule 11(c)(2), Mr. Goldstein now moves this Court to impose sanctions, including all reasonable expenses, costs, and attorneys' fees incurred in moving to

---

[2]   All Exhibits are attached to the Declaration of Jessica Greer Griffith ("Griffith Declaration").  **[Declaration not included in this DRAFT.]**

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

oppose the Original Complaint, Amended Complaint, and in filing this Motion to Impose Sanctions, as well as any other relief the Court deems just and proper, including dismissal with prejudice of the claims against Mr. Goldstein.

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 6, 2025 by filing the Original Complaint, but there are nearly twenty years of relevant and contentious litigation history between Spencer and co-defendant Lawrence Seidman ("Seidman") underlying this dispute.[3] Nowhere in this twenty-year litigation history has Mr. Goldstein ever been referenced, to the knowledge of the undersigned. In this latest round of litigation related to the Spencer-Seidman dispute, Plaintiff's 96-page, two-count Original Complaint alleged in Count I that certain named individual defendants (*not* including Mr. Goldstein) committed substantive RICO violations under 18 U.S.C. § 1962(c). Count II charged all defendants, including Mr. Goldstein, with conspiracy to violate RICO under 18 U.S.C. § 1962(d).

The undersigned were engaged on or about May 29, 2025, and spoke twice with Plaintiff's Counsel on June 6, 2025 and June 24, 2025 in an attempt to resolve this matter without the need for motion practice. The discussions failed. On June 27, 2025, the undersigned emailed Plaintiff's Counsel to advise of Mr. Goldstein's intent to move for sanctions under Fed. R. Civ. P. 11 based on the Original Complaint's inadequate factual and legal bases for RICO conspiracy claims against

---

[3]    Fed. R. Evid. § 201 and N.J.R.E. 201 permit courts, upon a party's request, to take judicial notice of adjudicative facts such as "records of the court in which the action is pending and of any other court of this state or federal court sitting for this state" (N.J.R.E. 201(b)) or facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201(b)(2). Accordingly, Mr. Goldstein respectfully requests that this Court take judicial notice of the extensive litigation history between Spencer and Defendant Seidman, including as explained in *Seidman v. Spencer Sav. Bank, S.L.A. et al.*, No. PAS-C-53-15 (N.J. Sup. Ct. Ch. Div (July 28, 2015) and *Seidman v. Spencer Sav.*, No. A-2039017T3, A-4739-17T4 (App. Div. Oct. 3, 2019).

Mr. Goldstein.  *See Email from T. Harrison to F. Scaduto dated June 27, 2025, and response from F. Scaduto dated June 30, 2025,* **Exhibit [B]**.

On June 30, 2025, in accordance with the briefing schedule agreed in this matter before the undersigned were engaged, Mr. Goldstein moved to dismiss the Original Complaint for failure to state a claim.  (Doc. No. 47-10.)  On July 16, 2025, Mr. Goldstein served Plaintiff's Counsel with notice of its motion for sanctions under Rule 11 and supporting documents (the "First Rule 11 Letter").  *See* **Exhibit [C].**  The First Rule 11 Letter provided Plaintiff and its Counsel 21 days to withdraw the Original Complaint with prejudice, and informed Plaintiff of the grounds in support of the motion for sanctions.

On July 16, Plaintiff's Counsel responded by email that they would respond to the First Rule 11 Letter after filing their Amended Complaint due on July 21, 2025.  *See Email from F. Scaduto dated July 21, 2025*, attached as **Exhibit [D].**  On July 21, 2025, Plaintiff filed its Amended Complaint and emailed a letter responding to the First Rule 11 Letter (the "Response").  *See Response dated July 21, 2025*, attached as [**Exhibit E**].  In the Response, Plaintiff refused to withdraw or dismiss the allegations against Mr. Goldstein, who it deemed a "source of relevant evidence."  Plaintiff alleged that Mr. Goldstein was a properly named defendant because:

- Mr. Goldstein allegedly "agreed" to "violate one of the substantive provisions of § 1962" because he (i) joined the BankInvestor online investment forum, which Plaintiff alleges is a RICO Enterprise, and (ii) "agreed to help fund the New Jersey litigation against Spencer."[4]  *See* Response at 1-2; and

- Mr. Goldstein used mailbox service provider, Mail Boxes Etc., to open an account at Spencer.  A co-defendant, John H. Merey ("Mr. Merey"), at some point in time, allegedly also used this same service provider to open an account at Spencer.  Further, Mr. Goldstein allegedly used Mail Boxes Etc. to open accounts at a Massachusetts bank.  *Id.* at 2.

