UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SPENCER SAVINGS BANK, S.L.A., *Plaintiff,* v. BNK INVEST, INC. et al., *Defendants.* | No. 25-cv-03877 (MEF)(JRA) <br><br> **OPINION AND ORDER** |

### Table of Contents

I.   **Background**
    A.   **The Allegations**
    B.   **Procedural History**
II.  **Injury**
    A.   **Reputation**
    B.   **Expenses**
    C.   **Attorneys' Fees**
    D.   **Interest Payments**
III. **Conclusion**

\*    \*    \*

A bank came to believe that some customers had opened accounts in violation of bank policy.

So it filed this RICO lawsuit.

The customers, and other defendants, have now moved to dismiss.

The motion is granted in part.

\*    \*    \*

## I.    Background

### A.    The Allegations

Because this is a motion to dismiss, the Court must take all of the complaint's allegations as true.  See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009).  Whether they are in fact true is a question for later in the case.

The relevant allegations for now are as follows.

*    *    *

A bank's[1] membership policy generally required its depositors to live or work in New Jersey.  See Plaintiff's Amended Racketeering Complaint and Demand for Jury Trial ("Complaint") (ECF 60) ¶ 47.

The bank thought that some of its depositors[2] were violating the policy, because they did not have the required New Jersey connections.  See id. ¶ 6.

The bank also came to believe that these depositors were associating themselves with the bank as part of an effort to get representation on the bank's board of directors, with an eye to eventually taking the bank public.  See id. ¶¶ 1-6.[3]

---

[1]  Spencer Savings Bank, S.L.A.

[2]  Robert Sepersky, Jonathan Goldman, Ronald Raganella, Robert Mitchell, William R. Dossenbach, Jordan Farkas, Harvey Schaffler, Levi C. Purec, Timothy J. Klace, Kenneth Metviner, Brad D. Butler, Richard J. Lashley, John H. Merey, Leo M. Goldner, Mark A. Goldstein, Michael D. Abneri, Bonnie S. Grayson, and Chaya M. Eisenbach.  See Complaint ¶¶ 16-25, 27-34, 37, 97.  The claims against the last of these people were dismissed.  See Notice of Voluntary Dismissal of Chaya M. Eisenbach Without Prejudice (ECF 73).

[3]  The bank is a "mutual savings association."  Complaint ¶¶ 1, 14, 42.  It is governed by a board of directors that is elected by the bank's member-depositors.  See id. ¶ 43.

## B.    Procedural History

In light of the above, the bank sued various depositors,[4] along with the operator of a messaging platform[5] the depositors allegedly used to communicate with each other.  See id. at 1-2, ¶ 7.

From here, the bank is called "the Plaintiff."  The depositors and the platform operator are together called "the Defendants."

\*      \*      \*

The Plaintiff's complaint is in two counts.

The first count presses a substantive RICO[6] claim against certain depositor-Defendants.[7]  Per the complaint, these Defendants had accounts at the Plaintiff-bank in violation of the bank's membership policy.  See 18 U.S.C. § 1962(c); Complaint ¶¶ 245-75 (Count I).

The second count is for conspiracy to violate RICO.  This count names all of the Defendants.  See 18 U.S.C. § 1962(d); Complaint ¶¶ 276-88 (Count II).

\*      \*      \*

The Defendants have now moved to dismiss the claims against them.  See Notice of Motion (ECF 67) (Defendant Seidman); Notice of Motion to Dismiss the Plaintiff's Amended Complaint Pursuant to F.R.C.P. 12(b)(6) (ECF 68) (Defendant BNK Invest); Notice of Motion to Dismiss Plaintiff's Amended Complaint Pursuant to F.R.C.P. 12(b)(6) (ECF 71) (Defendant Goldstein); Notice of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 81)

---

[4]  The individuals who allegedly opened accounts in violation of the bank's membership policy.  See footnote 2.  Plus Lawrence "Larry" Seidman, who opened an account in accord with the membership policy, but who allegedly encouraged others to violate the policy.  See Complaint ¶¶ 6, 9, 26.