---

[4]  The terms "Passaic County Litigation" and "New Jersey Litigation" refer to *Vasta v. Spencer Sav. Bank, SLA et al.,* No. C-108-21 (N.J. Super. Ct. Ch. Div (Nov. 10, 2021)).

Plaintiff's Response demanded that Mr. Goldstein reinitiate the Rule 11 safe harbor process and direct any subsequent sanctions concerns to the Amended Complaint. *See* Response at 1. As to the allegations against Mr. Goldstein in the Amended Complaint, other than introducing the "Mail Boxes" allegation, the Amended Complaint remained materially unchanged.

On August __, Mr. Goldstein served Plaintiff's Counsel with a second sanctions letter (the "Second Rule 11 Letter") informing Plaintiff of Mr. Goldstein's intent to move for Sanctions based on the Amended Complaint. *See Email from [McDermott] to F. Scaduto dated [DATE]*, attached as **Exhibit [A]**. The Second Rule 11 Letter included a draft version of this Memorandum of Law and Motion to Impose Sanctions and gave Plaintiff the opportunity to dismiss the Amended Complaint within 21 days.

On August 4, 2025, Mr. Goldstein filed his motion to dismiss the Amended Complaint and supporting documents. (Doc. No. __.) Plaintiff did not dismiss or withdraw the Amended Complaint within the 21-day period. Accordingly, Mr. Goldstein respectfully moves for appropriate sanctions against Plaintiff and its Counsel.

## ARGUMENT

### I.    Legal Standard

Rule 11 imposes "an affirmative duty" on any party who presents "a pleading, motion, or other paper" to conduct "a reasonable inquiry into the facts and the law before filing[.]" *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).

"[T]he applicable standard [for determining counsel's conduct] is one of reasonableness under the circumstances." *Id.* Reasonableness for purposes of Rule 11 is "objective." *Id.* "The **reasonableness** of counsel's conduct depends on a number of factors, including, the amount of time available to conduct the factual and legal investigation; the necessity for reliance on a client for the underlying factual information; the plausibility of the legal position advocated" and "the

complexity of the legal and factual issues implicated." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 207 (3d Cir. 2019).  Not all factors will always be relevant.  Courts need not "work mechanically" through these factors but should "consider the reasonableness of the inquiry under all the material circumstances."  *In re Taylor*, 655 F.3d 274, 284 (3d Cir. 2011).

To comply with these standards, an attorney "must conduct a reasonable investigation of the facts and a normally competent level of legal research" to support their contentions. *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994);  *see also In re Taylor*, 655 F.3d at 284 (same; affirming sanctions against attorney whose "behavior was unreasonable, both as a matter of her general practice and in ways specific to this case").

Rule 11 obligates counsel to "look before leaping" in order to "discourage the filing of frivolous, unsupported, or unreasonable claims." *Leuallen v. Borough of Paulsboro*, No. 99-4353 (JBS), 180 F. Supp. 2d 615, 618 (D.N.J. Jan. 10, 2002).  This caution matters even more when asserting a RICO claim, given the significant and obvious reputational harm to defendants that attaches from the "mere assertion of a Rico claim." *See Grant*, 2010 WL 4004719, at *3. Expectedly, courts are "always . . . on the lookout" for dressed up RICO cases. *Id.*