[5]  BNK Invest, Inc.  See Complaint ¶¶ 7, 15.

[6]  RICO is short for the Racketeer Influenced and Corrupt Organizations Act.  It is at 18 U.S.C. §§ 1961-68.

[7]  The last names of the Defendants named in this count: Sepersky, Goldman, Raganella, Mitchell, Dossenbach, Farkas, Schaffler, Purec, Klace, and Metviner.  See Complaint ¶¶ 249-50.

(Defendants Sepersky, Goldman, Raganella, Mitchell, Dossenbach, Farkas, Schaffler, Purec, Klace, Metviner, Butler, Lashley, Merey, Goldner, Abneri, and Grayson).

The motions are before the Court.

## II.  Injury

To get its RICO claims off the ground, the Plaintiff has to make two "threshold showings." Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000).

First, that it "suffered an injury to business or property." Id. And second, that the injury "was proximately caused by the defendant's violation of 18 U.S.C. § 1962." Id.[8]

The Plaintiff alleges that there are four core injuries here. See Complaint ¶¶ 242-44, 272, 285.

Work through each of these now, starting just below.

### A.  Reputation

The first alleged injury: "reputational and goodwill damage[]" to the bank.  Id.

*    *    *

From the get-go, there is a difficulty with this asserted injury.

The Third Circuit has held that "reputation and goodwill" injuries are "injuries to intangible business interests." Humphrey v. GlaxoSmithKline PLC, 905 F.3d 694, 702 (3d Cir. 2018).  And harms to intangible interests have not historically been understood as checking the RICO-injury box.  See Maio, 221 F.3d at 483 ("a showing of [RICO] injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest") (quoting Steele v. Hosp. Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994)) (internal quotation marks omitted).[9]

---

[8]  Without an injury and causation, there can be no standing under the RICO statute.  See Maio, 221 F.3d at 482-83; Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005)).

[9]  Other decisions point in the same direction.  See Knit With v. Knitting Fever, Inc., 2012 WL 2938992, at *10 (E.D. Pa. July 19,

4

But this may not be the end of the line.

The Plaintiff-bank suggests that the law in this area has been scrambled by the Supreme Court's decision in Medical Marijuana v. Horn, 604 U.S. 593 (2025) --- and that under Horn, reputational and goodwill harms can now count as RICO injuries. See Plaintiff's Brief in Opposition to Defendant Mark A. Goldstein's Motion to Dismiss the Amended Complaint (ECF 90) at 27.

Is that right?  Maybe, maybe not.  But one way or another, the issue does not need to be taken up here.

The reason why: the Plaintiff has not offered any meaningful factual allegations --- so even if as a general matter there can be reputation/goodwill RICO injuries under Horn, such an injury is not adequately plead here.

Unpack this point just below.

*     *     *

The Plaintiff-bank alleges that it suffered "damages to its reputation and goodwill."  Complaint ¶ 244; see id. ¶¶ 13, 272, 285.

But the complaint leaves it at that.

---

2012) ("Claimed losses to goodwill and reputation are . . . simply not the types of injuries compensable under RICO."), aff'd 625 F. App'x 27, 35 (3d Cir. 2015) ("We agree with the district court's reasoning and analysis and we will affirm the court's holding . . . substantially for the reasons stated in the district court's opinion."); see also, e.g., Hamm v. Rhone-Poulenc Rorer Pharms., Inc., 187 F.3d 941, 954 (8th Cir. 1999) (citing cases that hold that damage to "business reputation" is not an injury to "business or property" within the meaning of Section 1964(c)); Sambade v. Barberi Constr. LLC, 2016 WL 11891359, at *4 (D.N.J. Feb. 18, 2016) ("[H]arm to an 'intangible property interest' such as business reputation is not sufficient to confer standing under civil RICO.") (cleaned up); Advanced Oral Techs., L.L.C. v. Nutres Rsch., Inc., 2011 WL 198029, at *8 (D.N.J. Jan. 20, 2011) (concluding that allegations of harm to one's business reputation and customer goodwill are "insufficient as a matter of law" to meet RICO's injury requirement).