The obligations of Rule 11 extend beyond the time the papers are filed.  The attorney's obligations "**are not measured solely as of the time they are filed with or submitted to the** court, but include reaffirming to the court and **advocating positions contained in those pleadings and motions after learning that they cease to have any merit.**" *See* Fed. R. Civ. P. 11, Advisory Committee's Note to 1993 Amendment (emphasis added);  *see also Bygott v. Leaseway Transp. Corp.*, No. 84-2229, 637 F. Supp. 1433, 1439 (E.D. Pa. June 10, 1986) (generally, "attorneys' fees may be awarded where . . .the party continues to litigate after the claim or defense clearly became frivolous, unreasonable, or groundless.");  *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 210

(4th Cir. 1988) (affirming sanctions ruling where "plaintiff's attorneys' continued reliance on their original investigation of the claims was unreasonable in light of . . . new information, and [counsel's] continued, dogged pursuit of the then baseless claims was in violation of Rule 11.").

If Rule 11 is violated, Rule 11(c)(4) permits a court to impose sanctions "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11. The sanction may include an award of "attorneys' fees and other expenses directly resulting from the violation" as well as "nonmonetary directives." Fed. R. Civ. P. 11(c)(4); *Scott v. Vantage Corp.*, 64 F.4th 462 (3d Cir. 2023) (available sanctions "run the gamut"); *Est. of Hennis v. Balicki*, No. CV 16-3858 (JBS-KMW), 2018 WL 1558142, at *15 (D.N.J. Mar. 29, 2018) (sanctioning attorney for failure to exercise reasonable diligence and confirm that factual contentions in papers submitted to the court had or would likely have evidentiary support).

## II.    Rule 11 Sanctions Are Warranted Because The Amended Complaint Against Mr. Goldstein Still Lacks Any Evidentiary Support

### A.    The Amended Complaint Lacks Legal and Evidentiary Support

Plaintiff's Amended Complaint violates Rule 11(b)'s requirement that a Complaint have a sufficient basis in law and fact. Fed. R. Civ. P. 11(b). Plaintiff and its Counsel should be sanctioned for persisting with the frivolous, unsupported, and stigmatizing allegation that Mr. Goldstein is part of a racketeering conspiracy when there is no evidence at all that he has ever joined a RICO conspiracy *or that he has done anything wrong at all*. *See Grant*, 2010 WL 4004719, at *3 (cautioning that the "mere association of a RICO claim" has such a "stigmatizing effect" on defendants that courts "strive to flush out frivolous RICO allegations" and "must always be on the lookout" for embellished allegations asserting RICO claims).

Here, Plaintiff embellishes Mr. Goldstein's membership in the BankInvestor online investment club and turns it into a sordid "affiliat[ion] with . . . a clandestine civil RICO

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

Enterprise", *see* Response at 3, based on Mr. Goldstein's single, innocuous, and lawful BankInvestor message with co-defendant Robert Sepersky ("Mr. Sepersky"), as well as the coincidence that Mr. Goldstein and Mr. Merey allegedly once used the same national mail box service provider.  Am. Compl. ¶ 96; Response, at 2-3.

These allegations do not have a sufficient basis in fact or law.  Notably, Plaintiff's Counsel have failed to conduct "a reasonable inquiry into the facts and the law before filing" the Amended Complaint.  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).  Reasonable inquiry would have shown that Mr. Goldstein's accounts were opened *before* 1997, which, according to the Amended Complaint, is when Spencer apparently implemented its membership policy.  *See* Am. Compl. ¶ 47.  This is also before BankInvestor was created in or around 1998 (*see* Am. Compl. 62) and years before Mr. Goldstein became a BankInvestor member.  These facts shatter Plaintiff's position, further expose the fatal flaws in their logic, and illustrate that Spencer has no reasonable factual basis to contend that Mr. Goldstein conspired as part of BankInvestor to open accounts to defraud Spencer in contravention of a bank policy that did not even exist.