Nothing as to who might have come to learn about the allegation that certain depositors had violated the membership policy or were seeking board seats. And no allegations to suggest that anyone noticed this or cared about it. Was there newspaper coverage? Chatter on blogs? Did holders of bank loans demand an explanation when they learned what was allegedly afoot? Were some potential bank depositors scared off? The complaint does not speak to any of this.

Moreover, there are no allegations that back up the Plaintiff's key premise --- that a seemingly innocuous happening (some depositors breaching a membership policy) could plausibly whittle away at a bank's goodwill and reputation.

To survive a motion to dismiss, a legal theory needs to be backed up by factual allegations, that answer who-what-when-where-and-how sorts of questions. See Cook v. Bell, 2026 WL 412427, at *1 (D.N.J. Feb. 13, 2026); Webway 360, Inc. v. Xerox Corp., 2025 WL 3161999, at *7 (D.N.J. Nov. 12, 2025); Holland v. 9F Inc., 2024 WL 5086106, at *3 (D.N.J. Dec. 12, 2024); Badalamenti v. Resideo Techs., Inc., 755 F. Supp. 3d 534, 547 n.16 (D.N.J. 2024).

The bar is not set very high. But some factual allegations are needed. And as to the alleged reputation/goodwill injury, the Plaintiff has only come forward with "an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Plaintiff's complaint provides a heads-up as to what its RICO-injury legal theory is. Under a notice pleading regime, that might have been enough. But under current law, it falls short. See id. at 681 (concluding that "bare assertions [that] amount to nothing more than a 'formulaic recitation of the elements'" are insufficient to survive a motion to dismiss) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The Defendants' motions to dismiss the Plaintiff's RICO claims are granted to the extent those claims rest on "reputational and goodwill" injury.

### B.   Expenses

The Plaintiff's next alleged injury: "expenses associated with" investigating depositors who violated the bank's membership

6

policy, and then closing their accounts.  Complaint ¶ 272; see also id. ¶¶ 13, 242.

This injury cannot work.  The Third Circuit has made clear that costs incurred "investigating and mitigating damage[]" caused by a RICO conspiracy are "generally not deemed [to be a] direct injury flowing from a defendant's illegal conduct."[10]

As to that principle, look to Knit With v. Knitting Fever, 2012 WL 2938992 (E.D. Pa. July 19, 2012).

There, a retailer sued a supplier, claiming that the supplier exaggerated how much cashmere was in certain yarn.  Id. at *1.

One of the "RICO injuries" alleged by the plaintiff-retailer was the "cost of investigation and recall" of the allegedly mislabeled yarn.  Id. at *4.  But Judge Buckwalter, focusing mainly on causation issues,[11] held that this could "not constitute compensable injury under RICO."  Id. at *9.

> [T]he object of the conspiracy was to distribute handknitting yarns that were falsely labeled and priced as containing a certain amount of cashmere. The monies expended by Plaintiff in this grouping of damages, however, were not occasioned directly by the predicate acts in furtherance of that conspiracy, but rather by the costs that Plaintiff chose to incur to investigate and mitigate the effects of Defendants' conduct.  In other words, the object of the scheme was not to injure the Knit With by having it hire a fiber analyst to test the yarns, pay a family member to remove yarns from the shelves, and then champion the rights of its customers through a highly-publicized recall.  Rather, it was to sell to consumers yarn priced under the guise that it contained a certain quantity of cashmere.  In fact, the success of the alleged scheme was predicated on Plaintiff not discovering the falsely-marked yarns and continuing to stock and sell to the unwary consumer these mis-

---

[10]  Knit With, 2012 WL 2938992, at *7, aff'd 625 F. App'x at 35

[11]  As noted above, a RICO plaintiff must make two "threshold showings" related to injury in order to have standing to press a civil RICO claim.  Maio, 221 F.3d at 483.  That it "suffered an injury to business or property."  Id.  And that the injury "was proximately caused by the defendant's violation of [RICO]."  Id.

labeled yarns.   [Accordingly,] the expenses incurred in discovering the fiber content of the yarn and recalling the yarns were not direct injury flowing from defendants' illegal conduct, but rather, at best, indirect injury which plaintiff did not automatically incur, but chose to incur, in mitigating the effect of defendants conduct.