Furthermore, Plaintiff's contention that its claims against Mr. Goldstein are justified because Mr. Goldstein "agreed" to "join the BankInvestor Enterprise" is conclusory as to the existence of a RICO enterprise and misstates the law on liability for RICO conspiracy.  *See* Response, at 1-2.  "[L]iability under section 1962(d) is met by 1) knowledge of the corrupt enterprise's activities *and* 2) agreement to facilitate those activities.'"  *Smith v. Berg*, 247 F.3d 532, 535 (3d Cir. 2001) (affirming district court) (emphasis added).  Both elements are lacking in the Amended Complaint.  Further, a RICO conspiracy claim fails absent "common purpose" among the co-conspirators.  *Id.* at 537.  Plaintiff, citing *Smith*, contends in conclusory fashion that Mr.

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

Goldstein "agreed to participate in and facilitate the BankInvestor Enterprise's common purpose of defrauding Spencer[.]"  Response at 2.  But *Smith* establishes that "common purpose" requires more than mere conclusory allegations of the sort deployed by Plaintiff.  *See, e.g.*, *Smith*, 247 F.3d at 537 (finding title insurance companies and individual co-defendant shared a common purpose to mislead home buyers where title insurance companies allowed individual co-defendant to step into companies' shoes and "assume many of their normal functions" during settlements and negotiations with home buyers, and where companies and individual co-defendant, took steps to encourage home buyers to purchase homes they could not afford).

Similarly, the contention that Mr. Goldstein "agreed to help fund" the Passaic County Litigation is not only incorrect, but also lacks sufficient basis in law or fact to sustain a RICO conspiracy claim.  *See* Response at 2; *see also* Am. Compl. ¶¶ 230-31 (alleging that "[i]n October and December 2021, Defendants Mr. Goldstein and Sepersky discussed Defendant Mr. Goldstein joining or funding the litigation against Spencer.").[5]  Plaintiff stresses that the "allegations against [Mr. Goldstein] include his agreement to join the [Passaic County] litigation, which is all controlling law requires for § 1962 liability."  Response at 2.  Not so.  First, Plaintiff's Response appears to manufacture a claim not contained in the Amended Complaint.  *Compare* Response at 2 (stating that the allegations against Mr. Goldstein include his agreement to *join* the litigation) *with Am. Compl.* ¶ 231 (alleging only that Mr. Goldstein agreed to "contribute to the Spencer legal fund").  The Amended Complaint does not allege any agreement to join the litigation.  For avoidance of doubt, Mr. Goldstein did not agree to join, and did not in fact join, the Passaic County Litigation, nor did he ever fund the litigation.

---

[5]    The "litigation" "discussed" was *Vasta v. Spencer Sav. Bank, SLA et al.,* No. C-108-21 (N.J. Super. Ct. Ch. Div (Nov. 10, 2021)).

Plaintiff also embellishes Mr. Goldstein's BankInvestor message to manufacture the allegation that he agreed to contribute to the legal fund. Plaintiff quotes that Mr. Goldstein stated he "would 'contribute to the Spencer legal fund'" (Am. Compl. ¶ 231) and deems this language as evidence of an "agreement to contribute to the litigation." Response at 2. ***But this is a deliberate misrepresentation by Plaintiff.*** Mr. Goldstein actually said he would "*like to* contribute to the Spencer legal fund" (emphasis added). He did not agree or confirm that he *would* contribute; and, of course, he did *not* ultimately contribute to the litigation. Plaintiff's purposefully misleading edit and false representation alone deserves sanction.

Plaintiff deliberately misrepresents Mr. Goldstein's statements to this Court because Plaintiff knows that its allegations are woefully insufficient – thus the desperate need for such deliberate misrepresentations. Because Plaintiff knows that even if Mr. Goldstein had agreed to contribute to or join the fund (which he did not), a single message discussing the possibility of retaining legal counsel for a lawful purpose is a patently inadequate basis on which to publicly accuse a respected businessman of racketeering conspiracy. Plaintiff well knows that this type of public accusation would seriously affect Mr. Goldstein's reputation and standing in the business community and clearly should never have been made.