Id. (cleaned up).

Judge Buckwalter's Knit With opinion sets out the governing law in this area.  See The Knit With v. Knitting Fever, Inc., 625 F. App'x 27, 34-35 (3d Cir. 2015) (first noting that one of the claimed sources of the RICO injury rejected by the district court was "the cost of investigating the allegations of mislabeling and recalling the yarns," and then stating that "[w]e agree with the district court's reasoning and analysis and we will affirm the court's holding as to standing substantially for the reasons stated in the district court's opinion").

And this case is closely similar to Knit With.

Here, the Plaintiff-bank has alleged that expenses associated with the "investigation of and correspondence about out-of-state accounts, expulsion of non-compliant account holders, and response[s] to Defendants' unjustified protests" to the account closings --- these all count as RICO injuries.  Complaint ¶ 272.

But the alleged "object of the conspiracy," Knit With, 2012 WL 2938992, at *9, here was "not to injure [the bank] by having it hire," id., analysts or investigators to detect and close accounts, or to communicate with depositors about these closings.

Rather, the point of the allegedly RICO-violative activities was to "fraudulently open[], maintain[], or avoid[] closure of out-of-state [bank] accounts," Complaint ¶ 284, in order to gain representation on the bank's board, and then to profit from taking the bank public.  See id. ¶¶ 1-6.

Indeed, "the success of the alleged scheme was predicated on [the] Plaintiff not discovering the [non-compliant accounts] and continuing to" allow the non-compliant account holders to serve as member-depositors.  Knit With, 2012 WL at 2938992, *9 (emphasis added); see Complaint ¶ 284.

8

In short, on the logic of <u>Knit With</u>, the Plaintiff has not adequately alleged that any injury caused by the relevant expenses was "proximately caused" by the Defendants' alleged violations of RICO.  <u>Maio</u>, 221 F.3d at 483.

Therefore, the Defendants' motions to dismiss are granted to the extent those claims rest on an alleged "expenses"-incurred RICO injury.

### C.  **Attorneys' Fees**

For the Plaintiff's third alleged RICO injury, some added background needs laying out.

After their accounts were closed by the Plaintiff-bank for allegedly violating its membership policy, some of the depositor-Defendants[12] filed a lawsuit in a New Jersey state court --- to get their accounts reopened, and to prevent future shut-downs.  <u>See</u> Complaint ¶¶ 11, 143, 218-41; Verified Complaint, <u>Vasta</u> v. <u>Spencer Sav. Bank, SLA</u>, No. C-000108-21, 15 (N.J. Super. Ct. Ch. Div. Nov. 10, 2021).

The Plaintiff-bank now contends that expenses (attorneys' fees, etc.) it ran up defending that state court lawsuit can satisfy the RICO injury requirement here.  <u>See</u> Complaint ¶¶ 242, 272, 285.

This is not persuasive.

*    *    *

The Plaintiff's argument starts off on the back foot.

The reason why: the idea that litigation expenses paid in one case can count as a RICO injury in a later case --- that is in tension with the "American Rule," the principle that each party to a civil lawsuit has to pay its own way.  Win or lose, parties must generally cover their own costs and fees.  <u>See</u> <u>Lackey</u> v. <u>Stinnie</u>, 604 U.S. 192, 199 (2025); <u>Alyeska Pipeline Serv. Co.</u> v. <u>Wilderness Soc.</u>, 421 U.S. 240, 249-50 (1975).