With respect to what Mr. Goldstein and Sepersky allegedly "discussed" in their message on "December 2021," the Amended Complaint alleges that "[i]n a December 24, 2021, BankInvestor post, Defendant Sepersky told Defendant Mr. Goldstein that Defendant Seidman 'joined the case for strategic reasons (preventing the bank from trying to move the case to Federal courts).'" *Id.* ¶ 240. Even accepted as true, this allegation does not come close to approaching any description of misconduct by Mr. Goldstein.

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

There are no other "allegations" against Mr. Goldstein sufficient to support a conspiracy claim or any allegations that Mr. Goldstein knew of or in any way supported the alleged underlying RICO scheme.  Indeed, although Plaintiff alleges generally that Defendants committed "at least fifty-four federal criminal violations defrauding Spencer" (Am. Compl. ¶ 8), Plaintiff fails to identify a single violation—or even a single improper act—by Mr. Goldstein that would indicate any level of knowledge, involvement, or culpability whatsoever.

The so-called "federal criminal violations" Plaintiff decries all appear to be based on BankInvestor messages.  Plaintiff devotes *almost half* of its Amended Complaint—44 of 99 pages—to detailing the alleged "participation", "leadership", and predicate acts of other named Defendants, based on these BankInvestor messages.  *See* Compl. at 48-94.  Yet nowhere in those pages is there any indication or allegation that <u>Mr. Goldstein</u> did anything wrong.  Plaintiff quotes messages sent by other Defendants on BankInvestor, indicating the comprehensive level of access Plaintiff has gained to those communications to support its factual contentions against co-defendants.

Plaintiff also has substantial access to BankInvestor messages about Spencer—**including all relevant messages from Mr. Goldstein about Spencer**—and therefore Plaintiff knows the nature and extent (or, more accurately, the lack thereof) of Mr. Goldstein's communications regarding Spencer.  Plaintiff knows that the factual reference to Mr. Goldstein—that he "discussed . . . joining or funding the litigation against Spencer," Am. Compl. ¶ 230, is woefully insufficient to support a RICO conspiracy claim.  In an attempt to cure this flaw, Plaintiff contends that the Passaic County Litigation which Mr. Goldstein "discussed" was brought in "bad faith", that BankInvestor members "pool[ed] funds" to support the litigation, and that Spencer has been

injured by having to defend the allegations. *Id.* ¶¶ 11, 13, 272, 285. Even if true, these allegations have nothing to do with Mr. Goldstein and Plaintiff's contentions are deficient for several reasons.

First, and most egregiously, Plaintiff and its Counsel *have always known* that Mr. Goldstein never joined (or agreed to join) the Passaic County Litigation and never contributed any money to that effort.[6] Plaintiff is a defendant in that litigation and Plaintiff's Counsel knows (and has admitted knowing) that Mr. Goldstein was not involved at all in that state court litigation.[7] Plaintiff is "[i]gnor[ing] clear warning signs as to the accuracy" of its information, which are grounds for sanctions in this District. *In re Taylor*, 655 F.3d 274, 285 (3d Cir. 2011) (sanctioning attorney for failure to make "even the most minimal of inquiries" as she would then have determined that the course of action was "inappropriate under the circumstances."). In *Taylor*, the Taylors submitted documentation to opposing counsel, Doyle, showing that they had made partial payments at issue and pointing to the inaccuracy of other information Doyle had received. The Third Circuit ruled that while Doyle "was not obliged to accept the Taylors' claims at face value" those claims 'indisputably put her on notice' of the potential issues."[8] *Id.* "At that point, any reasonable attorney would have sought clarification and further documentation . . . in order to correct any

---

[6]  An attorney's obligations under Rule 11 extend beyond the time the papers are filed and require retreat from advocating positions "after learning that they cease to have any merit." *See* Fed. R. Civ. P. 11, Advisory Committee's Note to 1993 Amendment (emphasis added); *see also Bygott v. Leaseway Transp. Corp.*, No. 84-2229, 637 F. Supp. 1433, 1439 (E.D. Pa. June 10, 1986) (generally, "attorneys' fees may be awarded where . . .the party continues to litigate after the claim or defense clearly became frivolous, unreasonable, or groundless.").