If costs from an earlier litigation counted as the injury in a follow-on RICO case --- that could skirt the American Rule.  Case one litigation expenses that are not recoverable in case

---

[12]  Plus some other people, too.  <u>See</u> Verified Complaint, <u>Vasta</u> v. <u>Spencer Sav. Bank, SLA</u>, No. C-000108-21, 1 (N.J. Super. Ct. Ch. Div. Nov. 10, 2021).

one itself could potentially just be recovered a bit later --- in case two, a RICO action.

This would open up a back door for getting around the American Rule.  And not just any backdoor.  A backdoor that many people would want to walk through.  Because an attorneys' fees recovery in the RICO action would not be just a 1:1 reimbursement --- RICO provides for triple damages.  See 18 U.S.C. § 1964(c).

Congress is not generally presumed to displace deeply-entrenched parts of our common law.  See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991); Minerva Surgical, Inc., v. Hologic, Inc., 594 U.S. 559, 572 (2021).  And there is no reason to think that with RICO, Congress was looking to diminish the American Rule.

Moreover, courts have long warned that opening the RICO aperture too wide by interpreting the statute too loosely --- that can raise federalism concerns, by paring back on the autonomy and force of state law.[13]

And that would be the result if bread-and-butter civil litigation expenses were allowed to count as an injury in a later federal RICO case.  On this approach, RICO would sometimes override the otherwise-applicable American Rule, by allowing for fee-shifting.  But the Rule applies as a matter of state law in 49 of the 50 states; it is a basic part of the architecture of our country's civil litigation.[14]

*    *    *

Against this backdrop, it is no surprise that the two federal courts of appeals that have suggested that litigation expenses can potentially count as a RICO injury have articulated this injury theory in a narrow way --- that seems consistent with the American Rule.

---

[13]  For some examples, see Horn, 604 U.S. at 636 (Kavanaugh, J., dissenting), and Gross v. Waywell, 628 F. Supp. 2d 475, 482 (S.D.N.Y. 2009).

[14]  See Monzingo v. Alaska Air Grp., Inc., 112 P.3d 655, 665 (Alaska 2005) ("Alaska is the only state that does not follow the American rule pertaining to attorneys' fees.") (cleaned up); see also Gannett Satellite Info. Network, LLC v. Township of Neptune, 254 N.J. 242, 258-61 (2023) (describing the operation of the American Rule in New Jersey).

Under the American Rule, fee-shifting is sometimes allowed ---
as when the losing party was a plaintiff who brought a claim so
frivolous that it seems to have been pressed in bad faith.  See
Alyeska, 421 U.S. at 258-59 (citing F.D. Rich Co. v. United
States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974));
Chambers, 501 U.S. at 45-46; Hall v. Cole, 412 U.S. 1, 5 (1973);
Marx v. Gen. Revenue Corp., 568 U.S. 371, 382 (2013); Octane
Fitness, LLC. v. ICON Health & Fitness, Inc., 572 U.S. 545, 557
(2014); Perichak v. Int'l Union of Elec. Radio & Mach. Workers,
Local 601, AFL-CIO, 715 F.2d 78, 80 (3d Cir. 1983).

The appellate courts that have allowed prior-case attorneys'
fees to count as an injury in a later RICO case have done so in
contexts where fee-recovery would likely have been allowed under
the American Rule --- because the RICO plaintiff had defended in
the earlier case against bad-faith claims.

In Handeen v. Lemaire, 112 F.3d 1339 (8th Cir. 1997), for
example, the Eighth Circuit suggested that attorneys' fees could
be the basis for a RICO injury.  See id. at 1354.  But the fees
at issue there were spent in an earlier lawsuit defending
against claims that were "fraudulent," id. at 1350 --- and,
indeed, were put together by a party and its lawyers as part of
an asset-shielding scheme.  See id. at 1343-44.