[7]  Plaintiff's Counsel assert that they "were not involved in the [other Spencer] cases." Response at 3. This does not excuse Counsel from conducting reasonable inquiry of all facts pertinent to their client's case. *Bus. Guides, Inc. Inc.*, 498 U.S. at 551.

[8]  Plaintiff's Counsel contend that they had "no other basis to know" whether Mr. Goldstein contributed to the Passaic County Litigation beyond the informal attorney representations provided by the undersigned and Mr. Goldstein's former counsel. Response at 2. However, like the attorney in *Taylor*, they were "on notice of potential issues." *Taylor*, 655 F.3d at 285.

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

prior inadvertent misstatements to the court and to avoid any further errors." *Id.*  Instead, attorney Doyle doubled down and was sanctioned for violating Rule 11.  *Id.* at 288.

As in *Taylor*, Plaintiff and its Counsel here have "ignored clear warning signs" about the basis of the Amended Complaint against Mr. Goldstein and, even after being put on notice, decided to double down on their recklessness and make deliberate and material misrepresentations in the Amended Complaint.  They know that Mr. Goldstein did not fund or join the litigation in which Spencer was a defendant.  Yet they deliberately misled this Court and the public by making a misleading reference to a single message when they *knew* that misleading reference was inaccurate and by falsely insinuating Mr. Goldstein's participation in racketeering conduct.

Next, Plaintiff identifies no judicial finding that the Passaic County Litigation that Mr. Goldstein "discussed"—which was filed almost four years ago—was filed in bad faith.  If Plaintiff had any real indication that the Passaic County Litigation had been brought improperly, it would presumably have moved for sanctions in that case.  Either way, this is not the appropriate forum in which Plaintiff should litigate the alleged impropriety of a state court case that is irrelevant to Mr. Goldstein.  That said, a brief response is warranted since Plaintiff chose to center its baseless claims against Mr. Goldstein around that case.  Notably, Plaintiff provides no evidence to support its argument that the Passaic County Litigation was in any way improper, and in fact, the history of the case suggests otherwise.  On December 16, 2021, a few weeks after the case was filed, the state court, following "oral argument and for good cause shown" granted plaintiffs in that action ***a preliminary injunction against Spencer***, requiring the bank to restore the accounts of the plaintiffs/accountholders to their status quo.  *See* Order With Restraints (Dec. 12, 2021) at 1, *Vasta v. Spencer Sav. Bank, SLA et al.*, No. PAS-C-1-21 (N.J. Super. Ct. Ch. Div. (Nov. 10, 2021)),

attached as **Exhibit [F]**.  The state court, then, did not deem the case to have been brought in bad faith.

Likewise, Plaintiff's insinuation that pooling funds to support the Passaic County Litigation was wrongful and that Mr. Goldstein contributed funds is also completely unfounded. To reiterate, Mr. Goldstein did *not* contribute any funds to the litigation, as Plaintiff and its Counsel well know; and even if he had, Plaintiff identified no authority showing that pooling funds to support properly-filed litigation is a RICO predicate act.

Finally, the allegation concerning use of the Mail Boxes Etc. is also not sufficiently supported by fact or law to sustain a RICO conspiracy claim.  The allegation manages to be both misleading and irrelevant.  Mail Boxes Etc. has over 1,600 retail locations in 45 countries, though it currently does not have any branded locations in the United States and there is no information readily available on its website about its former U.S.-based business and/or customer base.[9] Assuming it operated in New Jersey, Plaintiff identified nothing that indicates it is not just a mere coincidence that Mr. Goldstein and a co-defendant had addresses there.