Bankers Trust Company v. Rhoades, 859 F.2d 1096 (2d Cir. 1988),
is similar.  There, owners of a corporation "initiated frivolous
lawsuits" against creditors in state court, and allegedly bribed
the presiding judges --- all of which caused the creditor "to
expend over $100,000 in legal fees."  Id. at 1099.  It was
against this backdrop that the Second Circuit concluded that the
creditor "suffered injury" under RICO.[15]  Id. at 1101.

Handeen and Rhoades suggest that attorneys' fees can count as a
RICO injury --- "at least where the fees were incurred in
defending against frivolous or fraudulent claims." Yucaipa Am.
Alliance Fund I, LP v. Ehrlich, 716 F. App'x 73, 78 n.2 (3d Cir.
2017).

---

[15]  It is not entirely clear whether Rhoades would have held that
the payment of attorneys' fees could have satisfied RICO's
injury requirement on its own.  Other potential injuries appear
to have been alleged in that case, and the injuries all seem to
have been considered together.  See 859 F.2d 1101.

\*    \*    \*

Assume for present purposes that <u>Handeen</u> and <u>Rhoades</u> state the governing law --- and that lawyers' fees can count as a RICO injury, but only if they were incurred in defending against "frivolous or fraudulent claims."

On that understanding, there is no injury here.

The Plaintiff-bank <u>says</u> that the state court lawsuit against it was a "bad-faith" attempt to restore depositors' accounts. Complaint ¶ 11; <u>see id</u>. ¶¶ 168, 218-42, 255, 259; <u>see also</u>, e.g., Plaintiff's Brief in Opposition to [Sepersky] Defendants Motion to Dismiss the Amended Complaint (ECF 91) at 23-24.[16]

But the "bad faith" label is not a plausible fit.  In the state court case, a preliminary injunction was issued in <u>favor</u> of the depositors --- an injunction that required the bank to reinstate the relevant accounts, at least until the resolution of the case.  <u>See</u> Order with Restraints, <u>Vasta</u> v. <u>Spencer Sav. Bank, SLA</u>, No. C-000108-21 (N.J. Super. Ct. Ch. Div. Dec. 16, 2021).[17]

<u>Winning</u> on a particular claim in state court[18] hardly suggests that the claim was "frivolous" or "fraudulent." <u>Yucaipa</u>, 716 F. App'x at 78 n.2.  If anything, the opposite. <u>See</u>, <u>e.g.</u>, <u>Pro. Real Est/. Invs., Inc.</u> v. <u>Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 60 n.5 (1993) ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."); <u>Le</u> v. <u>Univ. of Pa.</u>, 321 F.3d 403, 411 (3d Cir. 2003) ("[R]ecovery by the plaintiff would negate any argument that the plaintiff's suit was frivolous.").

\*    \*    \*

Bottom line:

Even assuming for present purposes that spending money on lawyers in one case can sometimes qualify as an injury in a later RICO case, that does not add up to an injury here ---

---

[16]  A shortened version of the brief's title is used here.

[17]  The Court may consider matters of public record, including state court filings, in evaluating a motion to dismiss.  <u>See</u> <u>Pension. Ben. Guar. Corp.</u> v. <u>White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993); <u>Buck</u> v. <u>Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006).

[18]  At least on a preliminary basis.

12

because the claims that the RICO Plaintiff had earlier defended against in state court were not plausibly frivolous or fraudulent.

Accordingly, the Defendants' motions to dismiss the Plaintiff's RICO claims are granted to the extent those claims rest on an attorneys' fees injury.[19]

### D.    Interest Payments

The Plaintiff-bank's last argument: that it suffered a RICO injury because it paid interest to depositors that should not have had accounts with the bank in the first place --- because they did not have the New Jersey connections required by the bank's membership policy.  See Complaint ¶¶ 133-34, 243, 272, 285.