Plaintiff alleges—with no evidence—that Mr. Merey and Mr. Goldstein "coordinat[ed]" to use the same "Mail Boxes Etc. address" to open Spencer accounts.  *See* Am. Compl. ¶ 99.  Plaintiff does not allege how such coordination would have been possible.  Plaintiff also does not allege or identify any communication between Mr. Merey and Mr. Goldstein, and to Mr. Goldstein's knowledge, he has never met, spoken to, or communicated with Mr. Merey.  Plaintiff does not even identify when these mailboxes were allegedly opened or whether they were opened before or after Mr. Merey or Mr. Goldstein joined BankInvestor.  Absent such basic facts, the factual contentions

---

[9]    *See* Website for Mailboxes Etc., https://www.mbeglobal.com/ (last accessed July 31, 2025).

about Mail Boxes Etc. are completely irrelevant, and indicative of nothing other than the fact that many people used private mailboxes.

In the Third Circuit, courts impose sanctions because they "must hold responsible the attorneys who have certified to the court that the representations they are making are well-grounded in law and fact." *In re Taylor*, 655 F.3d at 286. Here, given the foregoing, the Amended Complaint fails this simple test and the Court should hold Plaintiff and its Counsel responsible. Plaintiff and its Counsel should therefore be sanctioned for maintaining their baseless allegations against Mr. Goldstein.

**B.      The Amended Complaint is Brought for an Improper Purpose—to Harass, Intimidate, and Increase the Cost of Litigation**

Rule 11 permits the Court to impose sanctions for pleadings "presented for any improper purpose, such as to harass . . .or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

With no factual basis to sustain RICO conspiracy claims against Mr. Goldstein, persisting with the Amended Complaint under these circumstances violates Rule 11. The Amended Complaint is brought to harass and needlessly increase costs of litigation for bystanders like Mr. Goldstein who, because of their BankInvestor membership, have been unfairly and unreasonably dragged into Plaintiff's prolonged fight with Seidman.

Plaintiff's strategy in this case appears to be to use its vast resources and the legal system to intimidate innocent BankInvestor members like Mr. Goldstein into providing communications from or about other BankInvestor members. Indeed, Plaintiff admits that it really sees Mr. Goldstein simply as a "source of relevant evidence." Response at 3. Plaintiff boasts it is one of the "largest mutual savings associations in the nation" (Compl. ¶ 9), capable of spending "million[s]" of dollars in "legal fees" on what it termed the "distraction" of "battling Seidman." *See Seidman v. Spencer Sav. Bank et al.*, Nos. A-2039-17T3, A-4739-17T4 (App. Div. Oct. 3, 2019)

("Appellate Opinion"), attached as **Exhibit [G]** to the Griffith Declaration.  Spending millions of dollars on legal fees may be a mere "distraction" for Spencer, but not so for individual defendants like Mr. Goldstein.

The "prime goal of Rule 11 sanctions" is the "deterrence of repetition of improper conduct." *In re Taylor*, 655 F.3d at 288; Fed. R. Civ. P. 11(c)(4).  Sanctions are thus even more appropriate where a party has repeated its misconduct.  The bank's "fierce" and still-ongoing "marathon litigation" against Seidman has earned the bank the admonition of the courts and resulted in a partial award of counsel fees to Seidman arising from the bank's "pretextual" and "bad faith" conduct in closing accounts for Seidman and his relatives.  *See* Appellate Opinion at 23, 39-41 (affirming district court's award of counsel fees for Spencer's bad-faith conduct); *see also id.* at 35 (trial court's factual findings that Spencer's Board members acted in bad faith was "unassailable").

Here, Plaintiff's case against Mr. Goldstein appears to be a continuation of the kind of cynical and unreasonable conduct the bank has exhibited before.  *See, e.g., Appellate Opinion* at 15-16 (noting that Spencer closed accounts belonging to Seidman's wife, daughter, and son-law to deprive him of his membership at the bank).  The Appellate Opinion reveals that Spencer has tried to intimidate others, such as Seidman's family members, to get what it wants: by bringing bogus RICO conspiracy allegations against Mr. Goldstein, the bank turns its intimidation tactics on Mr. Goldstein, an innocent bystander.  The goal seems to be to impose litigation costs on peripheral figures like Mr. Goldstein who were BankInvestor members, and thereby force them into using their membership to provide Plaintiff with a back route into the activities and messages of BankInvestor members.  This is harassment and an improper purpose for a complaint that violates Rule 11.  The Court should not allow such conduct to stand.