It is not clear that this injury argument works.  See Brief of Sepersky Defendants in Support of Their Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 81-1) at 28.[20]

To see why, begin by noting that interest works as a kind of magnet.  Banks pay out interest to pull in deposits.  And then banks generally aim to use the deposits --- by lending them out at a higher cost (to borrowers) than the cost (to the bank) of making the interest payments in the first place.  Through this arbitrage, banks look to turn a profit.  They hope to borrow an

---

[19]  The Plaintiff also alleges that it was injured by way of costs associated with responding to "regulatory complaints." Complaint ¶¶ 242, 272, 285; see also id. ¶¶ 177-206 (describing complaints filed by certain Defendants).  But the Plaintiff has not alleged that it suffered any out-of-pocket loss as a result of these complaints.  It has not, for example, alleged that any civil penalty was imposed.  And any other costs it ran up appear to be the sorts of compliance-type costs that do not count as an injury under Knit With.  See Part II.B.  (And note: context suggests that the main gist of these "regulatory complaints" was the same as the basic outline of the state court lawsuit. Compare Complaint ¶¶ 177-217, with id. ¶¶ 218-41.  As noted, there is no reason to think that the lawsuit was fraudulent or frivolous.)

[20]  A shortened version of the name of the brief.

asset (deposits)[21] at a lower price (in the form of the interest the bank pays to depositors), and then to lend the same asset (deposits) at a higher price (in the form of the interest paid to the bank by borrowers).

The above is a highly simplified view.  But it captures the essence of how banks generally work.  See, e.g., Robert De Young & Tara Rice, How Do Banks Make Money? The Fallacies of Fee Income, 28(4) Econ. Persps. 34, 34 (2004); Federal Reserve Bank of Boston, Banking Basics 8-9, 18-19 (2011); William H. Kniffin, The Practical Work of a Bank 14, 33-34, 55 (7th ed. 1928).

And on this picture of things, it is not immediately clear how the Plaintiff-bank was injured by paying out interest to depositors who should have been (under the membership policy) from New Jersey, but who in fact were from Florida or New York.  In exchange for paying out interest, the bank seems to have received what it wanted --- deposits.  So how was it injured?

On this point, look to Maio v. Aetna.  There, the Third Circuit cited Dornberger v. Metropolitan Life Insurance Company, 961 F. Supp. 506 (S.D.N.Y. 1997), for the idea that "a plaintiff who is fraudulently induced to enter into a transaction does not suffer injury within the meaning of [RICO] until the defendant fails to perform --- that is, until it becomes clear that the plaintiff will not get the benefit of the bargain."  221 F.3d at 490 (quoting Dornberger, 961 F. Supp. at 521).

That reasoning might well apply here.

The Plaintiff-bank alleges that it was injured when it paid out interest on certain Defendants' accounts.  But did the Plaintiff-bank lose out on the "benefit of the bargain," id., it made with the Defendant-depositors?

The core of that "bargain" seems to have been this: we pay you interest so you deposit money, and you deposit money so we can lend it out.  How was that impacted by whether the Defendant-depositors had New Jersey connections?  See also Aliperio v. Bank of Am., N.A., 764 F. App'x 236, 238-39 (3d Cir. 2019) (concluding that "the monthly payments" the plaintiffs made on a mortgage did not count as an "actual monetary loss" for RICO

---

[21]  "Borrow" because the bank needs to return deposits when the depositor asks for them.

14

injury purposes because these payments "were consistent with the terms of the loan agreement into which they entered").[22]

To see the point from another angle, look to the common law.[23]

Consider the tort of fraudulent misrepresentation, because that is roughly analogous to what is alleged here --- that the Defendant-depositors fraudulently misrepresented themselves as having the New Jersey connections that were needed to satisfy the bank's membership policy.

A fraudulent misrepresentation claim can generally go forward only if the plaintiff has suffered pecuniary loss. See, e.g., Restatement (Second) of Torts §§ 525 (A.L.I. 1977).[24]  Per the Restatement:

> If, notwithstanding the falsity of the representation, the thing that the plaintiff acquires through the fraudulent transaction is of equal or greater value than the price paid and he has suffered no harm through using it in reliance upon its being as represented, he has suffered no loss and can recover nothing."