DRAFT | CONFIDENTIAL
SECOND RULE 11 NOTICE TO PLAINTIFF'S COUNSEL

## CONCLUSION

For the above reasons, Plaintiff's allegations against Mr. Goldstein are knowingly frivolous on their face.  Moreover, Plaintiff *has always known* that these allegations were frivolous and inaccurate.  Plaintiff made these incorrect and insufficient allegations while knowing that a sensational RICO conspiracy claim would be harmful to Mr. Goldstein's reputation.  Plaintiff proceeded anyway in the hopes that such a scandalous charge would intimidate Mr. Goldstein and force him into doing Plaintiff's improper bidding.  Thus, Mr. Goldstein respectfully moves for sanctions, including dismissal of Plaintiff's Amended Complaint with prejudice and an award of Mr. Goldstein's attorneys' fees, expenses, and costs relating to this litigation, as well as any other relief that the Court deems just.  Mr. Goldstein requests leave to submit a Certification of Counsel of Legal Fees and Expenses incurred in connection with this action.


Dated:   New York, New York.
         August _, 2025

                                        Respectfully submitted,


                                        By:  */s/ Draft*
                                        _____
                                            Jessica Greer Griffith (NJ Bar No. 126432014)
                                            Todd Harrison (admitted *pro hac vice*)
                                            Kenton Atta-Krah (admitted *pro hac vice*)
                                            MCDERMOTT WILL & SCHULTE LLP
                                            One Vanderbilt Avenue
                                            New York, New York  10017-3852
                                            Telephone: +1 212 547 5400
                                            Facsimile:  +1 212 547 5444
                                            ggriffith@mwe.com
                                            tharrison@mwe.com
                                            katta-krah@mwe.com

                                            *Attorneys for Defendant Mark A. Goldstein*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SPENCER SAVINGS BANK, S.L.A.,<br><br>Plaintiff,<br><br>v.<br><br>BNK INVEST, INC., ROBERT SEPERSKY, JONATHAN GOLDMAN, RONALD RAGANELLA, ROBERT MITCHELL, WILLIAM R. DOSSENBACH, JORDAN FARKAS, HARVEY SCHAFFLER, LEVI C. PUREC, TIMOTHY J. KLACE, KENNETH METVINER, LAWRENCE SEIDMAN, BRAD D. BUTLER, RICHARD J. LASHLEY, JOHN H. MEREY, LEO M. GOLDNER, MARK A. GOLDSTEIN, MICHAEL D. ABNERI, BONNIE S. GRAYSON, and CHAYA M. EISENBACH,<br><br>Defendants. | <u>Civil Action</u><br><br>**Docket No. 2:25-cv-03877-MEF-JRA**<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT MARK A. GOLDSTEIN'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11** |

THIS MATTER having been brought before the Court by McDermott Will & Schulte LLP, counsel for Defendant Mark A. Goldstein ("Mr. Goldstein"), for an Order granting Mr. Goldstein's Motion for Sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure (Doc. No. ___); and the Court having considered the moving papers and any opposition thereto; and the Court having considered the arguments of counsel; and for the reasons set forth on the record; and for other good cause being shown;

IT IS on this _____ day of _____, 2025;

**ORDERED** that:

1)      Count II of the Amended Complaint (Doc. No. 60) is dismissed with prejudice as to Mr. Goldstein.

2)      Plaintiff must pay Mr. Goldstein's reasonable attorneys' fees and expenses incurred as a result of Count II, including the preparation of his motions at (Doc. Nos. __, __.) in the amount of _____.

1

3)      Mr. Goldstein must submit and serve an Affidavit of Costs and Fees for the amount claimed in connection with the defense of this matter within fourteen (14) days of the date of this Order.  Plaintiff's counsel shall have seven (7) days thereafter to submit opposition, if any, to the amount sought by Mr. Goldstein.  This Court shall then determine the reasonable amount of costs and fees without further hearing.

_____

HON. JOSE R. ALMONTE
UNITED STATES MAGISTRATE JUDGE