Id. § 549 cmt. b.

Under this principle, if the Plaintiff-bank paid 3 cents on the dollar for deposits, does it plausibly matter that a Defendant-depositor allegedly misrepresented what state she was from?  The Plaintiff arguably still seems to have "acquire[d] . . . [something] of equal . . . value t[o] the price paid" --- because the dollar received was presumably "value[d]" by the Plaintiff at $1.03 cents, no matter who it came from.  Id.

---

[22]  Cf. Rajamin v. Deutsche Bank Nat'l Tr. Co., 757 F.3d 79, 85-86 (2d Cir. 2014) (concluding that plaintiffs who had never paid or been asked to pay more than they owed did not allege injuries sufficient for Article III standing); Washington v. Specialized Loan Servicing LLC, 778 F. App'x 183, 186 (3d Cir. 2019) (similar).

[23]  Courts have often looked to common law tort principles to discern the scope of civil RICO provisions. See, e.g., Beck v. Prupis, 529 U.S. 494, 500-05 (2000); but cf. Horn, 604 U.S. at 606 (disavowing a "tort-centric" reading of 18 U.S.C. § 1964(c)).

[24]  Civil RICO works the same way. See Maio, 221 F.3d at 483.

*      *      *

Given all this, it does not appear obvious, at least for now, that the Plaintiff has plausibly alleged a RICO injury based on the interest payments it made to depositors.[25]

But this is not a firm or final conclusion.  The parties have not substantially weighed in on the relevant issue.  They should get a chance to.[26]

Through the United States Magistrate Judge, a briefing schedule will be set that will allow the parties to weigh on the

---

[25]  The criminal cases cited by the Defendants do not change the picture.  See Defendants' Brief at 22.  In criminal RICO cases, "a showing of ultimate financial loss" is not required to make out a violation.  United States v. An, 733 F. Supp. 3d 77, 94 (E.D.N.Y. 2024) (quoting Shaw v. United States, 580 U.S. 63, 67 (2016)).  But civil RICO requires a plaintiff to have suffered an injury to "his business or property," 18 U.S.C. § 1964(c); an "actual," "out-of-pocket loss" is a prerequisite to pursuing a claim.  Maio, 221 F.3d at 483.  So the fact that a depositor might potentially be criminally prosecuted under RICO for lying on her account-opening paperwork (as some cases suggest, see, e.g., An, 733 F. Supp. 3d at 94) does not necessarily mean that the same depositor could be sued by the bank on that theory under civil RICO.

[26]  The parties can and should tackle things as they see fit. That said, some of the key questions would seem to include the following.  First, what to make of In re Avandia Marketing, Sales Practices & Product Liability Litigation, 804 F.3d 633 (3d Cir. 2015)?  Second, does it matter that the Plaintiff is a distinctive sort of bank, a "mutual savings association"? Third, are there common law cases that speak to whether a bank can sue a depositor in tort for a misrepresentation in the account-opening paperwork --- even if nothing came of the misrepresentation (except, perhaps, some extra risk for the bank --- that sat in the air but never materialized)?  Fourth, what about cases from other areas?  Think of, say, cases in which an insurer is looking to sue its insured in tort --- an insured who did not get injured and never put in a claim, but who, it emerges, lied on her insurance application about her blood pressure or whether she smokes.  What do such cases show?  And more generally, is the insurance analogy a close enough fit?

16

Plaintiff's final RICO-injury theory, related to the bank's payment of interest to depositors.

### III. Conclusion

The Defendants' motions to dismiss the Plaintiff's RICO claims are granted to the extent those claims rest on (i) a reputation/goodwill theory, (ii) an expenses theory, or (iii) an attorneys' fees theory. As to (iv) the interest theory, a separate order will issue later today.

IT IS on this 30th day of March, 2026, **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.

17